**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

GERARD TRAVERS, on behalf of himself,
individually, and on behalf of all others
similarly situated,

        Plaintiff,

v.

FEDERAL EXPRESS CORPORATION,

        Defendant.

CASE NO. 19-cv-6106-MAK

**PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... iii

INTRODUCTION ...................................................................................................................... 1

ALLEGATIONS OF THE COMPLAINT ................................................................................. 2

LEGAL STANDARD ................................................................................................................ 3

ARGUMENT .............................................................................................................................. 3

    I.    The Complaint alleges a plausible claim that FedEx violated USERRA § 4316(b) ........... 3

      A.  USERRA guarantees that workers who take military leave receive the same
          "rights and benefits" as workers who take comparable, non-military leaves. .................. 4

      B. Paid leave is among the "rights and benefits" that must be provided equally to
         reservists on military leave and employees on comparable leaves. ................................... 5

        1.    USERRA's text is unambiguous that paid leave is a right or benefit. ........................ 5

        2.    USERRA's history confirms that paid leave is a right or benefit. .............................. 9

        3.    All but a single court has held paid leave is a right or benefit under
           § 4303(2) that must be provided equally to reservists under § 4316(b). .................... 12

        4.    FedEx's arguments disregard USERRA's text and history and focus
           primarily on policy grounds to nullify the statute. .................................................... 14

    II.   A laches defense is foreclosed by USERRA and inappropriate at this stage. ................... 17

CONCLUSION ........................................................................................................................... 20

# TABLE OF AUTHORITIES

## Cases

*Advocate Health Care Network v. Stapleton*,
137 S. Ct. 1652 (2017)............................................................................................ 11

*Ali v. Federal Bureau of Prisons*,
552 U.S. 214 (2008)................................................................................................. 6

*Bloate v. United States*,
559 U.S. 196 (2010)................................................................................................. 6

*Brill v. AK Steel Corp.*,
No. 09 Civ. 534, 2012 WL 893902 (S.D. Ohio 2012)....................................... 13, 20

*Brown v. Gardner*,
513 U.S. 115 (1994)......................................................................................... 2, 6, 14

*Carder v. Continental Airlines, Inc.*,
636 F.3d 172 (5th Cir. 2011) ................................................................................. 5

*Carmalt v. General Motors Acceptance Corp.*,
302 F.2d 589 (3d Cir. 1962)................................................................................... 19

*Chickasaw Nation v. United States*,
534 U.S. 84 (2001)................................................................................................ 6, 9

*Clarkson v. Alaska Airlines*, Inc.,
No. 19 Civ. 5, 2019 WL 2503957 (E.D. Wash. 2019)........................................... 13

*Cornetta v. United States*,
851 F.2d 1372 (Fed. Cir. 1988)............................................................................. 20

*Dahlstrom v. Sun-Times Media, LLC*,
777 F.3d 937 (7th Cir. 2015) ................................................................................. 9

*Duffer v. United Continental Holdings, Inc.*,
173 F. Supp. 3d 689 (N.D. Ill. 2016)..................................................................... 13

*Equal Employment Opportunity Commission v. Great Atlantic & Pacific Tea Co.*,
735 F.2d 69 (3d Cir. 1984)..................................................................................... 18

*Fishgold v. Sullivan Drydock & Repair Corp.*,
328 U.S. 275 (1946)................................................................................................. 6

*Gabelli v. Securities and Exchanges Commission*,
568 U.S. 442 (2013)................................................................................................. 8

*Gagnon v. Sprint Corp.*,
284 F.3d 839 (8th Cir. 2002) ................................................................................. 10

*Gordon v. Wawa, Inc.*,
    388 F.3d 78 (3d Cir. 2004) ............................................................................................. 6, 13

*Gross v. PPG Industries, Inc.*,
    636 F.3d 884 (7th Cir. 2011) ................................................................................................. 10

*Hamilton v. United States*,
    No. 03 Civ. 669, 2005 WL 2671373 (S.D. Ohio Oct. 19, 2005) ............................................. 17

*Helms v. Village of Clarendon Hills, Illinois*,
    No. 18 Civ. 8434, 2019 WL 2409596 (N.D. Ill. June 7, 2019) ......................................... 18, 19

*Henson v. Santander Consumer USA Inc.*,
    137 S. Ct. 1718 (2017) .......................................................................................................... 16

*Hisey v. QualTek USA, LLC*,
    No. 18 Civ. 5129, 2019 WL 3936555 (E.D. Pa. Aug. 20, 2019) .......................................... 20

*Huntsman v. Southwest Airlines*,
    No. 19 Civ. 83, ECF No. 59 (N.D. Cal. Nov. 27, 2019) ........................................................ 13

*Intel Corp. Investment Policy Committee v. Sulyma*,
    140 S. Ct. 768 (2020) ............................................................................................................ 16

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
    304 F.3d 829 (9th Cir. 2002) ................................................................................................. 17

*Keeley v. Loomis Fargo & Co.*,
    183 F.3d 257 (3d Cir. 1999) .................................................................................................. 10

*King v. St. Vincent's Hospital*,
     502 U.S. 215 (1991) ................................................................................................................ 6

*Kingdomware Technologies, Inc. v. United States*,
    136 S. Ct. 1969 (2016) ............................................................................................................ 5

*Leonick v. Jones & Laughlin Steel Corp*,
    258 F.2d 48 (2d Cir. 1958) .................................................................................................... 19

*Maher v. City of Chicago*,
    547 F.3d 817 (7th Cir. 2008) ................................................................................................. 19

*Miller v. City of Indianapolis*,
    281 F.3d 648 (7th Cir 2002) .................................................................................................. 18

*Mock v. City of Rome*,
    851 F. Supp. 2d 428 (N.D.N.Y. 2012) ................................................................................... 20

*Monroe v. Standard Oil Co.*,
    452 U.S. 549 (1981) .............................................................................................................. 14

*National Association of Chain Drug Stores v. Express Scripts, Inc.*,
    No. 12 Civ. 395, 2012 WL 3655459 (W.D. Pa. Aug. 27, 2012) ............................................ 18

*National Labor Relations Board v. SW General, Inc.,*
  137 S. Ct. 929 (2017)...........................................................................10

*Nolde Brothers, Inc. v. Local No. 358, Bakery & Confectionery Workers Union,*
  430 U.S. 243 (1977).............................................................................8

*Novak v. Mackintosh,*
  937 F. Supp. 873 (D.S.D. 1996) ..........................................................20

*Perz v. School City of Hammond,*
  24 F.3d 899 (7th Cir. 1994) ................................................................13

*Petty v. Metropolitan Government of Nashville & Davidson City,*
  687 F.3d 710 (6th Cir. 2012) ..............................................................15

*Pucilowski v. Department of Justice,*
  498 F.3d 1341 (Fed. Cir. 2007).......................................................5, 13

*Rogers v. City of San Antonio,*
  392 F.3d 758 (5th Cir. 2004) ..............................................................16

*Santana Products, Inc. v. Bobrick Washroom Equipment, Inc.,*
  401 F.3d 123 (3d Cir. 2005)................................................................18

*Scanlan v. American Airlines Group, Inc.,*
  384 F. Supp. 3d 520 (E.D. Pa. 2019) .............................................*passim*

*Seiler v. Hollidaysburg American Legion Ambulance Services, Inc.,*
  No. 10 Civ. 41, 2011 WL 4017965 (W.D. Pa. Sept. 8, 2011) .............20

*Simon v. FIA Card Services, N.A.,*
  732 F.3d 259 (3d Cir. 2013).................................................................15

*Smith v. Berryhill,*
  139 S. Ct. 1765 (2019).........................................................................6

*Su v. M/V Southern Aster,*
  978 F.2d 462 (9th Cir. 1992) ...............................................................9

*Sumrall v. Ensco Offshore Co.,*
  No. 17 Civ. 48, 2018 WL 2088761 (S.D. Miss. May 7, 2018)..............17

*Sweda v. University of Pennsylvania,*
  923 F.3d 320 (3d Cir. 2019).................................................................3

*Tully v. Department of Justice,*
  481 F.3d 1367 (Fed. Cir. 2007)........................................................7, 13

*United States v. Baker,*
  No. 08 Civ. 374, 2009 WL 1407018 (E.D. Tenn. May 19, 2009) ..........17

*United States v. Johnson,*
  529 U.S. 53 (2010)...............................................................................10

*United States v. Koreh,*
    59 F.3d 431 (3d Cir. 1995) ............................................................................ 18

*United States v. Lawrence,*
    276 F.3d 193 (5th Cir. 2001) ......................................................................... 17

*Waddell v. Small Tube Products, Inc.,*
    799 F.2d 69 (3d Cir. 1986) ............................................................................ 18

*Waltermyer v. Aluminum Co. of America,*
    804 F.2d 821 (3d Cir. 1986) .................................................................. *passim*

*White v. United Airlines, Inc.,*
    416 F. Supp. 3d 736 (N.D. Ill. 2019) ........................................................... 13

**Statutes, regulations, and reports**

5 U.S.C. § 6323(a)(1) ......................................................................................... 15

10 U.S.C. § 707a(b)(1) ......................................................................................... 8

10 U.S.C. § 707a(b)(2) ......................................................................................... 8

20 U.S.C. § 1091a(2) .......................................................................................... 17

26 U.S.C. § 6331(a) .............................................................................................. 8

38 U.S.C. § 4303(2) .......................................................................................... 1, 5

38 U.S.C. § 4316(b) .................................................................................... *passim*

38 U.S.C. § 4323(d)(1) .................................................................................. 14, 15

38 U.S.C. § 4327(b) ............................................................................................ 17

41 U.S.C. § 353(c)(1) ........................................................................................... 8

46 U.S.C. § 10313(e) ............................................................................................ 9

Pub. L. 110–389, 122 Stat. 4163 (Oct. 10, 2008) ............................................ 17

20 C.F.R. § 1002.150(a) ....................................................................................... 8

20 C.F.R. § 1002.150(b) ............................................................................. 5, 11, 16

20 C.F.R. § 1002.312(c) ..................................................................................... 15

Ariz. Rev. Stat. § 23-364 .................................................................................... 16

Ariz. Rev. Stat. § 23-371 .................................................................................... 16

Cal. Lab. Code § 245 .......................................................................................... 16

Conn. Gen. Stat 31-57r-31-57w ......................................................................... 16

N.Y. Lab. Law § 196-b ........................................................................................ 16

H.R. Rep. No. 103-65(1) (1993) ................................................................. 1, 6, 11

S. Rep. No. 103-158 (1993) ........................................................................ 4, 6

156 Cong. Rec. S7656-02 (Sept. 28, 2010) ................................................. 10

**Other Authorities**

*American Heritage Dictionary* (5th ed. 2020) ............................................ 6, 7

*Black's Law Dictionary* (9th ed. 2009) ...................................................... 8

Bureau of Labor Statistics, Employer Costs for Employee Compensation* ................................. 7

Bureau of Labor Statistics, Employment Situation Summary Table A. Household data (2020)* 17

IRS Publication 15* ...................................................................................... 7

U.S. Department of Defense,
2016 Demographics: Profile of the Military Community (2016)* ............................................. 17

Working Here at Lockheed Martin: Benefits & Amenities* ....................................... 17

*All authorities that link to web sites are designated as Exhibits
to the Declaration of Peter Romer-Friedman in Support of
Plaintiff's Opposition to the Motion to Dismiss the Complaint*

## INTRODUCTION

The Complaint alleges that Federal Express Corporation ("FedEx") violated the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4316(b), because FedEx failed to provide reservists with paid leave when they took short-term military leave but provided paid leave to workers when they took comparable forms of non-military leave like jury duty. In its motion, FedEx agrees that USERRA § 4316(b) requires FedEx to provide reservists on short-term military leave the same "rights and benefits" other workers receive when they take comparable forms of non-military leave and that USERRA § 4303(2) defines those "rights and benefits" that must be provided equally. The only disputed question is whether paid leave is one of the "rights and benefits" that must be provided equally.

Despite FedEx's attempt to characterize the claim here as "novel," another Court in this District recently found "no material difference between [similar] allegations . . . and those in *Waltermyer v. Aluminum Co. of Am.*, 804 F.2d 821 (3d Cir. 1986)." *Scanlan v. Am. Airlines Grp., Inc.*, 384 F. Supp. 3d 520, 528 (E.D. Pa. 2019) (denying motion to dismiss). Every court to decide this question – except one that ignored *Waltermyer* (and the text and history of the statute) – has decided this issue in favor of reservists. As the *Scanlan* court explained, the definition of "rights and benefits" is defined "extremely broad[ly]" to cover "'the terms conditions, or privileges of employment,'" with illustrations that make clear "rights and benefits" include paid leave (*i.e.*, pay for not performing work). *Id.* at 526 (quoting 38 U.S.C. § 4303(2)). This holding is faithful to *Waltermyer*, which established equality as the test for workers on military and non-military leaves, and which Congress codified in § 4316(b). H.R. Rep. No. 103-65(1), at 33-34 (1993) ("House Rpt."). Even if the text was ambiguous, USERRA's history confirms "rights and benefits" covers "all attributes of the employment relationship," such as paid leave. *Id.* at 21.

FedEx mischaracterizes the Complaint as indirectly imposing a general mandate for employers to pay all reservists whenever they take military leave. But the Complaint merely seeks what the "the unambiguous text of USERRA" requires: equality for reservists and other workers when they take leave, not "preferential treatment." *Scanlan*, 384 F. Supp. 3d at 527; *see* Compl. ¶¶ 2-,5, 52 & Prayer for Relief. Section 4316(b) "only requires employees on military leave to be provided with comparable rights and benefits to which those on non-military absences are entitled. If a right and benefit is not provided to an employee on a non-military related absence, the right or benefit is not due the employee on military leave." *Scanlan*, 384 F. Supp. 3d at 527. The Court should reject FedEx's invitation to ignore USERRA's text and history based on "speculation about any collateral consequences," *id.*, and construe any ambiguity in favor of FedEx. To do so would nullify the law that Congress carefully enacted and violate the longstanding canon that any "'interpretative doubt is to be resolved in the veteran's favor'" when interpreting USERRA. *Id.* (quoting *Brown v. Gardner*, 513 U.S. 115, 118 (1994)).

Furthermore, the Court should reject FedEx's laches argument. USERRA bars a laches defense. Even if it were available, here it is not proper to apply laches at the pleading stage.

## ALLEGATIONS OF THE COMPLAINT

Gerard Travers has been a courier for FedEx since 1996 and is a retired Petty Officer, First Class in the United States Navy and the Naval Reserve. ECF No. 27 ("Compl.") ¶ 8. During his employment at FedEx from 1996 to 2010, he took short-term military leave to perform his reserve duties. *Id*. The Complaint alleges a single claim under USERRA § 4316(b) that FedEx violated § 4316(b) by failing to provide paid leave to workers who took short-term military leave, while providing paid leave to workers who took comparable forms of non-military leave. *Id.* ¶¶ 47-54. To support this claim, the Complaint alleges: (1) paid leave is among the "rights

and benefits" defined in USERRA § 4303(2) that must be provided equally under § 4316(b), *id.* ¶ 49, (2) short-term military leave is comparable to jury duty leave, sick leave, and bereavement leave (in duration, purpose, and voluntariness), *id.* ¶¶ 39-42; (3) when workers take such comparable leaves, FedEx pays them their usual compensation (or, for jury duty, their usual compensation minus what they receive from the government), *id.* ¶ 38; and (4) FedEx does not pay workers when they take short-term military leave. *Id.* ¶ 32.

## LEGAL STANDARD

When considering Rule 12(b)(6) motion for failure to state a claim, the complaint must be construed "in the light most favorable to the plaintiff, to determine whether it contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Sweda v. Univ. of Pa.*, 923 F.3d 320, 325 (3d Cir. 2019) (internal quotations omitted). In evaluating the complaint, the court "must examine the context of a claim, including the underlying substantive law, in order to assess its plausibility," including taking into account any "protective function" of the underlying statute. *Id.* "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted). A complaint cannot be dismissed based on an affirmative defense like laches unless the defense is apparent on its face. *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002).

## ARGUMENT

I.     **The Complaint alleges a plausible claim that FedEx violated USERRA § 4316(b).**

FedEx does not argue the Complaint fails to allege sufficient facts to support the claim. Nor does it argue short-term military leave is not comparable to jury duty or other paid leave that FedEx offers its employees. Def. Mem. at 5-6 & n.2 Instead, FedEx only argues that paid leave is not included in the "rights and benefits" defined in USERRA § 4303(2), and thus § 4316(b)'s

equality rule does not apply to paid leave—*i.e.*, that an employer can provide preferential treatment to workers on non-military leaves in the form of paid leave vis-à-vis reservists on military leave. *Id.* at 6-15. Contrary to FedEx's arguments, USERRA's text and history both demonstrate that paid leave is a right or benefit that must be afforded equally to reservists.

**A.    USERRA guarantees that workers who take military leave receive the same "rights and benefits" as workers who take comparable, non-military leaves.**

In addition to providing reservists a right to reemployment and protections against discrimination when they are working, 38 U.S.C. §§ 4311(a), 4312, USERRA requires employers to give reservists on military leave the same "rights and benefits" as workers on other comparable leaves. *Id.* § 4316(b)(1)(B). Section 4316(b) provides that "a person who is absent from a position of employment by reason of service in the uniformed services shall be":

> (B) entitled to such other rights and benefits no determined by seniority as are generally provided by the employer of the person to employees having similar seniority, status, and pay who are on furlough or leave of absence under a contract, agreement, policy, practice, or plan in effect at the commencement of such service or established while such person performs such service.

38 U.S.C. § 4316(b)(1)(B).

Section 4316(b) re-codified an equality rule that was recognized under the Veterans Reemployment Rights Act ("VRRA"): workers on military leave are entitled to the same "rights and benefits" as workers who take other forms of leave. S. Rep. No. 103-158, at 58 (1993) ("Senate Rpt.") (explaining that § 4316 "would codify court decisions that have interpreted current law [VRRA] as providing a statutorily-mandated leave of absence for military service that entitles servicemembers to participate in benefits that are accorded other employees."). The court decision that Congress specifically identified § 4316(b) as codifying was *Waltermyer v. Aluminum Co. of America*, 804 F.2d 821 (3d Cir. 1986). In *Waltermyer*, the Third Circuit held that an employee who was on military leave during a company-paid holiday was entitled to be

4

paid because the employer also paid employees who took jury duty leave on the holiday. *Waltermyer*, 804 F.2d at 824-26. The Third Circuit recognized "equality as the test," and explained that a worker who took military leave must receive holiday pay on the same terms as workers who took jury duty that day. *Id*. This rule "merely establishes equality for . . . reservists, not preferential treatment." *Id.* at 825. In adopting § 4316(b), Congress explained that "to the extent the employer policy or practice varies among various types of non-military leaves of absence, the most favorable treatment accorded any particular leave would also be accorded the military leave." House Rpt. at 33-34; *see* 20 C.F.R. § 1002.150(b).

**B.     Paid leave is among the "rights and benefits" that must be provided equally to reservists on military leave and employees on comparable leaves.**

**1.     USERRA's text is unambiguous that paid leave is a right or benefit.**

USERRA's term "rights and benefits" is "given an expansive interpretation," *Pucilowski v. Dep't of Justice*, 498 F.3d 1341, 1344 (Fed. Cir. 2007) (finding statutorily paid military leave was a right or benefit). Section 4303(2) defines "rights and benefits" as follows:

> the terms, conditions, or privileges of employment, including any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice and includes rights and benefits under a pension plan, a health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours or location of employment.

38 U.S.C. § 4303(2)*.*  This definition "is intentionally framed in general terms to encompass the potentially limitless variations in benefits of employment," *Carder v. Continental Airlines, Inc*., 636 F.3d 172, 182 (5th Cir. 2011).

When a statute's text "is unambiguous and the statutory scheme is coherent and consistent—as is the case here—the inquiry ceases." *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1976 (2016) (cleaned up). But when there is any ambiguity in USERRA's text

or history, that "interpretive doubt is to be resolved in the veteran's favor." *Brown*, 513 U.S. at 118.[1] Thus, it not enough for FedEx to offer a plausible interpretation. Instead, it must show it has the *only* plausible view—*i.e.*, that USERRA unambiguously excludes paid leave from the definition of "rights and benefits." FedEx cannot do that. As the court held in *Scanlan*, § 4303(2)'s text is "unambiguous" that paid leave is a right or benefit. 384 F. Supp. 3d at 527.

Rather than insert any language limiting this core meaning, Congress did the opposite. It filled the rest of the definition with "expansive or illustrative" words—like "including" and "any"—followed by still more general terms like "any advantage, profit, privilege, [or] gain." 38 U.S.C. § 4303(2). By using "the words 'including' and 'includes,' the words following 'including' and 'includes' are simply illustrative of the expansive language 'the terms, conditions or privileges of employment' which precedes the illustrations." *Scanlan*, 384 F. Supp. 3d at 526.[2]

The basic definition of "rights and benefits" is plainly satisfied here. When an employer offers paid leave—*i.e.*, pays employees who are not working—it is unquestionably a "term, condition, or privilege of employment" under the ordinary meaning of those words. *See American Heritage Dictionary* (5th ed. 2020) ("Term" is "[o]ne of the elements of a proposed or concluded agreement; a condition."); *id.* ("Privilege" is "[a] special advantage, immunity,

---

[1] The Supreme Court has directed courts to "construe USERRA's provisions liberally, in favor of the service member." *Gordon v. Wawa, Inc.*, 388 F.3d 78, 81 (3d Cir. 2004) (citing *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 285 (1946)); *see King v. St. Vincent's Hosp.*, 502 U.S. 215, 220 n.9 (1991). Congress expressly stated in enacting USERRA that courts must apply the *Fishgold* canon when interpreting USERRA. House Rpt. at 19; Senate Rpt. at 40.

[2] *See Bloate v. United States*, 559 U.S. 196, 207 (2010) ("including" is "an expansive or illustrative term"); *Smith v. Berryhill*, 139 S. Ct. 1765, 1774 (2019) ("Congress' use of the word 'any' suggests an intent to use that term expansively.") (cleaned up); *Chickasaw Nation v. United States*, 534 U.S. 84, 89 (2001) ("To 'include' is to 'contain' or 'comprise as part of a whole.'"); *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219 (2008) ("[T]he word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'").

permission, right, or benefit granted to or enjoyed by an individual, class, or caste."). "Payment of an employee's salary while the employee is absent from work is a benefit provided during the absence." *Tully v. Dep't of Justice*, 481 F.3d 1367, 1370 (Fed. Cir. 2007).

The textual inquiry could thus end there. But the rest of § 4303(2) confirms paid leave is a right or benefit. It says the definition "includ[es] any advantage, profit, privilege, gain, status, account, or interest" of employment. 38 U.S.C. § 4303(2). Receiving money from an employer—for performing work or for leave—is plainly an "advantage," "profit," "privilege," or "gain" of employment; in fact, wages (for working or not) are 70% of workers' total compensation.[3]

Section 4303(2)'s 11 illustrations of "rights and benefits" confirm the same result. They cover all manner of rights and benefits, including examples where workers get paid for not performing work, such as "severance pay, supplemental unemployment benefits, [paid] vacations." Paid leave is no different. As the *Scanlan* court properly observed:

> In *Waltermyer*, our Court of Appeals awarded holiday pay, that is wages for work not performed. 804 F.2d at 822. If compensation for holidays in *Waltermyer* and for severance pay and vacations explicitly referenced in § 4316(b)(1) are merely illustrations of the definition of rights and benefits and involve pay for work not performed, we are hard pressed to understand why compensation for time on military leave for work not performed would not also fit within the definition.

*Scanlan*, 384 F. Supp. 3d at 526. Indeed, all these examples of pay for not performing work are treated the same for tax purposes. IRS Publ'n 15, https://www.irs.gov/publications/p15 (Ex. B).

FedEx misconstrues the verb "accrue" in § 4303(2) to argue "rights and benefits" do not encompass wages or paid leave. Def. Mem. at 11-15. But "accrue" does not modify § 4303(2)'s basic definition of "terms, conditions, or privileges of employment" or illustrations. It modifies

---

[3] *American Heritage Dictionary* ("Advantage" is a "[b]enefit or profit; gain."); *id.* ("Profit" is "[a]n advantageous gain or return; benefit."); *id.* ("Gain" is "[s]omething gained or acquired"—*i.e.*, "a profit or advantage; benefit"—and "[a]n increase in amount or degree."); Bureau of Labor Statistics, Employer Costs for Employee Compensation, https://perma.cc/NT88-83K6 (Ex. A).

the second clause, "including any advantage, profit, privilege, gain, status, account, or interest."

Even so, the word "accrues" does not help FedEx at all. "Accrue" means "[t]o come into existence as an enforceable claim or right; to arise." *Black's Law Dictionary* 23 (9th ed. 2009); *see Gabelli v. S.E.C.*, 568 U.S. 442, 448 (2013); *Scanlan*, 384 F. Supp. 3d at 527 (noting this is the "first definition" of "accrue."). Thus, when § 4303(2) uses the phrase "accrues by reason of an employment contract or agreement or an employer policy, plan, or practice," it is referring to any profit, privilege, or gain that *arises from* a contract, policy, or practice. Whenever rights or benefits are offered under a policy, they accrue. They need not be accumulated or earned over time. *Scanlan*, 384 F. Supp. 3d at 527 (a right to paid leave "accrues as an enforceable claim in the exact same way as the right to holiday pay, severance pay, or vacation pay, all for time periods when no work is performed."); *Waltermyer*, 804 F.2d at 825 (referring to holiday pay as "accruing"). The Department of Labor's regulations confirm the same: the "rights and benefits" that must be offered equally to workers on military leave "include those in effect at the beginning of the employee's employment and those established after employment began." 20 C.F.R. § 1002.150(a). Indeed, many of § 4303(2)'s illustrations are things a worker is offered on day one: "a pension plan, a health plan . . . and the opportunity to select work hours or locations."

FedEx argues the generic word "benefits" is associated with fringe benefits and does not include wages. Def. Mem. at 10-11. But this overlooks that the term in § 4316(b) and § 4303(2) is "*rights* and benefits"—not just "benefits"—and it has an extremely broad, detailed definition with 81 words and examples of wage-based compensation. Contrary to FedEx's view that wages cannot accrue, courts and Congress have routinely used "accrued" to refer to wages.[4]

---

[4] *See, e.g.*, 41 U.S.C. § 353(c)(1) (referring to "accrued wages and fringe benefits"); 10 U.S.C. § 707a(b)(1)-(2) (referring to "accrued pay and allowances" and "the amount of pay and allowances that is deemed to have accrued"); 26 U.S.C. § 6331(a) (referring to "accrued salary or

Finally, § 4303(2)'s parenthetical phrase that "rights and benefits" "include[] wages or salary for work performed" confirms that paid leave is a right or benefit. When construing a parenthetical that begins with "(including . . .)" the word "including" is intended to be illustrative, not limiting. *Chickasaw Nation*, 534 U.S. at 89 ("The use of parentheses emphasizes the fact that that which is within is meant simply to be illustrative, hence redundant—a circumstance underscored by the lack of any suggestion that Congress intended the illustrative list to be complete."). Thus, this parenthetical in no way limits the basic definition of "rights and benefits." Nor can the express inclusion of wages for work *performed* mean Congress intended to exclude wages for work *not performed* (*i.e.*, paid leave). To draw such an inference would be an improper application of *expressio unius*, which does not apply where the term "including" introduces a list of one or more items. *Dahlstrom v. Sun-Times Media, LLC*, 777 F.3d 937, 943 (7th Cir. 2015) ("[T]he term 'including' is typically 'illustrative and not limitative.'"). To the contrary, the parenthetical confirms wages are rights or benefits. The other examples—"bonuses, severance pay, supplemental unemployment benefits, [and] vacations," 38 U.S.C. § 4303(2)— demonstrate this is true even if wages are paid for not working. *Scanlan*, 384 F. Supp. 3d at 526.

## 2. USERRA's history confirms that paid leave is a right or benefit.

Even if USERRA's text was not clear, its legislative history provides complete clarity. First, a prior version of the parenthetical on "wages or salary" confirms that paid leave is a right or benefit. The reason § 4303(2) now explicitly provides that "rights and benefits" "includ[es] wages or salary *for work performed*" is this category used to be expressly excluded. Before 2010 there was one exception—a parenthetical that read "*other than* wages or salary for work

---

wages"); *Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionery Workers Union*, 430 U.S. 243, 247 (1977) (employer paid "accrued wages and accrued vacation pay" under contract); *Su v. M/V S. Aster*, 978 F.2d 462, 468, 472 (9th Cir. 1992) (noting under federal law employer owes workers "their accrued wages" that were "'earned and unpaid'" (quoting 46 U.S.C. § 10313(e))).

performed." 38 U.S.C. § 4303(2). But Congress eliminated the exemption in 2010, removing "the words 'other than' from section 4303(2) and replac[ing] them with the word 'including.'" *Gross v. PPG Indus., Inc.*, 636 F.3d 884, 889 n.3 (7th Cir. 2011). Congress inserted this "more inclusive language," *Scanlan*, 384 F. Supp. 3d at 526, solely to overrule an Eighth Circuit decision that held § 4311 did not bar wage discrimination for *working* employees. 156 Cong. Rec. S7656-02 (Sept. 28, 2010); *see Gagnon v. Sprint Corp.*, 284 F.3d 839 (8th Cir. 2002). Nothing in the amendment's history suggests by amending § 4303(2) to expressly protect employees who are working from wage discrimination under § 4311(a) that Congress implicitly excluded paid leave from § 4316(b)'s equality rule that protects employees who are on leave.

Indeed, the correct reading of that pre-2010 parenthetical is that it expressly excluded *only* wages for work *performed* and did not implicitly exclude wages for work *not performed* like paid leave. "The force of any negative implication . . . depends on context," *NLRB v. SW General, Inc.*, 137 S. Ct. 929, 940 (2017) (quotation marks omitted). "When Congress provides exceptions in a statute"—as it once did (but no longer does) in § 4303(2)—the "proper inference" is "that Congress considered the issue of exceptions and, in the end, limited the statute to the ones set forth." *United States v. Johnson*, 529 U.S. 53, 58 (2010); *see Keeley v. Loomis Fargo & Co.*, 183 F.3d 257, 266 (3d Cir. 1999) (inclusion of an exception in a law "indicates its intention to exclude other exemptions."). Here, that inference is especially strong. If Congress wanted to exclude wages or salary for work performed *and* wages or salary for work *not* performed, it would have simply said, "other than wages or salary." It did not do so. Instead, it added the words "for work performed." Those words had to mean something. To read the pre-2010 law as containing an accompanying, implicit exception for wages or salary for work *not* performed would render the words "for work performed" superfluous. That reading thus "runs

aground on the so-called surplusage canon," *Advocate Health Care Network v. Stapleton*, 137 S. Ct. 1652, 1659 (2017). Thus, the pre-2010 phrase "other than" signaled a clear intent to exclude only those wages for work performed, and not also wages for work not performed. The 2010 amendment did not somehow flip these two categories, trading one exception for another. All that it did is *expand* the definition of "rights and benefits" by ending the exemption. Eliminating that (explicit) exception did not, through some bizarre act of alchemy, give rise to a new (implicit) exception for a right that had previously been covered by § 4303(2).

Second, the legislative history shows that in 1994 Congress intended to include paid leave in "rights and benefits." It stated that "rights and benefits" is "broadly defined to include all attributes of the employment relationship" and § 4303(2)'s examples are "illustrative and not intended to be all inclusive." House Rpt. at 21. Paid leave is clearly one attribute of employment.

Moreover, when enacting USERRA, Congress "intend[ed] to affirm the decision in *Waltermyer v. Aluminum Co. of America*, 804 F.2d 821 (3d Cir. 1986) that, to the extent the employer policy or practice varies among various types of non-military leaves of absence, the most favorable treatment accorded any particular leave would also be accorded the military leave, regardless of whether the non-military leave is paid or unpaid." *Id.* at 33-34; *accord* Senate Rpt. at 58; *accord* 20 C.F.R. § 1002.150(b). This history reveals two key points. One, Congress sought to codify *Waltermyer*, which held that reservists on short-term military leave are entitled to holiday pay if workers on comparable leaves get holiday pay. Because *Waltermyer* "awarded holiday pay, that is wages for work not performed," *Scanlan*, 384 F. Supp. 3d at 526, its holding recognizes that "rights and benefits" include wages for time not working. Two, by emphasizing that military leave must be given "the most favorable treatment accorded any particular [comparable] leave . . . regardless of whether the non-military leave is paid or unpaid,"

House Rpt. at 34, Congress made clear that an employer cannot deny reservists on leave a subset of the full "rights and benefits" given to other workers on comparable leaves, such as paid leave.

This legislative history confirms that in § 4316(b) and § 4303(2) Congress codified *Waltermyer's* basic principle that "equality [i]s the test," *without any limitation* of which "rights and benefits" qualify. In *Waltermyer*, the specific question before the court was whether a worker who took military leave on a holiday was entitled to be paid for that day because workers who took jury leave on that day were paid. 804 F.2d at 824-26. The court held he was. In doing so, it recognized "equality as the test"—"not preferential treatment"—for workers on military leave versus workers on comparable non-military leaves. *Id.* at 824-25. "Viewed in this light," "relieving those on military leave from the work requirement" for entitlement to holiday pay, as the employer did for employees on comparable non-military leaves like jury duty, "merely establishes equality for National Guardsmen and reservists, not preferential treatment." *Id.* at 825.

Because *Waltermyer* "was not suing for compensation for other days not worked" besides holidays, the Third Circuit "limited its holding to the question of what it described as 'holiday pay.'" *Scanlan*, 384 F. Supp. 3d at 525; *see Waltermyer*, 804 F.2d at 825. But the logic of *Waltermyer's* reasoning is not so limited. As the dissenting judge rightly noted: "If a reservist and [a] juror are equal, then the reservist is not entitled to just holiday pay but to full pay for all days not worked, since employees absent for jury duty receive full pay." 804 F.2d at 827 (Hunter, J., dissenting). By codifying *Waltermyer's* equality test without excluding paid leave from "rights and benefits" and by specifying that reservists must get the most favorable treatment accorded to other workers on leave, Congress ensured that the equality rule applies to paid leave.

### 3. All but a single court has held paid leave is a right or benefit under § 4303(2) that must be provided equally to reservists under § 4316(b)

Nearly every court has agreed that paid leave is a right or benefit under § 4303(2) and

paid leave is subject to § 4316(b)'s equality rule. *See Tully*, 481 F.3d at 1370 ("[p]ayment of an employee's salary while the employee is absent from work is a benefit provided during the absence."); *Pucilowski*, 498 F.3d at 1344 ("[W]e restate that [paid] military leave afforded by 5 U.S.C. § 6323(a) is a benefit of employment [under USERRA]."). In addressing the same question at issue here, at least four courts have followed the logic of *Waltermyer* and USERRA's text to find "a viable claim under § 4316(b)(1)" when an employer does not pay workers on short-term military leave but pays those on comparable leaves. *Scanlan*, 384 F. Supp. 3d at 524.[5]

FedEx identifies a single case that supports its position. Def. Mem. at 6 (citing *White v. United Airlines, Inc.*, 416 F. Supp. 3d 736 (N.D. Ill. 2019)).[6] But that cursory opinion failed to analyze USERRA's text or history and did not even cite much less analyze *Waltermyer*. In addition to ignoring cases that applied § 4316(b)'s equality rule to paid leave, the *White* court's analysis consisted of noting that Congress did not impose a general duty to pay workers

---

[5] Order Denying Motion for Judgment on Pleadings, *Huntsman v. Sw. Airlines*, No. 19 Civ. 83 (N.D. Cal. Nov. 27, 2019), ECF No. 59 (denying motion for reasons stated at hearing); 11/27/19 Tr. in *Huntsman*, at 24–25, ECF. No. 62 (hearing in which court explained reasons for denying motion and stated paid leave is a right or benefit); *Clarkson v. Alaska Airlines*, Inc., No. 19 Civ. 5, 2019 WL 2503957, at *7 (E.D. Wash. June 17, 2019) (denying motion to dismiss); *Brill v. AK Steel Corp.*, No. 09 Civ. 534, 2012 WL 893902, at *6 (S.D. Ohio Mar. 14, 2012) (denying summary judgment motion, explaining the employer "would not be providing anything it does not already provide to employees on jury duty/witness leave by paying Plaintiff his full salary for time spent on military leave. . . . Defendant would be complying with the statutory mandate to give the employee the most favorable treatment accorded any comparable form of leave.").

[6] FedEx points to *Gordon v. Wawa, Inc.*, 388 F.3d 78 (3d Cir. 2004), which said in dicta that "paid military leave" is "a benefit that USERRA does not guarantee." *Id.* at 82. But *Gordon* did not analyze § 4303(2) or § 4316(b) and that case did not remotely raise the question of whether or when military leave must be paid under USERRA. FedEx also cites *Duffer v. United Cont'l Holdings, Inc.*, 173 F. Supp. 3d 689 (N.D. Ill. 2016), but that case helps Plaintiff. It held that if an employer paid retroactive wages to employees who took jury duty or sick leave, the employer must pay retroactive wages to employees who took military leave (*i.e.*, paid leave). *Id.* at 704. And *Perz v. Sch. City of Hammond*, 24 F.3d 899 (7th Cir. 1994), is inapposite. There, a reservist suing under the VRRA tried to enforce a right under a state law to receive paid military leave but did not claim she should get paid leave because *other employees* got paid leave. *Id.* at 900-01.

whenever they take military leave and assuming that Congress could not have intended § 4316(b) to require paid leave under its equality rule without saying so "clearly." *Id.* at 738-39.  In doing so, the *White* court ignored general principles of statutory construction and the canon that any ambiguity must be resolved in favor of reservists like Plaintiff. *Gardner*, 513 U.S. at 118.

#### 4. FedEx's arguments disregard USERRA's text and history and focus primarily on policy grounds to nullify the statute

Rather than address the relevant text of USERRA—§ 4303(2) and § 4316(b)—or its history, FedEx raises a litany of excuses about why those provisions cannot mean what they say.

First, it argues that if Congress wanted military leave to ever be paid, it would have said so expressly and clearly, and cites dicta in *Monroe v. Standard Oil Co.*, 452 U.S. 549 (1981), that said USERRA's predecessor law did not impose a general mandate for paid military leave. Def. Mem. at 2, 6, 9, 13. But Plaintiff is not claiming there is such a general mandate under USERRA—only that there is a limited duty to offer paid leave equally to workers on military leave and comparable leaves. And *Monroe* only helps Plaintiff. The Third Circuit distinguished *Monroe* as a case where a reservist wanted the same rights as employees who *were working* from *Waltermyer*, where a reservist wanted the same rights to holiday pay as employees who *were not working*. 804 F.2d at 823. Congress codified *Waltermyer*'s limited equality rule that applies only when employees are not working. And FedEx's demand for a clear statement that paid leave is required violates USERRA's canon of liberal construction. *Scanlan*, 384 F. Supp. 3d at 527.

Next, FedEx points to statutory text in other parts of USERRA and another federal law to argue that this Court should ignore the plain text of § 4316(b) and § 4303(2). This is misguided.

FedEx argues USERRA's remedies section refers to "wages and benefits," 38 U.S.C. § 4323(d)(1)(B), and it would be irrational to refer separately to "wages" there if "wages" were already included in the term "benefits" (which is defined identically to "rights and benefits" in §

4303(2)). Def. Mem. at 15. But there is a simple reason why § 4323(d)(1)(B) refers to "*wages* or benefits" disjunctively. Wages in the remedies section serves a different purpose than "wages" in § 4303(2). Section 4323(d)(1)(B) authorizes backpay and front pay to compensate people who lose "wages" when they are fired or denied reemployment. 38 U.S.C. § 4323(d)(1)(C); *see, e.g.*, *Petty v. Metro. Gov't of Nashville & Davidson Cty.*, 687 F.3d 710, 716-18 (6th Cir. 2012); 20 C.F.R. § 1002.312(c). In contrast, the "wages" in § 4303(2) are the wages that employers must offer equally to employees who are working (under § 4311(a)) or not working under § 4316(b)).

FedEx claims requiring paid leave under § 4316(b) would render superfluous § 4316(d), which gives reservists a right to use vacation or paid time off to get paid during military leave. Def. Mem. at 14. That is wrong. All reservists will still benefit from § 4316(d), as § 4316(b) may not mandate paid leave for longer-term military leaves and many workers will never get paid leave under § 4316(b) if their employers do not offer pay for comparable leaves.

Next, FedEx argues Plaintiff's construction purportedly "conflicts with Congress's considered decision that paid military leave for federal employees should be limited to 15 days per year." 5 U.S.C. § 6323(a)(1). But Section 6323(a)(1) is not a "cap" on paid military leave, as FedEx claims. Def. Mem. at 10. It grants a right for federal workers to take up to 15 days of paid military leave annually. If § 4316(b)'s equality rule might in some instances allow some federal workers to receive paid military leave beyond the 15 days in § 6323(a)(1), there is no conflict. It does not take away or impliedly repeal the right to take 15 days of paid military leave. As FedEx's own case says, "[W]hen two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Simon v. FIA Card Servs., N.A.*, 732 F.3d 259, 274 (3d Cir. 2013) (internal quotations omitted). Here, there is no difficulty at all reading § 6223(a)(1) and § 4316(b) to coexist.

Finally, FedEx argues that Congress could not have intended to apply § 4316(b)'s equality rule to paid leave because it could have negative consequences on employers, and because some states have enacted paid leave laws applying § 4316(b) as written could result in many reservists receiving paid military leave. But USERRA's "unambiguous text" cannot be disregarded based on "speculation about any collateral consequences." *Scanlan*, 384 F. Supp. 3d at 527. The court's role is "to apply, not amend, the work of the People's representatives." *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1726 (2017). This Court "must assume that the language of [the statute] reflects Congress's choice." *Intel v. Sulyma*, 140 S. Ct. 768, 778 (2020). "Congress sought by § 4316(b)(1) to guarantee a measure of equality of treatment with respect to military and non-military leaves and to strike an appropriate balance between benefits to employee-service persons and costs to employers. USERRA does not authorize the courts to add to or detract from that guarantee or to restrike that balance." *Rogers v. City of San Antonio*, 392 F.3d 758, 769-70 (5th Cir. 2004).

FedEx's concerns are also incredibly overblown. Section 4316(b) only requires paid military leave if an employer offers paid leave for *comparable* leaves. 20 C.F.R. § 1002.150(b). Although some states have mandated paid leave for jury duty or sick leave, there is no guarantee that courts or juries will conclude those types of leave are comparable to military leave. And contrary to FedEx's suggestion that in 1994 Congress legislated against the backdrop of "ubiquitous" state paid leave requirements, Def. Mem. at 8 & n. 6, many of these laws are of recent vintage. Nine of the 13 states that require paid sick leave adopted those laws in the last five years. *See* Conn. Gen. Stat 31-57r-31-57w (effective 2012); Cal. Lab. Code § 245 *et seq*. (effective 2015); Ariz. Rev. Stat. § 23-364 and 23-371 *et seq*. (effective 2016); N.Y. Lab. Law § 196-b (effective 2021). Even if many reservists are entitled to paid short-term military leave, the

burden is quite modest—hardly hiding an elephant in a mousehole. Under 1% of U.S. workers are reservists and many employers already offer paid time off for military leave.[7]

## II.    A laches defense is foreclosed by USERRA and inappropriate at this stage.

The court should reject FedEx's laches defense. *First*, laches is no longer a defense to USERRA claims as a matter of law. In 2008, Congress responded to courts applying a four-year federal limitations period by amending USERRA to make clear there is *no time limit* to file suit. Pub. L. 110–389, § 311(f)(1), 122 Stat. 4163 (Oct. 10, 2008). Now, "*[i]f any person seeks to file a complaint* or claim with the Secretary, the Merit Systems Protection Board, or a Federal or State court under this chapter alleging a violation of [USERRA], *there shall be no limit on the period for filing the complaint* or claim." 38 U.S.C. § 4327(b) (emphasis added). The text means what it says: there is *no limit* on the time to file a USERRA complaint. But laches is exactly what § 4327(b) expressly bars, a "time limitation on a party's right to bring suit," *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002). Thus, laches is no longer a valid defense.[8] FedEx fails to analyze whether § 4327(b) bars laches. While it notes *Sumrall v. Ensco Offshore Co.*, No. 17 Civ. 48, 2018 WL 2088761 (S.D. Miss. May 7, 2018), applied laches to "post-2008 USERRA claims," Def. Mem. at 17, *Sumrall* did not analyze § 4327(b)'s impact on laches. It just applied pre-2008 Fifth Circuit law that allowed laches. 2018 WL 2088761, at *8.

---

[7] Dep't of Defense, 2016 Demographics: Profile of the Military Community 59 (2016), https://perma.cc/TMG6-XLVP (Ex. C); Bureau of Labor Statistics, Employment Situation Summary Table A. Household data (2020), https://perma.cc/LT8S-9JRF (Ex. D); *e.g.*, Working Here at Lockheed Martin: Benefits & Amenities, https://perma.cc/X865-647K (Ex. E).

[8] When Congress similarly amended a law to state "no limitation shall terminate the period within which suit may be filed," 20 U.S.C. § 1091a(2), courts uniformly held that laches was barred. *United States v. Lawrence*, 276 F.3d 193, 196 & n.2 (5th Cir. 2001); *United States v. Baker*, No. 08 Civ. 374, 2009 WL 1407018, at *3 (E.D. Tenn. May 19, 2009). To apply laches there "would undermine Congress's intent in eliminating the statute of limitations." *Hamilton v. United States*, No. 03 Civ. 669, 2005 WL 2671373, at *4 (S.D. Ohio Oct. 19, 2005).

*Second*, it is not proper to decide FedEx's laches defense on a motion to dismiss. As in nearly every case, "[t]he determinations of the components of the laches defense—inexcusable delay in bringing an action and prejudice to the defendant—are highly fact-based," which makes it "inappropriate to dismiss [a] complaint based on . . . laches," *Nat'l Ass'n of Chain Drug Stores v. Express Scripts, Inc.*, No. 12 Civ. 395, 2012 WL 3655459, at *7 (W.D. Pa. Aug. 27, 2012). In fact, "[l]aches is rarely subject to summary judgment." *Waddell v. Small Tube Prod., Inc.*, 799 F.2d 69, 74 n.2 (3d Cir. 1986) (citation omitted). As described below, the Complaint does not contain sufficient facts to allow the court to hold that laches is apparent on its face, and the factual issues FedEx speculates about will require discovery and a factfinder to decide them.

*Third*, FedEx has not proven inexcusable delay, and at all stages it "has the burden of establishing the elements of" laches, *United States v. Koreh*, 59 F.3d 431, 445-46 (3d Cir. 1995) (citation omitted), "since laches is a defense." *E.E.O.C. v. Great Atl. & Pac. Tea Co.*, 735 F.2d 69, 80 (3d Cir. 1984).[9] Its entire argument is that since 2004 Plaintiff took leave under FedEx's military leave policy but did not file suit until 2019, and "Plaintiff alleges no facts to plausibly explain this extensive delay." Def. Mem. at 17. This misses the point. *FedEx*—not Plaintiff— must prove inexecusable delay. *Koreh*, 59 F.3d at 445. That the complaint reveals a lengthy delay in filing suit does not *alone* establish unreasonable diligence or prejudice. *Helms v. Vill. of Clarendon Hills, Ill.*, No. 18 Civ. 8434, 2019 WL 2409596, at *3 (N.D. Ill. June 7, 2019)

---

[9] FedEx wrongly suggests the burden on laches could shift to Plaintiff under *Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 138 (3d Cir. 2005). Def. Mem. 17-18 n.10. *Santana* held the burden of proving laches shifts "as a result of [a plaintiff] filing the claim after the applicable statute of limitations [SOL] . . . had run." *Id.* at 138-39. But since USERRA has no SOL (and FedEx admits all claims since 2004 are not barred by a SOL), the burden does not shift. *Great Atlantic*, 735 F.2d at 81 ("burden remains on [defendant] to establish both elements of [laches] defense" as "[n]o [SOL] applies to an EEOC Title VII action"). Even if *Miller v. City of Indianapolis*, 281 F.3d 648, 653 (7th Cir 2002), holds a plaintiff bears the burden on delay, it conflicts with Third Circuit law. *Koreh*, 59 F.3d at 445; *cf. Great Atlantic*, 735 F.2d at 81.

(rejecting laches in USERRA case where employer "relies only on a passage of time to support laches without identifying allegations in [the] complaint that establish the elements of laches as a matter of law."). FedEx asserts a "decades-plus delay is plainly inexcusable as a matter of law." Def. Mem. at 18. But there is no such rule. *Helms*, 2019 WL 2409596, at *3 (refusing to dismiss USERRA case "based merely on the age of the alleged conduct, and citing *Garner v. Nat'l Railway Corp.*, No. 18 Civ. 3789, 2019 WL 414711, at *5 (N.D. Ill. Feb. 1, 2019) (same)). FedEx's own cases do not support such a rule. For example, *Maher v. City of Chicago*, 547 F.3d 817, 822 (7th Cir. 2008)—the only USERRA case FedEx cites—does not state a decade delay is inexcusable as a matter of law. Instead it affirmed a fact-specific summary judgment decision that a 12-year delay barred a claim as the worker knew his rights were violated, promptly filed an administrative complaint, but then waited 11 years to file his action. *Id.* at 821-23. In contrast to FedEx's cases where reservists knew their rights were violated but waited for over a decade,[10] nothing suggests Plaintiff knew his rights had been violated *until 2019*, when he filed this suit.

*Fourth*, nothing supports FedEx's burden to show prejudice. FedEx merely speculates that military leave records "*may* have been destroyed" and "[m]emories also fade," Def. Mem. at 19-20, but points to nothing concrete on prejudice such as dead key witnesses. That is because there is no such prejudice. Here, liability will focus on uniform leave policies FedEx has had since 2004 and their purposes, and damages will focus on the leave class members took. This information is currently available. In fact, in a 2019 settlement with a class of 4,093 reservists nearly identical to the class here, FedEx produced comprehensive records on when its workers

---

[10] *See Carmalt v. Gen. Motors Acceptance Corp.*, 302 F.2d 589, 590 (3d Cir. 1962) (plaintiff told by his supervisor he would not be reemployed due to his "mental disabilities and waited 17 years); *Leonick v. Jones & Laughlin Steel Corp*, 258 F.2d 48, 50 (2d Cir. 1958) (plaintiff aware of his claim, since he was initially denied reemployment in 1945 and he was reemployed in 1947 in "a job less desirable" that he "accepted . . . under protest," yet he did not file suit until 1957).

took military leave since 1996 and used those records to calculate the class members' damages.[11]

Even if records on when Plaintiff "was scheduled to work on a certain day that he had military

duty" were destroyed, it "may prejudice Plaintiff's claim for damages but is not a reason to bar

his claim based on laches." *Brill*, 2012 WL 893902, at \*12 (rejecting laches in USERRA case).

Moreover, FedEx's motion to transfer in this case identifies many available witnesses

with knowledge of the relevant facts, including high-ranking officials who supervised FedEx's

human resources for decades. ECF No. 29-2 at 4-7. This lack of spoliation defeats any claim of

prejudice. *Mock v. City of Rome*, 851 F. Supp. 2d 428, 436 (N.D.N.Y. 2012) (denying laches

defense to USERRA claim due to lack of spoliation). Finally, FedEx argues that it was

prejudiced as it *could* have changed its conduct to offer paid leave to reservists had Plaintiff filed

suit earlier. Def. Mem. at 19. But courts reject such self-serving speculative claims in USERRA

cases that an employer might have changed its conduct to avoid back pay or litigation costs.[12]

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion to Dismiss.[13]

---

[11] Mem. in Support of Motion for Final Approval at 1-2, 5, 12, *Cunningham v. Federal Express Corp.*, No 17. Civ. 845 (M.D. Tenn.) ("*Cunningham*"), ECF No. 90; Decl. of Tina Chiango in Support of Mot. for Final Approval ¶ 6, *Cunningham*, ECF No. 92; Notice of Class Settlement, ECF No. 92-1 at 1-5. Judicial notice may be taken of the court filings in this Opposition. *Hisey v. QualTek USA, LLC*, No. 18 Civ. 5129, 2019 WL 3936555, at \*3 (E.D. Pa. Aug. 20, 2019).

[12] *Cornetta v. United States*, 851 F.2d 1372, 1381 (Fed. Cir. 1988) ("[i]f back pay constitutes prejudice then virtually every suit could be said to be presumptively 'prejudicial' because most successful military claimants receive back pay"); *Novak v. Mackintosh*, 937 F. Supp. 873, 880 (D.S.D. 1996); *Seiler v. Hollidaysburg Am. Legion Ambulance Serv., Inc.*, No. 10 Civ. 41, 2011 WL 4017965, at \*8 (W.D. Pa. Sept. 8, 2011) ("[i]t would be an incredible feat of mental gymnastics to reconcile" defendant's claim of an earlier possible resolution when it "has taken the position in the instant litigation that Plaintiff is not entitled to the vacation pay").

[13] Travers will not seek the prospective declaratory relief in Paragraph C of the Prayer for Relief of the Complaint, without prejudice to other class members seeking such relief in the future.

Dated: May 8, 2020                                  Respectfully submitted,


                                                    /s/ Adam H. Garner
                                                    Adam H. Garner
                                                    THE GARNER FIRM LTD.
                                                    1515 Market Street, Suite 1200
                                                    Philadelphia, PA 19102
                                                    Tel: (215) 645-5955
                                                    Fax: (215) 645-5960
                                                    Email: adam@garnerltd.com

                                                    R. Joseph Barton
                                                    Colin M. Downes
                                                    BLOCK & LEVITON LLP
                                                    1735 20th Street NW
                                                    Washington, DC 20009
                                                    Tel: (202) 734-7046
                                                    Fax: (617) 507-6020
                                                    Email: jbarton@blockesq.com
                                                    Email: colin@blockesq.com

                                                    Peter Romer-Friedman
                                                    GUPTA WESSLER PLLC
                                                    1900 L Street NW, Suite 312
                                                    Washington, DC 20036
                                                    Tel: (202) 888-1741
                                                    Email: peter@guptawessler.com

                                                    Michael J. Scimone
                                                    OUTTEN & GOLDEN LLP
                                                    685 Third Avenue, 25th Floor
                                                    New York, NY 10017
                                                    Tel: (212) 245-1000
                                                    Email: mscimone@outtengolden.com

                                                    Matthew Z. Crotty
                                                    CROTTY & SON LAW FIRM, PLLC
                                                    905 W. Riverside Ave.
                                                    Suite 404
                                                    Spokane, WA 99201
                                                    Tel: (509) 850-7011
                                                    Email: matt@crottyandson.com

Thomas G. Jarrard
LAW OFFICE OF THOMAS G.
JARRARD LLC
1020 N. Washington Street
Spokane, WA 99201
Tel: (425) 239-7290
Email: tjarrard@att.net

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing Plaintiff's Opposition to Motion to Dismiss was served

on all counsel of record in this case by CM/ECF on May 8, 2020.

Mark W. Robertson
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, NY 10036
Tel: (212) 326-4329
Fax: (212) 326-2061
Email: mrobertson@omm.com

M. Tristan Morales
O'MELVENY & MYERS LLP
1625 Eye Street NW
Washington, DC 20016
Tel: (202) 383-5112
Email: tmorales@omm.com

Colleen Hitch Wilson
Melissa McCoy Gormly
FEDEX EXPRESS CORPORATION
3620 Hacks Cross Road
Memphis, TN 38125
Tel: (901) 434-8338
Email: chitchwilson@fedex.com
Email: melissa.gormly@fedex.com

Ryan Thomas Becker
FOX ROTHSCHILD LLP
Stone Manor Corp Center
2700 Kelly Road, Suite 300
Philadelphia, PA 18976
Tel: (215) 345-7500
Email: rbecker@foxrothschild.com

/s/ Adam H. Garner
Adam H. Garner

23