**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GERARD TRAVERS, on behalf of himself and all others similarly situated,<br><br>                Plaintiff,<br><br>-vs.-<br><br>FEDERAL EXPRESS CORPORATION,<br><br>                Defendant. | Civil Action No. 2:19-cv-06106-MAK |

### **DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

Mark W. Robertson (*admitted pro hac vice*)
O'MELVENY & MYERS LLP
7 Times Square
New York, NY 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
mrobertson@omm.com

M. Tristan Morales (*admitted pro hac vice*)
O'MELVENY & MYERS LLP
1625 Eye St NW
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414
tmorales@omm.com

Ryan T. Becker
FOX ROTHSCHILD LLP
2000 Market Street, 20th Fl.
Philadelphia, PA 19103-3222
Telephone: (215) 299-2033
Facsimile: (215) 299-2150
rbecker@foxrothschild.com

Colleen Hitch Wilson (*admitted pro hac vice*)
FEDERAL EXPRESS CORPORATION
3620 Hacks Cross Road
Memphis, TN 38125
Telephone: (901) 434-8338
chitchwilson@fedex.com

*Attorneys for Defendant Federal Express Corporation*

## TABLE OF CONTENTS

                                                                        **Page**

ARGUMENT ................................................................................................................................. 1

I.     USERRA DOES NOT REQUIRE PAID MILITARY LEAVE ....................................... 2

        A.     "Paid Leave" Is Not A Benefit Protected By USERRA ........................................ 2

        B.     Plaintiff's Construction Would Impermissibly Imply A Congressional Intent To Alter Fundamental Aspects Of The Paid Military Leave Scheme ......... 4

        C.     Plaintiff's Interpretation Conflicts With USERRA's History ............................... 7

        D.     Plaintiff's Interpretation Finds No Support In Case Law ...................................... 8

II.    PLAINTIFF'S CLAIM IS BARRED BY LACHES ............................................ 9

CONCLUSION ............................................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brill v. AK Steel Corp.*,
  2012 WL 893902 (S.D. Ohio Mar. 14, 2012) .......................................................................... 8

*Carmalt v. Gen. Motors Acceptance Corp.*,
  302 F.2d 589 (3d Cir. 1962) .................................................................................................... 9

*Church of Scientology of Cal. v. IRS*,
  484 U.S. 9 (1987) ..................................................................................................................... 8

*Corbin v. Sw. Airlines, Inc.*,
  2018 WL 4901155 (S.D. Tex. Oct. 9, 2018) ........................................................................... 9

*Crawford Fitting Co. v. J.T. Gibbons, Inc.*,
  482 U.S. 437 (1987) ................................................................................................................. 6

*Eager v. Magma Copper Co.*,
  389 U.S. 323 (1967) ................................................................................................................. 2

*Gonzales v. Oregon*,
  546 U.S. 243 (2006) ................................................................................................................. 7

*Gordon v. Wawa, Inc.*,
  388 F.3d 78 (3d Cir. 2004) .................................................................................................. 1, 2

*Gruca v. U.S. Steel Corp.*,
  495 F.2d 1252 (3d Cir. 1974) ................................................................................................ 10

*Miller v. City of Indianapolis*,
  281 F.3d 648 (7th Cir. 2002) ................................................................................................... 9

*Minn. Mining & Mfg. Co. v Beautone Specialties Co.*,
  82 F. Supp. 2d 997 (D. Minn. 2000) ..................................................................................... 10

*Mosley v. Sec'y of Navy*,
  522 F. Supp. 1165 (E.D. Pa. 1981) ......................................................................................... 9

*Pucilowski v. Dep't of Justice*,
  498 F.3d 1341 (Fed. Cir. 2007) ............................................................................................... 2

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
  566 U.S. 639 (2012) ................................................................................................................. 5

*Scanlan v. Am. Airlines Grp.*,
  384 F. Supp. 3d 520 (E.D. Pa. 2019) ...................................................................................... 8

# TABLE OF AUTHORITIES
# (Continued)

**Page(s)**

*Si Min Cen v. Attorney General*,
  825 F.3d 177 (3d Cir. 2016) ............................................................................................... 4

*Waltermyer v. Aluminum Co. of Am.*,
  804 F.2d 821 (3d Cir. 1986) ...................................................................................... 1, 2, 3

*Warner v. Sun Ship, LLC*,
  2012 WL 1521866 (E.D. Pa. Apr. 30, 2012) ................................................................. 9, 10

*White v. United Airlines, Inc.*,
  416 F. Supp. 3d 736 (N.D. Ill. 2019) ................................................................................. 8

*Whitman v. Am. Trucking Ass'ns, Inc.*,
  531 U.S. 457 (2001) ....................................................................................................... 5, 7

*Yates v. United States*,
  574 U.S. 528 (2015) ........................................................................................................... 4

## Statutes

38 U.S.C. § 4303(2) ................................................................................................................. 2

38 U.S.C. § 4316(b) ................................................................................................................ 2

5 U.S.C. § 6323(a) ................................................................................................................... 5

51 Pa.C.S. § 4102 .................................................................................................................... 6

## Other Authorities

H.R. Rep. 103-65(I) (1993) ............................................................................................... 3, 8, 9

S. Rep. 103-158 (1993) ........................................................................................................... 9

S. Rep. 110-449 (2008) ........................................................................................................... 9

K. Piscitelly & E. Still, *The USERRA Manual* § 8.6 ............................................................ 10

## ARGUMENT

The fact of receiving a regular wage is not a "benefit" protected by USERRA. Plaintiff does not dispute that point. Instead, he argues that the benefit he has been denied is "paid leave"—i.e., because FedEx provides its employees paid jury duty, sick, and bereavement leave, USERRA also requires it to provide paid military leave. That is wrong. "Paid leave" is not a benefit but a generic *category* of benefits, which includes the specific *types of* benefits just described (i.e., paid jury duty, sick, and bereavement). As the Third Circuit has recognized, "paid military leave" would also be within that category of benefits, *Gordon v. Wawa, Inc.*, 388 F.3d 78, 82 (3d Cir. 2004), but FedEx does not provide any employees paid military leave, so USERRA does not entitle Plaintiff to that benefit either. Indeed, section 4316(b) only requires employers to provide service members on a military leave of absence the same benefits that other employees get *during* comparable non-military leaves of absence. Yet unlike in *Waltermyer v. Aluminum Co. of America*, 804 F.2d 821 (3d Cir. 1986), where employees retained eligibility for holiday pay while on jury duty, FedEx employees do not lose eligibility for any additional benefits during military leave. The only difference between these leaves is the employee's regular wage. But again, Plaintiff (wisely) gives up the argument that a regular wage is a benefit protected by USERRA.

That is enough to end the matter, but there is more: Plaintiff has no real response to the point that his interpretation would impermissibly alter fundamental structures of the federal military leave scheme absent any clear statement. And his interpretation is supported neither by history nor precedent. His reading of the statute, in short, should be rejected.

A straightforward application of laches, however, obviates the need to resolve the USERRA question at all. Either way, the Complaint should be dismissed.

I.      USERRA DOES NOT REQUIRE PAID MILITARY LEAVE

   A.      "Paid Leave" Is Not A Benefit Protected By USERRA

Plaintiff's principal argument is that "paid leave" satisfies the definition of "benefit" under 38 U.S.C. § 4303(2), and thus that § 4316(b) entitles him to paid military leave because FedEx provides paid jury duty leave, paid sick leave, and paid bereavement leave.  That argument rests on two independent but related errors.

*First*, Plaintiff's argument rests entirely on a definitional error:  contrary to Plaintiff's principal contention, Opp. 1, "paid leave" is not a benefit but rather a generic category that describes different *types* of benefits.  For example, the benefit in *Waltermyer* was "holiday pay"—the right to be paid while absent on a holiday—not paid leave in the abstract.  804 F.2d at 821-22, 825; *see Eager v. Magma Copper Co.*, 389 U.S. 323 (1967) (holiday and vacation pay are benefits).  The same is true of paid jury duty, sick, and bereavement leave.  These types of paid leave are themselves benefits, but FedEx provides them to service members on equal terms.  And, as the Third Circuit has already recognized, "paid military leave" is also a benefit.  *Gordon*, 388 F.3d at 82; *see Pucilowski v. Dep't of Justice*, 498 F.3d 1341, 1344 (Fed. Cir. 2007) (same).  The benefit Plaintiff seeks here is thus not "paid leave" generically, but paid military leave.

*Waltermyer*, for instance, did *not* hold that the employees were entitled to be paid for the entire duration of their military leave *because* they were paid for jury duty leave, 804 F.2d at 825—which is the argument Plaintiff presses here.  Instead, the Court held that employees absent for military leave retained their eligibility to be paid on holidays (i.e., holiday pay) because employees absent for jury duty retained that eligibility.  But paid military leave is not a benefit that FedEx provides to its employees on any non-military "furlough or leave of absence," 38 U.S.C. § 4316(b), including jury duty, sick leave, or bereavement leave.  Thus, what Plaintiff seeks to receive is not a benefit that FedEx employees currently receive during non-military

2

leave (like holiday pay in *Waltermyer*), but rather the creation of an entirely new benefit by this Court—a result USERRA does not authorize. *See Waltermyer*, 804 F.2d at 824 (right to benefits is determined by the CBA).

*Second*, Plaintiff's argument misreads § 4316(b). Paid leave generically describes a category of benefits that allow the employee to continue to get paid while on a leave of absence from work. But the "leave" component of "paid leave" is what *triggers* § 4316(b)—an employee who takes military leave is "deemed to be on furlough or leave of absence" and is entitled to the same benefits provided to employees during similar non-military "furlough[s] or leave[s] of absence." The benefit that the statute protects, in other words, is not the "leave of absence" itself, but what the employer provides *during* that "leave of absence." And when employees at FedEx take a "leave of absence" to serve on a jury (or when they are sick, or when a family member passes away), they do not receive or retain eligibility for any extra benefit—they get only their ordinary wages.

Yet not even Plaintiff argues that ordinary wages—i.e., the fact of getting paid—is the relevant benefit. As FedEx has explained, and as Plaintiff does not dispute, the fact of getting paid itself is not a benefit. *See* Mot. 7-14. As Congress explained when it enacted § 4303(2), the rights and benefits defined in that provision are those that are "incident to employment." H.R. Rep. 103-65(I), at 21 (1993). This is why every example in § 4303(2) is one "that accrues *by reason of* an employment contract or agreement" or employer "policy, plan, or practice." Regardless of whether wages can be said to accrue, Opp. 8, they are not an incident of employment. The *fact of* getting paid does not arise "by reason of" an employment contract, agreement, or policy—it is the defining feature of the employment relationship, whether a contract or policy provides for it or not. Mot. 11-12. In this way, the fact of getting paid is

3

unlike *all* the exemplary benefits in § 4303(2). While those benefits, including the wage rate—i.e., the *amount* an employee gets paid—can be negotiated in a contract, agreement, or policy, the fact of getting paid cannot. *See, e.g.*, *Yates v. United States*, 574 U.S. 528, 543-44 (2015).

Again, Plaintiff does not respond to these arguments in his opposition (though he responds to a number of arguments that FedEx does not make), or otherwise argue that the fact of getting paid a wage is itself a benefit. Rather, he hangs his entire argument on the proposition that "paid leave" is the relevant benefit here.[1] For the reasons just explained, it is not.

### B. Plaintiff's Construction Would Impermissibly Imply A Congressional Intent To Alter Fundamental Aspects Of The Paid Military Leave Scheme

Beyond these basic misunderstandings, Plaintiff's position is also fundamentally inconsistent with two attributes of the military reemployment scheme: (i) the accepted background rule that USERRA does not require paid military leave; and (ii) Congress's express provision of 15 days of paid leave for federal employees. Mot. 6-7.

Plaintiff dismisses these inconsistencies as "policy grounds" better directed to Congress. Opp. 14. But these are interpretive arguments about the meaning of USERRA, not policy arguments divorced from statutory text. For instance, it is an elementary principle of statutory interpretation that "Congress does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions." *Si Min Cen v. Attorney General*, 825 F.3d 177, 194 (3d Cir. 2016) (quotations omitted). Congress certainly knew how to displace the general rule that

---

[1] Plaintiff goes to great length arguing from USERRA's definition of "benefits" in § 4303(2) that "paid leave" is a "benefit" under the statute. For example, Plaintiff spends pages arguing that a now-altered parenthetical in the "benefits" definition proves that "paid leave" is a benefit under that definition. Opp. 9-11. He also argues that the broad language of § 4303(2) encompasses paid leaves. *Id*. at 5-9. With the caveat that "paid leave" is a *category* of benefits and not a benefit itself, FedEx does not disagree that *forms* of paid leave (like holiday pay in *Waltermyer*, or paid military leave in *Gordon* and *Pucilowski*) count as USERRA benefits. But that is irrelevant to the question here for the reasons just explained, so FedEx does not respond to these arguments further.

4

paid military leave is not required—it did just that for federal employees, 5 U.S.C. § 6323(a). But there is no "clear" "textual" indication, *Whitman v. Am. Trucking Ass'ns, Inc.*, 531 U.S. 457, 468 (2001), that Congress meant to do the same for all employers. To the contrary, the text precludes Plaintiff's argument for the reasons explained above.

Plaintiff's first response—that paid military leave would not be required if he was wrong about the comparability leaves—misses the point entirely. Obviously, what matters when construing a statute is what happens if Plaintiff's interpretation were *right*. He next says that USERRA did not completely overturn the default rule because only a few state paid-leave laws were on the books in 1994 when USERRA was enacted. But some were, and it is in any event implausible that Congress would have silently left something as important as paid military leave to the whims of state legislative determinations about paid jury duty or bereavement. Anyway, Congress certainly knew that *it* had already required paid jury duty, sick, and bereavement leave for federal employees. *See* Mot. 10. It strains credulity to suggest that Congress imposed a paid military leave obligation on the federal government in so elliptical a manner. Finally, Plaintiff's argument that the burden on employers would be "modest," Opp. 16, is precisely the kind of unadorned (and inaccurate) policy argument that cannot substitute for clear statutory text.[2]

Another rule of statutory construction is that, absent a clear textual indication, courts should not adopt an interpretation of a general statutory provision that would render a more specific one inoperative. *See, e.g.*, *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566

---

[2] For instance, under his theory, Plaintiff and every other service member employed at FedEx would be entitled to months of wages from FedEx on top of the pay they already received from the military. Moreover, FedEx proudly employs "thousand[s]" of service members, including military pilots, Am. Compl. ¶ 12—indeed, the prevalence and salary of military pilots is undoubtedly why all the recent USERRA class actions have been filed against airlines. *See* Opp. 13 n.5; *infra* at 8.

U.S. 639, 645-46 (2012); *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 444-45 (1987).  Yet that is the consequence of Plaintiff's position.  Like FedEx, the federal government provides (and has long provided) paid jury duty, sick, and bereavement leave.  Thus, Plaintiff does not dispute that under his interpretation of USERRA, the federal government would be obligated to provide paid military leave beyond the 15 days expressly allotted by § 6323(a).  Plaintiff's position is that § 6323(a) is not a "cap," but Plaintiff admits in the same breath that it provides "up to 15 days" of paid military leave, Opp. 15—i.e., a cap.  More important, whether or not § 6323(a) is a cap, there would be no reason for Congress to provide *any* amount of federal paid military leave if, under USERRA, federal employees are entitled to paid military leave simply because Congress also provided other types of paid leave.[3]

      Plaintiff has no real answer to either of these structural problems, so he instead tries to flip the clear-statement rule on its head.  In his view, Congress was required to "unambiguously *exclude[]* paid leave from the definition of 'rights and benefits,'" because USERRA is construed liberally in favor of service members.  Opp. 6 (emphasis added).  That contention suffers from two threshold problems.  For one thing, it does not matter whether forms of "paid leave" satisfy USERRA's definition of benefits—they do, but the benefit at issue here is paid military leave (which FedEx does not provide to any employee, let alone during jury duty, sick, or bereavement leave).  *See supra* at 2-3.  Moreover, USERRA does not protect employees at all costs, including massive costs to the federal and state governments.  Mot. 17.  Rather, even Plaintiff recognizes

---

[3] State paid military leave statutes, like Pennsylvania's, would also be rendered superfluous by Plaintiff's interpretation.  *See* 51 Pa.C.S. § 4102; https://www.hrm.oa.pa.gov/Leave/forms/Documents/FMLA/handout3-absence-types-guide.pdf (outlining paid absences for state employees); *see* T. Morales Decl. Ex. 1.

6

that USERRA struck a delicate "balance between benefits to employee-service persons and costs to employers." Opp. 16 (quotations omitted).

Beyond these problems, Plaintiff's point fails even in theory. The liberal-construction preference is a rule of thumb for resolving statutory "doubt." *Id*. at 6. But there is no ambiguity here that needs to be resolved—again, there is *no* statutory text even suggesting that "paid leave" generically is a benefit protected by § 4316(b), and the foundational case on which § 4316(b) was modeled contradicts his reading. Nor does Plaintiff provide any support for the proposition that such an ambiguity-resolving canon can trump the sorts of clear-statement principles discussed above. Regardless of how ambiguous statutory terms should ordinarily be construed, courts presume that Congress "does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes." *Whitman*, 531 U.S. at 468; *see, e.g.*, *Gonzales v. Oregon*, 546 U.S. 243, 267 (2006) (rejecting application of *Chevron* deference on this basis).

      **C.**     **Plaintiff's Interpretation Conflicts With USERRA's History**

Plaintiff also has no response to the most important historical point: the law has required parity in benefits since 1940 and, until this recent spate of cases filed by Plaintiff's counsel, *no one*—not Congress, not the courts, not DOL, not even private litigants—had ever hinted that an employer must provide paid military leave simply because it provides other types of paid leave. Rather, as DOL explained, it has always been understood that paid military leave is neither "required by nor addressed in" these statutes. 70 Fed. Reg. 75246, 75249 (Dec. 19, 2005).

Plaintiff's own historical arguments, in contrast, are incorrect. Plaintiff is right that Congress enacted § 4316(b) to adopt *Waltermyer*, but *Waltermyer* does not support Plaintiff's reading. *See supra* at 2. Plaintiff also cherry picks snippets from a House Report. Opp. 11. But to the extent is relevant at all, the House Report, which explains that benefits are "incident to

7

employment," supports FedEx, not Plaintiff. *Supra* at 3. After all, there is *no* indication in the legislative history that by "defin[ing], for the first time, various terms used" in the military leave statutes, H.R. Rep. 103-65(I) at 21, Congress actually meant to (i) supersede the federal paid military leave statute, and (ii) impose a new paid military leave obligation on all employers, including the federal government, who provide other types of paid leave, including those state law requires. One would think that even if Congress somehow neglected to mention those consequences in the statute itself, someone would have mentioned it in the legislative history. The absence of any such discussion is good evidence that no such consequences were intended or even contemplated. *See Church of Scientology of Cal. v. IRS*, 484 U.S. 9, 17-18 (1987) ("All in all, we think this is a case where common sense suggests … that an amendment having the effect petitioner ascribes to it would have been differently described by its sponsor, and not nearly as readily accepted by the floor manager of the bill.").

    **D.**    **Plaintiff's Interpretation Finds No Support In Case Law**

Plaintiff's discussion of case law illuminates two important points. First, no Third Circuit decision supports his interpretation. *Waltermyer* certainly does not. *See supra* at 2. Second, while certain district courts have allowed Plaintiff's theory to survive the defendants' motions to dismiss, the only reasoned opinion did so on the ground that wages were benefits, *see Scanlan v. Am. Airlines Grp.*, 384 F. Supp. 3d 520, 527 (E.D. Pa. 2019)—an argument Plaintiff abandons here. The only decision recognizing the profound effect Plaintiff's rule would have on Congress's scheme, by contrast, rejected Plaintiff's argument. *See White v. United Airlines, Inc.*, 416 F. Supp. 3d 736, 740 (N.D. Ill. 2019).[4]

---

[4] In *Brill v. AK Steel Corp.*, 2012 WL 893902, at *4 (S.D. Ohio Mar. 14, 2012), the employer voluntarily provided paid military leave and the question before the court was comparability.

8

## II.     PLAINTIFF'S CLAIM IS BARRED BY LACHES

To FedEx's knowledge, and contrary to Plaintiff's contrary contention, Opp. 17, all "courts addressing the issue" have found that laches applies "to belated post-2008 USERRA claims." *Corbin v. Sw. Airlines, Inc.*, 2018 WL 4901155, at *10 (S.D. Tex. Oct. 9, 2018); *see* Mot. 17.[5]  Plaintiff's suggestion that laches can never be resolved at the pleading stage, Opp. 18, is also incorrect.  "[T]he Third Circuit has held that laches may serve as a basis for dismissal … if applicability of the doctrine is apparent from the face of the Complaint." *Warner v. Sun Ship, LLC*, 2012 WL 1521866, at *2 (E.D. Pa. Apr. 30, 2012).  That is the case here.  No amount of discovery can change the uncontested facts that Plaintiff took unpaid short-term military leave as early as 2004, he retired from the military in 2010, yet he did not bring suit until 2019.

As the Third Circuit and other courts construing USERRA's predecessor statutes have held, a 10-year plus delay is unreasonable as a matter of law absent a valid excuse.  *See* Mot. 18. In fact, the Third Circuit has called a similar delay "ridiculous." *Carmalt v. Gen. Motors Acceptance Corp.*, 302 F.2d 589, 591 (3d Cir. 1962).  Plaintiff suggests that FedEx must prove the absence of an excuse, but that is wrong.  While the defendant bears the burden of proving laches, it is settled law that "[t]he plaintiffs bear the burden of explaining their delay in bringing suit." *Miller v. City of Indianapolis*, 281 F.3d 648, 653 (7th Cir. 2002).

In any case, "Plaintiff has explained his delay, but none of his explanations constitutes a legal 'excuse.'" *Mosley v. Sec'y of Navy*, 522 F. Supp. 1165, 1167-68 (E.D. Pa. 1981).  Plaintiff says that he did not file suit sooner because he did not know that "his rights had been violated

---

[5] Congress amended § 4327(b) to "clarify … the original intent of Congress," S. Rep. 110-449, at 26 (2008), and Congress' originally "recognize[d] the applicability of … laches," S. Rep. 103-158, at 70 (1993); H.R. Rep. 103-65(I), at 39; *see also* 70 Fed. Reg. at 75287.

9

*until 2019.*" Opp. 19.[6]  But the Third Circuit has rejected that excuse as a matter of law. "Clarity of the violation or uncertainty of the law [do not] operate to excuse a party's delay.  It is the duty of a veteran to promptly pursue his rights in court." *Gruca*, 495 F.2d at 1259.

Given the length of the delay, only a minimal showing of prejudice is required.  *See* K. Piscitelly & E. Still, *The USERRA Manual* § 8.6; Mot. 18.  Plaintiff ignores the significant economic prejudice FedEx would suffer if he were to prevail.  According to his Complaint, FedEx owes him and thousands of other FedEx employees two decades worth of liquidated damages.  *See Minn. Mining & Mfg. Co. v Beautone Specialties Co.*, 82 F. Supp. 2d 997, 1005 (D. Minn. 2000) (exposure to treble damages); *cf. Warner*, 2012 WL 1521866, at *3.  And Plaintiff's delay denied FedEx the opportunity to avoid liability by rescinding its paid leave policies in jurisdictions (like Pennsylvania) where they are not required.  As to evidentiary prejudice, Plaintiff argues that liability can be determined solely by reference to FedEx's leave records.  Opp. 19-20.  But in correspondence with FedEx, Plaintiff disputed the accuracy of these records, *see* ECF No. 39-1, Ex. 3 (Hitch Wilson Decl.); *see also* ECF No. 35 at 11, and not even he claims to recall when he took military leave from FedEx.  None of the witnesses cited in FedEx's transfer motion (several of whom no longer work for FedEx and almost all of whom live in Memphis) can be expected to recall when thousands of employees and former employees took military leave either.

## CONCLUSION

FedEx respectfully requests that the Amended Complaint be dismissed with prejudice.

---

[6] Presumably, Plaintiff means that he did not know he had a viable USERRA claim until the *Scanlan* decision, which came out a few months before Plaintiff filed his complaint.  But "[o]ne cannot sit back, wait years for someone else to act as his stalking horse, and then ride the coattails of a favorable judicial decisions irrespective of the delay involved.  That is exactly what plaintiff has done here." *Gruca v. U.S. Steel Corp.*, 495 F.2d 1252, 1259 (3d Cir. 1974).

Dated:  May 15, 2020

Mark W. Robertson (*admitted pro hac vice*)
O'MELVENY & MYERS LLP
7 Times Square
New York, NY 10036
Telephone:  (212) 326-2000
Facsimile:  (212) 326-2061
mrobertson@omm.com


M. Tristan Morales (*admitted pro hac vice*)
O'MELVENY & MYERS LLP
1625 Eye St NW
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414
tmorales@omm.com

/s/ Ryan T. Becker
Ryan T. Becker

FOX ROTHSCHILD LLP
2000 Market Street, 20th Fl.
Philadelphia, PA 19103-3222
Telephone: (215) 299-2033
Facsimile: (215) 299-2150
rbecker@foxrothschild.com

Colleen Hitch Wilson (*admitted pro hac vice*)
FEDERAL EXPRESS CORPORATION
3620 Hacks Cross Road
Memphis, TN 38125
Telephone: (901) 434-8338
chitchwilson@fedex.com

*Attorneys for Defendant Federal Express Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of Defendant Federal Express Corporation's Reply in Support of its Motion to Dismiss, declaration, and accompanying exhibit was served on all counsel of record through the Court's CM/ECF system.

*/s/ Ryan T. Becker*
Ryan T. Becker

Dated:  May 15, 2020