**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GERARD TRAVERS, on behalf of himself, individually, and on behalf of all others similarly situated, | |
| Plaintiff, | CASE NO. 19-cv-6106-MAK |
| v. | |
| FEDERAL EXPRESS CORPORATION, | **PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN RESPONSE TO THE COURT'S MAY 20, 2020 ORDER** |
| Defendant. | |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................iii

1.      What is the plead "benefit" Plaintiff seeks to be provided, i.e. "wages" or "paid leave"? .............1

2.      How should we apply the *Fishgold* canon of interpreting liberally in favor of
        servicemembers including where does the Plaintiff find support for applying it to any
        ambiguity and, if so, how or why do we evaluate legislative history if the *Fishgold* canon
        dictates we must find in favor of servicemembers should we find the text ambiguous? ...............3

   a.      Where Plaintiff finds support for applying the *Fishgold* canon to any ambiguity? ...................4

   b.      How or why do we evaluate legislative history if the Fishgold canon dictates we must
           find in favor of servicemembers should we find the text ambiguous?.......................................5

3.      Does the legislative history afford a clear statement showing Congressional intent to
        provide paid military leave under 38 U.S.C. § 4316? ...................................................................7

4.      Do federal employees in the military reserves arguably covered by both 5 U.S.C. § 6223
        and USERRA receive a minimum of fifteen or thirty days per year paid military leave
        and, regardless of the answer, should we consider this information in interpreting
        USERRA?.......................................................................................................................................10

**TABLE OF AUTHORITIES**

**Cases**

*Alabama Power Co. v. Davis*,
   431 U.S. 581 (1977) ...................................................................................................4, 7

*Brill v. AK Steel Corp.*,
   No. 09 Civ. 534, 2012 WL 893902 (S.D. Ohio Mar. 14, 2012)..........................................2, 10

*Brown v. Gardner*,
   513 U.S. 115 (1994) ...................................................................................................4, 5

*Clarkson v. Alaska Airlines, Inc.*,
   No. 19 Civ. 5, 2019 WL 2503957 (E.D. Wash. June 17, 2019).................................................11

*Cyan, Inc. v. Beaver County Employees Retirement Fund*,
   138 S. Ct. 1061 (2018) ...................................................................................................7

*Fishgold v. Sullivan Drydock & Repair Corp.*,
   328 U.S. 275 (1946) ...................................................................................................3, 4

*Goodman v. City of New York*,
   No. 10 Civ. 5236, 2011 WL 4469513 (S.D.N.Y. Sept. 26, 2011)................................................6

*Henderson v. Shinseki*,
   562 U.S. 428 (2011) ...................................................................................................5

*Hudgens v. McDonald*,
   823 F.3d 630 (Fed. Cir. 2016) ...................................................................................................5, 6

*Keeley v. Loomis Fargo & Co.*,
   183 F.3d 257 (3d Cir. 1999) ...................................................................................................7

*King v. St. Vincent's Hospital*,
   502 U.S. 215 (1991) ...................................................................................................4, 5

*Kirkendall v. Department of Army*,
   479 F.3d 830 (Fed. Cir. 2007) ...................................................................................................5

*KM Systems, Inc. v. United States*,
   No. 02 Civ. 4567, 2004 WL 1386371 (D.N.J. May 10, 2004)....................................................6

*Miller v. City of Indianapolis*,
   281 F.3d 648 (7th Cir. 2002) ...................................................................................................12

*Rogers v. City of San Antonio*,
   392 F.3d 758 (5th Cir. 2004) ...................................................................................................10

*Scanlan v. American Airlines Group, Inc.*,
    384 F. Supp. 3d 520 (E.D. Pa. 2019)..............................................................2, 8, 9, 10

*Simon v. FIA Card Services, N.A.*,
    732 F.3d 259 (3d Cir. 2013) ................................................................................12

*Sykes v. Columbus & Greenville Railway*,
    117 F.3d 287 (5th Cir. 1997) .................................................................................6

*Tierney v. Department of Justice*,
    717 F.3d 1374 (Fed. Cir. 2013) ...........................................................................11

*Tully v. Department of Justice*,
    481 F.3d 1367 (Fed. Cir. 2007) .................................................................3, 10, 11

*United States v. Johnson*,
    529 U.S. 53 (2010) .................................................................................................7

*United States v. Thompson*,
    941 F.2d 1074 (10th Cir. 1991) ..............................................................................6

*Whitman v. American Trucking Associations*,
    531 U.S. 457 (2001) ...............................................................................................7

*Wisconsin v. Ho-Chunk Nation*,
    784 F.3d 1076 (7th Cir. 2015) ................................................................................6

**Statutes and Regulations**

5 U.S.C. § 6323(a)......................................................................................................11

38 U.S.C. § 4302(a)....................................................................................................12

38 U.S.C. § 4303(2).............................................................................................*passim*

38 U.S.C. § 4316(b)............................................................................................*passim*

5 C.F.R. § 353.208......................................................................................................12

20 C.F.R. § 1002.150(b)..........................................................................................9, 11

H.R. Rep. No. 103-65(1) (1993)..............................................................................4, 8, 9

S. Rep. No. 103-158 (1993).........................................................................................4, 9

156 Cong. Rec. S7656-02 (Sept. 28, 2010) ...................................................................8

**Other Authorities**

*Black's Law Dictionary* (11th ed. 2019) .......................................................................9

Cambridge Business English Dictionary 2020.................................................................1

Plaintiff respectfully submits the following Supplemental Memorandum in Response to the Court's May 20, 2020 Order requesting the parties to address four questions. ECF No. 42.

**1. What is the plead "benefit" Plaintiff seeks to be provided, i.e. "wages" or "paid leave?**

The Complaint alleges that both paid leave and "wages" for work not performed are "rights and benefits" under 38 U.S.C. § 4303(2) that FedEx must provide equally to workers on short-term military leave and comparable leaves under § 4316(b)(1)(B), and that FedEx has not done so. ECF No. 27 ("Compl.") ¶ 2 ("Paid leave, pay, and/or wages are among the 'rights and benefits' that must be provided equally to employees on military leave and comparable non-military leaves.") (citing 38 U.S.C. § 4303(2)); *id.* ¶ 49 (same); *id.* ¶ 52 (FedEx "violated and continues to violate USERRA § 4316(b)(1)" by not providing "employees who take short-term military leave" "the same 'rights and benefits,' namely paid leave, pay, wages, and/or salaries" during leave); *id.* Prayer for Relief (asking the Court to "[r]equire Defendant to recalculate and pay the paid leave, pay, wages, and/or salary that Plaintiff and the Class are entitled to receive").

Paid leave is simply paying an employee wages for not working – *i.e.*, "wages for work not performed." *See* Cambridge Business English Dictionary ("paid leave" is "time allowed away from work for holiday, illness, etc. during which you receive your normal pay"). Plaintiff refers to "paid leave" and "wages" interchangeably to convey that workers must get paid when they take short-term military leave if workers on comparable leaves get paid, whether the right or benefit is called "paid leave" or "wages" for work not performed. Compl. ¶¶ 3-5, 10, 26, 32, 53; *see id.* ¶¶ 2, 49, 52. Section 4303(2) covers other forms of paying workers for not performing work: severance pay, supplemental unemployment benefits, and paid vacations. ECF No. 36 at 7.

Contrary to FedEx's assertion that Plaintiff somehow abandoned the claim that he was denied "wages," Plaintiff's Opposition to Defendant's Motion to Dismiss refers to both "wages

or paid leave" as "rights and benefits" he was denied vis-à-vis workers on comparable leaves. ECF No. 36 at 7. His brief repeatedly explains "paid leave" and "wages for work not performed" are the same. *Id.* at 9 (§ 4303(2)'s current parenthetical does not "mean Congress intended to exclude wages for work *not performed* (*i.e.*, paid leave)."); *id.* at 10 ("pre-2010 parenthetical" "expressly excluded *only* wages for work *performed* and did not implicitly exclude wages for work *not performed* like paid leave."); *id.* at 11 (explaining that the "holding [of *Waltermyer v. Aluminum Co. of America*, 804 F.2d 821 (3d Cir. 1986)] recognizes that 'rights and benefits' include wages for time not working."); *id.* at 14-15 ("'wages'" in § 4303(2) are the wages that employers must offer equally to employees who are . . . not working under § 4316(b)").

Courts deciding the same legal issue have similarly treated paid leave, wages for work not performed, and/or pay for not working as the same "right and benefits" under § 4303(2) that must be provided equally under § 4316(b). In addressing the challenged practice of "not paying employees out on short-term military leave while paying employees for comparable forms of short-term leave," another court in this District referred interchangeably to "wages for work not performed" and "[t]he right to be paid for work not performed," *Scanlan v. American Airlines Group, Inc.*, 384 F. Supp. 3d 520, 524, 526-27 (E.D. Pa. 2019) (Bartle, J.) (denying motion to dismiss). Addressing the same issue and reaching the same conclusion, another court held that "paid leaves of absence" "is a benefit" and agreed that "if there's a general policy of an employer to pay for leaves that are comparable to military leave, then . . . short-term military leave must be compensated." Tr. in *Huntsman v. Sw. Airlines*, No. 19 Civ. 83 (N.D. Cal.), ECF No. 62 at 24-25 (rejecting defendant's argument on motion to dismiss that paid leave and/or wages for work not performed are not "rights and benefits" under § 4303(2)). Similarly, in *Brill v. AK Steel Corp.*, No. 09 Civ. 534, 2012 WL 893902 (S.D. Ohio Mar. 14, 2012), the Court held that by "paying

2

Plaintiff his full salary for time spent on military leave" like other workers on leave was consistent "with the statutory mandate to give the employee the most favorable treatment accorded any comparable form of leave," and "full salary is a benefit" that must be given equally to those on military leave and comparable leaves. *Id.* at *6, 8. Finally, the Federal Circuit held that "[p]ayment of an employee's salary while the employee is absent from work is a benefit provided during the absence," *Tully v. Dep't of Justice*, 481 F.3d 1367, 1370 (Fed. Cir. 2007).

Regardless of the label this Court chooses—paid leave, wages for work not performed, or pay or salary for not working or an absence—it should similarly hold that these are "rights and benefits" under § 4303(2) that must be provided equally under § 4316(b)(1)(B).

**2. How should we apply the *Fishgold* canon of interpreting liberally in favor of servicemembers including where does the Plaintiff find support for applying it to any ambiguity and, if so, how or why do we evaluate legislative history if the *Fishgold* canon dictates we must find in favor of servicemembers should we find the text ambiguous?**

If the Court finds that there is any ambiguity in USERRA's text, the Court should apply the *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275 (1946), canon of liberal interpretation to adopt Plaintiff's interpretation of the text, because FedEx's view is not the only possible one. But if the Court does not do so, it should proceed to analyze USERRA's legislative history, and if the history does not make the text clear then *Fishgold* requires the Court to adopt Plaintiff's view. In either scenario, the fact that a number of federal courts have adopted Plaintiff's position that paid leave is a right or benefit based on the plain text shows that Plaintiff's view is at least plausible—in which case, *Fishgold* forecloses FedEx's position.

Under longstanding Supreme Court case law and Congress' explicit direction in enacting USERRA, Courts must apply the *Fishgold* canon of interpreting all relevant portions of USERRA as liberally as possible, including when reading separate provisions in conjunction with each other. *Fishgold*, 328 U.S. at 285 (stating that USERRA's predecessor "is to be

liberally construed for the benefit of those who left private life to serve their country in its hour

of great need" and that each provision must be afforded "as liberal a construction for the benefit

of the veteran as a harmonious interplay of the separate provisions permits"); *King v. St.*

*Vincent's Hosp*., 502 U.S. 215, 220-21 n.9 (1991) (holding that even if one textual provision

undercuts the Court's reading in favor of the veteran, "we would ultimately read the provision in

[the veteran's] favor under the [*Fishgold*] canon"); *Alabama Power Co. v. Davis*, 431 U.S. 581,

584 (1977); H.R. Rep. No. 103-65(1), at 19 (1993) ("House Rpt.") (stating the *Fishgold* canon

"remains in full force and effect" under USERRA and identifying this canon as the chief

example of case law from USERRA's predecessor that must be followed); S. Rep. No. 103-158,

at 40 (1993) ("Senate Rpt.") (same).

Thus, when this Court interprets § 4316(b)(1)(B) and § 4303(2), it must apply the most

liberal construction "as a harmonious interplay of the separate provisions permits." *Fishgold*, 328

U.S. at 285. Construing these two provisions as liberally as possible requires holding that paid

leave and/or wages for work not performed are "rights and benefits" that must be provided

equally, and rejecting FedEx's atextual view that § 4303(2) and § 4316(b)(1)(B) implicitly

exclude paid leave and/or wages for work not performed from § 4316(b)(1)(B)'s equality rule.

### a.   Where Plaintiff finds support for applying the *Fishgold* canon to any ambiguity?

The Supreme Court has held that the *Fishgold* canon is a "guiding principle" that

"govern[s] all subsequent interpretations of the re-employment rights of veterans." *Alabama*

*Power*, 431 U.S. at 584. This canon mandates "that interpretive doubt is to be resolved in the

veteran's favor," *Brown v. Gardner*, 513 U.S. 115, 118 (1994) (citing *King*, 502 U.S. at 220-21

n.9). Under this standard, "even if the [defendant's] asserted interpretation of [the text] is

plausible, it would be appropriate . . . only if the statutory language unambiguously" supports the

defendant's interpretation. *Hudgens v. McDonald*, 823 F.3d 630, 639 (Fed. Cir. 2016) (internal

citation and quotations omitted). The Supreme Court and lower courts have not recognized any

type of interpretive doubt or ambiguity that is exempt from the *Fishgold* canon when interpreting

a veteran's statute like USERRA.

### b. How or why do we evaluate legislative history if the *Fishgold* canon dictates we must find in favor of servicemembers should we find the text ambiguous?

If the Court finds any ambiguity in USERRA's text, the Court should apply the *Fishgold*

canon to rule for Plaintiff. Alternatively, it may consider USERRA's legislative history to

determine whether that history fully clarifies the meaning of the text, and if any ambiguity still

remains the Court must apply the *Fishgold* canon to rule in favor of Plaintiff.

When most courts have found some ambiguity in USERRA's text (or the text of a similar

veteran's statute), they have applied *Fishgold* to construe the law in favor of the servicemember

without considering legislative history, since the *Fishgold* canon renders an otherwise ambiguous

provision clear and requires the defendant to establish that its view of the text is the only

plausible one. *See King*, 502 U.S. at 220-23 & nn.9, 13, 14 (holding that, after finding that the

*Fishgold* canon renders the text clear, the "judicial inquiry is complete") (internal quotations and

citation omitted); *Brown*, 513 U.S. at 117-18, 120 ("[A]fter applying the rule that interpretive

doubt is to be resolved in the veteran's favor" it might not be possible for the employer to claim

there is "ambiguity" in the term "injury," and, in turn, the text's "clear answer . . . is the end of

the matter") (internal citation and quotations omitted); *Kirkendall v. Dep't of Army*, 479 F.3d

830, 846 (Fed. Cir. 2007) (en banc) ("[a]fter applying the interpretive rule in *Fishgold*, it is

abundantly clear that Congress' intent is to provide veterans a hearing upon request"); *cf.*

*Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 441 (2011) (construing a deadline in a

veteran's statute as non-jurisdictional "[p]articularly in light of th[e] [*Fishgold*] canon" without

considering legislative history); *Hudgens*, 823 F.3d at 639 (stating that the statutory text must "unambiguously" favor the defendant to construe a veteran's statute against a veteran).

Other courts have applied the *Fishgold* canon to resolve statutory doubt in favor of a reservist or veteran in conjunction with their analysis of the statute's relevant legislative history. *See Sykes v. Columbus & Greenville Ry.*, 117 F.3d 287, 294 (5th Cir. 1997) (applying the *Fishgold* canon to construe a provision of USERRA's predecessor law in favor of a veteran where the legislative history was not "enlightening" and the provision was still "capable of multiple interpretations" after reviewing the legislative history); *Goodman v. City of New York*, No. 10 Civ. 5236, 2011 WL 4469513, at *5 (S.D.N.Y. Sept. 26, 2011) (holding that USERRA's plain text on pensions was clear, but "if the Court were to consider USERRA's legislative history" it would reach the same result based on the *Fishgold* canon of liberal construction).

In applying canons of liberal interpretation to other statutory schemes or protected groups—such as laws on American Indians—courts have similarly applied a liberal canon to their construction of the text and legislative history. *United States v. Thompson*, 941 F.2d 1074, 1077-78 (10th Cir. 1991) (stating courts can make "[r]eference to the legislative history" while they "presume that Congress intended to protect, rather than diminish, Indian rights," collecting Supreme Court cases that considered legislative history, and considering legislative history in analyzing the Pueblo Lands Act); *Wisconsin v. Ho-Chunk Nation*, 784 F.3d 1076, 1081 (7th Cir. 2015) (similar); *cf. KM Sys., Inc. v. United States*, No. 02 Civ. 4567, 2004 WL 1386371, at *2-3 (D.N.J. May 10, 2004) (applying liberal construction to protect taxpayers in light of purpose of the law where legislative history was silent). Doing the same in the USERRA context similarly advances the rights of a group that Congress and the Supreme Court deem necessary to protect. Indeed, the Supreme Court held that the *Fishgold* canon is a "guiding principle" "govern[ing] all

6

subsequent interpretations of the re-employment rights of veterans," which advance the critical

goal of "manning the Armed Forces of the United States." *Alabama* Power, 431 U.S. at 584.[1]

**3. Does the legislative history afford a clear statement showing Congressional intent to provide paid military leave under 38 U.S.C. § 4316?**

Yes. Although not necessary for Plaintiff to prevail, USERRA's legislative history offers

a clear statement that paid leave and/or wages for work not performed are "rights and benefits"

that must be provided equally to workers on military leave and other leaves. Plaintiff previously

described how that history confirms what is already clear in the text. ECF No. 36 at 9-12. FedEx

did not analyze legislative history in its motion or address Plaintiff's legislative history

arguments in its reply. Here, Plaintiff underscores several key points on USERRA's history.

First, the original version of § 4303(2)'s parenthetical confirms that when Congress

enacted § 4303(2) in 1994, it intended paid leave or wages for work not performed to be "rights

and benefits." The original parenthetical expressly *excluded* "wages or salary for *work

performed*." 38 U.S.C. § 4303(2) (emphasis added). By excluding "wages or salary for work

performed," as opposed to all "wages or salary," Congress made clear that "wages or salary for

work not performed" *are* "rights and benefits"—since an explicit exception "indicates [the

legislature's] intention to exclude other exceptions." *Keeley v. Loomis Fargo & Co*., 183 F.3d

257, 266 (3d Cir. 1999); *see United States v. Johnson*, 529 U.S. 53, 58 (2010). Nothing in the

---

[1] While FedEx argues that Plaintiff's view should be rejected based on the elephants-in-mouseholes canon, ECF No. 40 at 7, it offers no authority to suggest that this canon can trump the *Fishgold* canon when both canons could potentially apply. And the elephants canon only applies when a construction would "alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions." *Whitman v. Am. Trucking Associations*, 531 U.S. 457, 468 (2001). A basic application of § 4316(b)'s equality rule to paid leave and the modest benefit it provides does not fundamentally alter USERRA's statutory scheme, certainly not in the way the elephants canon has been applied—such as allowing "EPA to consider costs" in setting air quality standards, *id.*, or implicitly eliminating state court jurisdiction over securities suits via a technical amendment. *Cyan, Inc. v. Beaver Cty. Employees Ret. Fund*, 138 S. Ct. 1061, 1072 (2018).

2010 amendment—which turned the explicit *exclusion* of "wages or salary for work performed" into an explicit *inclusion* of "wages or salary for work performed"—suggests Congress intended to limit the scope of § 4303(2) overall or as applied to § 4316(b). ECF No. 36 at 9-10. Indeed, its sole intention in amending § 4303(2) was to clarify that § 4311(a) bars wage discrimination when employees are *working*, not to implicitly repeal paid leave as a right or benefit that must be given equally to employees who are *on leave*. *See* 156 Cong. Rec. S7656-02 (Sept. 28, 2010).

Second, § 4303(2)'s legislative history confirms that that the "rights and benefits" in § 4303(2) is "broadly defined to include *all attributes* of the employment relationship[.]" House Rpt. at 21 (emphasis added). Being paid for not working (whether called "paid leave" or "wages for work not performed") is plainly an *attribute of the employment relationship*. Congress also explained that "[t]he list" of examples of "rights and benefits" in § 4303(2) "is illustrative and not intended to be all inclusive." House Rpt. at 21. This demonstrates that Congress wanted to ensure that no court would conclude that the list of rights and benefits should be read to implicitly exclude other examples that fall within § 4303(2)'s "broad[]" text. Congress' intention squares with § 4303(2)'s text, which repeatedly uses the words "includes" and "including" to convey that § 4303(2) is "extremely broad" and "[t]he examples mentioned are not exclusive." *Scanlan*, 384 F. Supp. 3d at 826. Thus, in its most detailed description of § 4303(2) and its accompanying text, Congress clearly stated that § 4303(2) protects all things an employee gets from her employer, which naturally includes getting paid for not working.

FedEx argues that the House Report states that "rights and benefits" "are the rights, incident to employment, which are protected under [USERRA]," suggesting that wages are not "*incident* to employment." ECF No. 40 at 3 (citing House Rpt. at 21). Ignoring the meaning of "incident to," FedEx leaps to the illogical conclusion that because wages are the "defining

8

feature of the employment relationship," they cannot be among the rights and benefits in §

4303(2). *Id.* at 3. But FedEx's cramped reading of the word "incident" contradicts what Congress

said in the next sentence: "rights and benefits" are "*broadly defined* to include *all attributes* of

the employment relationship." House Rpt. at 21 (emphasis added). Moreover, "Incident" means

"arising out of, or otherwise connected with." *Black's Law Dictionary* (11th ed. 2019). Paid

leave or wages for work not performed are plainly "incident to reemployment," House Rpt. at 21,

because they arise out of or are connected with a worker's "employment." Of course, employees

only get these benefits because of their *employment* with FedEx.

Third, Congress' statements on the equality rule embodied in § 4316(b)(1)(B) similarly

emphasize that employees on military leave must receive the full set of rights and benefits that

employees on comparable leaves get from their employers. Congress explained that it

"intend[ed] to affirm the decision in *Waltermyer v. Aluminum Co. of America*, 804 F.2d 821 (3d

Cir. 1986) that, to the extent the employer policy or practice varies among various types of non-

military leaves of absence, *the most favorable treatment accorded any particular leave would

also be accorded the military leave*[.]" House Rpt. at 33-34 (emphasis added); *accord* Senate

Rpt. at 58; 20 C.F.R. § 1002.150(b). Congress' conscious choice of the words "most favorable

treatment" shows that it wanted *Waltermyer's* equality principle to apply broadly so that

reservists are guaranteed the full range of rights and benefits workers on comparable leaves get.

Indeed, if workers on comparable leaves get paid, but reservists on military leave do not,

it places reservists in a far inferior position, not the equal one that Congress expressly mandated

when it enacted § 4316(b)(1)(B) and codified *Waltermyer's* equality principle with broad text.

*See* 20 C.F.R. § 1002.150(b); *Scanlan*, 384 F Supp. 3d at 527 (§ 4316(b)(1) "of course, only

requires employees on military leave to be provided with comparable rights and benefits to

which those on non-military absences are entitled"); *Brill*, 2012 WL 893902, at \*6 (by paying

reservists on military leave, the employer "would not be providing anything it does not already

provide to employees on jury duty/witness leave," and "would be complying with the statutory

mandate to give the employee the most favorable treatment accorded any comparable form of

leave."). As the Fifth Circuit held, "§ 4316(b)(1)'s legislative history clearly reflects the intent to

specifically guarantee reservists equality of on-leave benefits," unlike § 4311(a) that applies to

working employees. *Rogers v. City of San Antonio*, 392 F.3d 758, 767-69 (5th Cir. 2004) (the

"legislative history of the bill that became § 4316(b)(1)" "expressed an intention to codify

*Waltermyer*" and its rule that reservists have a "right to equal treatment" and not "preferential

treatment"). Indeed, "[t]o allow differences in the available benefits to negate relief under section

4316(b)(1)(B) would undermine the effect of the statute, which is designed to remedy differences

in the benefits provided for military leave and leave for other purposes." *Tully*, 481 F.3d at 1370.

Moreover, the failure to provide paid leave for short-term military leave can severely impact

other types of benefits that depend upon an employee's overall compensation.

Finally, § 4316(b)(1)'s "mandate[]" of pay for time off from work "when failure to pay

such compensation constitutes unequal treatment for those on reserve duty," is consistent with

*Waltermyer's* treatment of "wages for work not performed" as rights that must be offered equally

under *Waltermyer's* equality rule. *Scanlan*, 384 F Supp. 3d at 527.

**4. Do federal employees in the military reserves arguably covered by both 5 U.S.C. § 6223 and USERRA receive a minimum of fifteen or thirty days per year paid military leave and, regardless of the answer, should we consider this information in interpreting USERRA?**

Federal personnel law provides that federal workers receive a benefit of 15 working days

of paid military leave each year, and that unused days can be carried over to the next year (so

that a federal worker gets 30 days in year in 2020 if she did not use her 15 days in 2019). *See*

10

5 U.S.C. § 6323(a)(1); *Tierney v. Dep't of Justice*, 717 F.3d 1374, 1375 (Fed. Cir. 2013) (stating

that the 15 days under § 6323 are only charged against reservists for *working* days).

Under Section 4316(b), a federal employee could be entitled to more than 15 working

days of paid leave in a year, *but only if* (1) short-term military leave is found to be comparable to

other forms of leave that are paid by the employer, and (2) the length of time of short-term

military leave that is found to be comparable to other paid leaves is long enough to cover

military leaves for those who take more than 15 working days of military leave annually. And

even if these two requirements are satisfied, a reservist would actually need to take over 15 days

of military leave annually – something most reservists do not need to satisfy their reserve duties.

The first requirement—whether short-term military leave is comparable to paid leave

provided by the employer to similarly situated workers— is based on the duration, purpose, and

voluntariness of the leave. 20 C.F.R. § 1002.150(b). That requires a factual finding by a jury. *See*

*Clarkson v. Alaska Airlines, Inc.*, No. 19 Civ. 5, 2019 WL 2503957, at *7 (E.D. Wash. June 17,

2019); Tr. in *Huntsman v. Sw. Airlines*, No. 19 Civ. 83 (N.D Cal.), ECF No. 62 at 25 (stating that

"[t]here is a factual issue, of course, as to whether or not the leaves are comparable, and that's

for the trier of fact."). The second requirement depends on what *length* of military leave is

deemed comparable to other paid leaves. Indeed, the Federal Circuit affirmed a finding that a

lengthy military leave was not comparable to jury duty, because the length of leaves was

"substantially different." *Tully*, 481 F.3d at 1370. This determination can be made based on "the

*expected duration* of the two forms of leave in determining whether they were comparable." *Id.*

*Tully* relied on the Department of Labor's regulations and guidance that "a two-day funeral leave

will not be 'comparable' to an extended [military] leave," *id.* (citing 20 C.F.R. § 1002.150).

Accordingly, a factfinder may conclude that only military leaves of *two or three* days are

11

comparable to other paid leaves, since those leaves ordinarily last for just a few days (such as

jury duty or funeral leave). If this is the case, then very few federal workers would be entitled to

more than 15 days of paid military leave annually, since an ordinary reservist's military duty

"consists generally of one 2-week period" each year and one weekend each month. *Miller v. City

of Indianapolis*, 281 F.3d 648, 649 (7th Cir. 2002). Also, regardless of the length of time a jury

finds short-term military leave to be comparable to other leaves, the vast majority of reservists

probably will not need over 15 working days of paid military leave, since they ordinarily perform

a single 2-week period of military duty and one weekend per month. *Id*.

Although the Court *may* consider that Congress enacted § 6323's 15-day paid leave

benefit for federal workers before enacting USERRA, that prior enactment should be given little,

if any, weight, since USERRA's relevant text and history are clear and § 6323's grant of 15

working days of paid military leave does not conflict with § 4316(b)'s limited equality rule. *See

Simon v. FIA Card Servs., N.A.*, 732 F.3d 259, 274 (3d Cir. 2013) ("[W]hen two statutes are

capable of coexistence, it is the duty of the courts, absent a clearly expressed congressional

intention to the contrary, to regard each as effective."). Section 6323 is a *grant* of paid military

leave, *not a cap* on how much paid leave a federal worker can take. 5 C.F.R. § 353.208 (federal

workers may use sick leave, annual leave, compensatory time, and § 6323 leave to receive pay

during military service). If § 6323 provided that a worker gets 15 days of paid military leave, *but

cannot take over 15 days of paid military leave*, it would conflict with § 4316(b). But it does not.

Also, USERRA states it does not "supersede, nullify or diminish any Federal . . . law . . . that

establishes a right or benefit that . . . is in addition to, a right or benefit provided for such person

in [USERRA]." 38 U.S.C. § 4302(a). Thus, courts should avoid finding that USERRA conflicts

with other federal laws, particularly where, as here, the two laws can be read consistently.

12

Dated: May 28, 2020

Peter Romer-Friedman
GUPTA WESSLER PLLC
1900 L Street NW, Suite 312
Washington, DC 20036
Tel: (202) 888-1741
Email: peter@guptawessler.com

Michael J. Scimone
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, NY 10017
Tel: (212) 245-1000
Email: mscimone@outtengolden.com

Matthew Z. Crotty
CROTTY & SON LAW FIRM, PLLC
905 W. Riverside Avenue, Suite 404
Spokane, WA 99201
Tel: (509) 850-7011
Email: matt@crottyandson.com

Respectfully submitted,

/s/ Adam H. Garner
Adam H. Garner
THE GARNER FIRM LTD.
1515 Market Street, Suite 1200
Philadelphia, PA 19102
Tel: (215) 645-5955
Fax: (215) 645-5960
Email: adam@garnerltd.com

R. Joseph Barton
Colin M. Downes
BLOCK & LEVITON LLP
1735 20th Street NW
Washington, DC 20009
Tel: (202) 734-7046
Fax: (617) 507-6020
Email: jbarton@blockesq.com
Email: colin@blockesq.com

Thomas G. Jarrard
LAW OFFICE OF THOMAS G.
JARRARD LLC
1020 N. Washington Street
Spokane, WA 99201
Tel: (425) 239-7290
Email: tjarrard@att.net

*Attorneys for Plaintiff*

13

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Plaintiff's Supplemental Memorandum in Response to

the Court's May 20, 2020 Order was served on all counsel of record in this case by CM/ECF on

May 28, 2020.

Mark W. Robertson
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, NY 10036
Tel: (212) 326-4329
Fax: (212) 326-2061
Email: mrobertson@omm.com

M. Tristan Morales
O'MELVENY & MYERS LLP
1625 Eye Street NW
Washington, DC 20016
Tel: (202) 383-5112
Email: tmorales@omm.com

Colleen Hitch Wilson
Melissa McCoy Gormly
FEDEX EXPRESS CORPORATION
3620 Hacks Cross Road
Memphis, TN 38125
Tel: (901) 434-8338
Email: chitchwilson@fedex.com
Email: melissa.gormly@fedex.com

Ryan Thomas Becker
FOX ROTHSCHILD LLP
Stone Manor Corp Center
2700 Kelly Road, Suite 300
Philadelphia, PA 18976
Tel: (215) 345-7500
Email: rbecker@foxrothschild.com

/s/ Adam H. Garner
Adam H. Garner