# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GERARD TRAVERS, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>-vs.-<br><br>FEDERAL EXPRESS CORPORATION,<br><br>Defendant. | Civil Action No. 2:19-cv-06106-MAK |

## DEFENDANT'S SUPPLEMENTAL BRIEF
## IN SUPPORT OF ITS MOTION TO DISMISS

Mark W. Robertson (*admitted pro hac vice*)
Anton Metlitsky (*admitted pro hac vice*)
O'MELVENY & MYERS LLP
7 Times Square
New York, NY 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
mrobertson@omm.com

M. Tristan Morales (*admitted pro hac vice*)
O'MELVENY & MYERS LLP
1625 Eye St NW
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414
tmorales@omm.com

Ryan T. Becker
FOX ROTHSCHILD LLP
2000 Market Street, 20th Fl.
Philadelphia, PA 19103-3222
Telephone: (215) 299-2033
Facsimile: (215) 299-2150
rbecker@foxrothschild.com

Colleen Hitch Wilson (*admitted pro hac vice*)
FEDERAL EXPRESS CORPORATION
3620 Hacks Cross Road
Memphis, TN 38125
Telephone: (901) 434-8338
chitchwilson@fedex.com

*Attorneys for Defendant Federal Express Corporation*

**TABLE OF CONTENTS**

    **Page**

1. The Benefit Plaintiff Seeks Is "Paid Military Leave" ............................................. 1

2. *Fishgold* Confirms FedEx's Interpretation .............................................................. 2

3. USERRA's Legislative History Is Devoid Of Any Statement Of Congressional Intent To Provide Paid Military Leave Under § 4316(b) ............... 5

4. Plaintiff's Interpretation Would Negate Congress's Comprehensive Paid Military Leave Scheme For Federal Employees ..................................................... 10

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Butterbaugh v. Dep't of Justice*,
  336 F.3d 1332 (Fed. Cir. 2003) .............................................................................................. 12

*Coady v. Vaughn*,
  251 F.3d 480 (3d Cir. 2001) .................................................................................................... 12

*Dewsnup v. Timm*,
  502 U.S. 410 (1992) ................................................................................................................... 5

*Edmonds v. Compagnie Generale Transatlantique*,
  443 U.S. 256 (1979) ................................................................................................................... 5

*Epic Sys. Corp. v. Lewis*,
  138 S. Ct. 1612 (2018) ............................................................................................................ 3, 9

*Fishgold v. Sullivan Drydock & Repair Corp.*,
  328 U.S. 275 (1946) ............................................................................................................ 2, 3, 4

*Foster v. Dravo Corp.*,
  420 U.S. 92 (1975) ..................................................................................................................... 6

*Gay v. Sullivan*,
  966 F.2d 1214 (7th Cir 1992) ................................................................................................... 6, 7

*Gooding v. United States*,
  416 U.S. 430 (1974) ............................................................................................................ 6, 8, 9

*Gordon v. Wawa, Inc.*,
  388 F.3d 78 (3d Cir. 2004) ........................................................................................................ 1

*Kannikal v. Att'y Gen.*,
  776 F.3d 146 (3d Cir. 2015) ..................................................................................................... 12

*Nat'l Org. of Veterans Advocates, Inc. v. Sec'y of Veterans Affairs*,
  809 F.3d 1359 (Fed. Cir. 2016) ................................................................................................. 4

*Nielson v. Shinseki*,
  607 F.3d 802 (Fed. Cir. 2010) ................................................................................................... 4

*Pennhurst State Sch. & Hosp. v. Halderman*,
  451 U.S. 1 (1981) ....................................................................................................................... 7

*Premachandra v. Mitts*,
  727 F.2d 717 (8th Cir. 1984) ..................................................................................................... 6

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*RadLAX Gateway Hotel, LLC. v. Amalgamated Bank*,
   566 U.S. 639 (2012) .............................................................................................................. 12

*Smith v. Principi*,
   281 F.3d 1384 (Fed. Cir. 2002) ............................................................................................... 4

*Sossamon v. Texas*,
   563 U.S. 277 (2011) ................................................................................................................ 4

*Taylor v. Tumolo*,
   2020 WL 1531877 (E.D. Pa. Mar. 31, 2020) .......................................................................... 2

*Thompson v. Kennickell*,
   797 F.2d 1015 (D.C. Cir. 1986) ............................................................................................... 6

*United Sav. Ass'n v. Timbers of Inwood Forest Assocs.*,
   484 U.S. 365 (1988) ................................................................................................................ 5

*Waltermyer v. Aluminum Co. of Am.*,
   804 F.2d 821 (3d Cir. 1986) ............................................................................................... 1, 6

*Welshans v. U.S. Postal Serv.*,
   550 F.3d 1100 (Fed. Cir. 2008) .......................................................................................... 1, 2

**Statutes**

5 U.S.C. § 2105 .............................................................................................................................. 10

5 U.S.C. § 6307 .............................................................................................................................. 10

5 U.S.C. § 6322 .............................................................................................................................. 10

5 U.S.C. § 6323(a) .............................................................................................................. 2, 3. 4, 10

5 U.S.C. § 6326 .............................................................................................................................. 10

38 U.S.C. § 4303(4)(A)(ii) ............................................................................................................. 10

51 Pa. C.S. § 4102 .......................................................................................................................... 11

**Regulations**

20 C.F.R. § 1002.7(c) ..................................................................................................................... 10

70 Fed. Reg. 75246 (Dec. 19, 2015) ..................................................................................... 6, 9, 10

# TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

**Other Authorities**

H.R. Rep. No. 103-65(I) (1993) ............................................................................................... 6, 9

S. Rep. No. 103-158 (1993) ............................................................................................ 6, 7, 8, 9

Samuel W. Asbury, *A Survey and Comparative Analysis of State Statutes Entitling Public Employees to Paid Military Leave*, 30 Gonz. L. Rev. 67 (1994) ............................................... 11

Defendant respectfully submits this brief in response to the questions posed by the Court's May 20, 2020 Supplemental Briefing Order.

1. *The Benefit Plaintiff Seeks Is "Paid Military Leave"*

Plaintiff's complaint pleads both "paid leave" and "wages" as the benefit he says he is owed. Am. Compl. ¶ 49. But Plaintiff made clear in his opposition to FedEx's motion to dismiss that the only benefit he is seeking is "paid leave." As he has framed the issue for the Court, "[t]he only disputed question is whether *paid leave* is one of the 'rights and benefits' that must be provided equally." Opp. 1 (emphasis added). Virtually every point heading in his opposition, for example, argues "that paid leave is a right or benefit." *Id*. at 5, 9, 12. And that is even how Plaintiff has described his Complaint: "The Complaint alleges a single claim under USERRA … that FedEx violated § 4316(b) by failing to provide *paid leave* to workers who took short-term military leave, while providing *paid leave* to workers who took comparable forms of non-military leave." *Id.* at 2 (emphasis added).

But "paid leave" is not itself a benefit—it is a generic *category* of benefits. *See* Reply 2-3; *Waltermyer v. Aluminum Co. of Am.*, 804 F.2d 821 (3d Cir. 1986); *see also Gordon v. Wawa, Inc.*, 388 F.3d 78, 82 (3d Cir. 2004). And while paid military leave is within that generic category of benefits, it is not protected by § 4316(b) here because it is "an *additional benefit* not available to non-military employees" at FedEx. *Welshans v. U.S. Postal Serv.*, 550 F.3d 1100, 1104 (Fed. Cir. 2008). Thus, for example, the Federal Circuit—which hears the overwhelming majority of veterans' benefits cases—has held that paid military leave is a "benefit of employment" under USERRA, but *not* a benefit that the Postal Service provided to non-reservist

1

employees, even though non-reservists received paid sick leave.[1]  *Id.*  So too here—Plaintiff does not allege that FedEx provides paid military leave to employees during non-military leaves of absence.  And because FedEx does not do so, USERRA § 4316(b) does not require FedEx to provide paid military leave to Plaintiff either.  Reply 2-3.

Although Plaintiff also references "wages" in his Complaint, he has unequivocally abandoned that theory.  FedEx dedicated the vast majority of its motion to the argument that "ordinary wages" are not a benefit.  MTD 4-17.  In response, Plaintiff argued that the "only" question is whether "paid leave is one of [USERRA's] 'rights and benefits.'"  Opp. 1.  "Plaintiff's failure to respond" to FedEx's argument that wages are not a benefit—and his affirmative efforts to re-characterize and narrow his Complaint, *supra* at 1—"constitutes an abandonment of" that theory.  *Taylor v. Tumolo*, 2020 WL 1531877, at *11 n.82 (E.D. Pa. Mar. 31, 2020) (Kearney, J.) (collecting cases); *see also* Reply 3-4 (explaining why Plaintiff's decision to abandon this theory was wise).

In the end, though, it does not matter how Plaintiff characterizes the benefit, because his ultimate reading of the statute is the same—if a private, federal, or state employer provides paid short-term leaves like jury duty or sick leave, they must also provide paid military leave.  But as discussed in detail below, that reading of USERRA is contradicted by every tool of statutory construction.  *See infra* at 2-12; *see also* MTD 7-10; Reply 4-6.

### 2.     Fishgold *Confirms FedEx's Interpretation*

The pro-veteran canon articulated in *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275 (1946), does not apply here because there is no statutory doubt for the Court to resolve.

---

[1] The Postal Service is excluded from the federal paid military leave requirement in 5 U.S.C. § 6323(a).  *See Welshans*, 550 F.3d at 1102-03.

2

*See* Reply 7.  But regardless, *Fishgold*'s analysis weighs in favor of dismissal:  the employer *prevailed* in *Fishgold* because more compelling tools of statutory construction required rejecting the plaintiff's interpretation, as they do here.

The plaintiff in *Fishgold* was "laid off" from work as a welder and was not reassigned to other work, unlike more senior welders.  328 U.S. at 279-80.  He claimed that these layoffs constituted a "discharge" in violation of USERRA's original predecessor statute, *id*. at 284-85, and thus that he was entitled to "compensation for the days he was not allowed to work," *id*. at 280.  The Court ruled for the employer, holding that a layoff was not a discharge, and its resolution of that issue refutes Plaintiff's position in three distinct ways.

*First*, *Fishgold* confirms that the pro-veteran canon does not automatically trump even where (unlike here) there is a potential ambiguity.  The *Fishgold* Court noted, for example, that two federal agencies had offered conflicting interpretations, *id*. at 289-90, which means that reasonable government officials could and did read the statute differently.  Yet the Court found for the employer, notwithstanding the pro-veteran canon, because stronger interpretive tools supported that result, just as they support FedEx here.

*Second*, *Fishgold* confirms that the pro-veteran canon does not trump clear statement rules, especially where Congress has shown that it knows how to legislate directly.  *Fishgold* rejected the plaintiff's interpretation in part because "when Congress desired to cover the contingency of a lay-off, it used apt words to describe it." *Id.* at 287.  If Congress had intended to ensure work during a layoff, the Court reasoned, "we are bound to believe that it would have used a word of the kind which it had itself recognized as being descriptive of that situation." *Id.* The same is true here.  When Congress wants to provide for paid military leave, "it knows exactly how to do so." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1626 (2018); *see* 5 U.S.C.

§ 6323(a); *infra* at 10-12.  Under *Fishgold*, Congress's decision not to do so in USERRA defeats Plaintiff's position.

In the years since *Fishgold* was decided, courts continue to hold that "the canon of statutory construction in favor of veterans must … yield" to clear statement rules.  *Smith v. Principi*, 281 F.3d 1384, 1388 (Fed. Cir. 2002); *see also Nat'l Org. of Veterans Advocates, Inc. v. Sec'y of Veterans Affairs*, 809 F.3d 1359, 1363 (Fed. Cir. 2016) (rejecting argument that pro-veteran canon trumps *Chevron*).  The reason is straightforward.  As the federal government has explained, "[a]side from linguistic canons that apply rules of syntax to statutes, the most decisive canons take the form of 'clear statement rules,' which 'ensure Congress does not, by broad or general language, legislate on a sensitive topic inadvertently or without due deliberation.'"  En Banc Brief for Respondent-Appellee, *Procopio v. Wilkie*, No. 2017-1821, 2018 WL 5801188, at *46 (Fed. Cir. Oct. 31, 2018) (quoting *Sossamon v. Texas*, 563 U.S. 277, 291 (2011)).  The pro-veteran canon, by contrast, "is only applicable after other interpretive guidelines have been exhausted."  *Nielson v. Shinseki*, 607 F.3d 802, 808 & n.4 (Fed. Cir. 2010) (rejecting application of pro-veteran cannon where "[t]he mere fact that the particular words of the statute … standing alone might be ambiguous").  In other words, the pro-veteran canon is a tool of last resort—and there is no need to resort to it here.

*Finally*, *Fishgold* shows that legislative history remains a relevant consideration even in cases involving the pro-veteran canon and, more importantly, that the *absence* of any legislative history supporting a pro-employee construction can be evidence that this construction was not intended.  In *Fishgold*, the Court "searched the legislative history in vain for any statement of purpose that the protection accorded the veteran was the right to work when by operation of the seniority system there was none."  328 U.S. at 289.  Again, the same is true here.  *No* legislative

4

history supports the position that §§ 4303(2) and 4316(b) together require paid military leave in any circumstance, Reply 8, and the only history that does exist is to the contrary, *infra* at 5-10.

*Fishgold*'s principle that courts will not read substantial changes into a statute in the face of silent legislative history is well established and controls here. *See, e.g., Dewsnup v. Timm*, 502 U.S. 410, 419 (1992) (expressing reluctance to interpret the Bankruptcy Code as effecting "a major change in pre-Code practice that is not the subject of at least some discussion in the legislative history"); *United Sav. Ass'n v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 380 (1988) (major change "would not likely have been made without specific provision in the text of the statute," and it is "most improbable that it would have been made without even any mention in the legislative history"); *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 266–67 (1979) (silence of legislative history "is most eloquent, for such reticence while contemplating an important and controversial change in existing law is unlikely"); *see also infra* at 8-9; Reply 8.

3. *USERRA's Legislative History Is Devoid Of Any Statement Of Congressional Intent To Provide Paid Military Leave Under § 4316(b)*

USERRA's history does not suggest any intent (let alone a clear intent) to provide paid military leave under 38 U.S.C. § 4316(b) for employers who provide other types of paid leave. To the contrary, that history confirms that Congress had no such intent.

Any discussion of § 4316(b)'s history must begin with *Waltermyer*. Everyone agrees that Congress enacted § 4316(b) to codify that decision, as the legislative history of that provision makes expressly clear. *See* Opp. 11; MTD 14. And *Waltermyer* is fatal to Plaintiff's interpretation for two reasons. First, *Waltermyer*'s recognition that "holiday pay" (not paid leave generically) was the benefit there refutes Plaintiff's contention that "paid leave" is the benefit here. *Supra* at 1-2; Reply 2-3. Second, *Waltermyer* did not adopt or even consider the argument

5

that Plaintiff advances—i.e., that employees are entitled to paid military leave because they are paid for jury duty. *See* 804 F.2d at 825. Thus, Plaintiff's interpretation of § 4316(b) would "extend the statute well beyond the limits set out" in the seminal case on which the statue was modeled—all without any indication that Congress actually intended that result. *Foster v. Dravo Corp.*, 420 U.S. 92, 99-101 (1975); *see* MTD 13-14.

Indeed, the legislative history affirmatively refutes Plaintiff's reading of USERRA. Plaintiff's theory is that by adding §§ 4316(b) and 4303(2), Congress mandated that an employer must provide paid military leave so long as it provides other types of paid leave—leaves that, according to Plaintiff, include paid jury duty leave, paid sick leave, and paid bereavement leave. But "[t]here is no suggestion in any of the hearings or debates before Congress that a change from the prior law in this area was intended." *Gooding v. United States*, 416 U.S. 430, 457 (1974). In fact, Plaintiff's theory that USERRA enacted a new paid military leave obligation cannot be reconciled with the legislative history.

To start, the Senate, in consultation with the CBO, "determined that the enactment of USERRA would impose no new economic burdens on employers" and "would not entail any significant new regulation of … businesses." 70 Fed. Reg. 75246, 75291-92 (Dec. 19, 2015) (citing S. Rep. No. 103-158, at 82-85 (1993)); *see, e.g.*, *Gay v. Sullivan*, 966 F.2d 1114, 1129 (7th Cir 1992) (citing CBO "cost estimates" as "persuasive evidence of congressional intent"); *Thompson v. Kennickell*, 797 F.2d 1015, 1025 (D.C. Cir. 1986) (similar); *Premachandra v. Mitts*, 727 F.2d 717, 731-32 (8th Cir. 1984) (similar).[2] There is an irreconcilable conflict between the Senate's understanding and Plaintiff's interpretation. If Plaintiff's interpretation were correct,

---

[2] The House also had the CBO's budget score before it. *See* H.R. Rep. No. 103-65(I), at 49-51 (1993).

USERRA would have imposed new economic burdens and significant new regulation. Perhaps more telling, the Senate, again relying on the CBO, also calculated that USERRA would increase the federal budget by only $1 million a year, which it attributed *exclusively* to additional contributions to "government matching funds" for Thrift Savings Plans. S. Rep. No. 103-158, at 83-84. Plaintiff acknowledges that USERRA applies equally to the federal government, Opp. 15, which "employs a disproportionately large number" of reservists, Morales Decl. Ex. 2 at xix.[3] But if, as Plaintiff contends, USERRA imposed a paid military leave obligation on the federal government because the government provides, for example, paid jury duty leave, then this calculation would be off by orders of magnitude, because USERRA would require the federal government to pay reservists for every day of short-term military leave. This "enormous discrepancy" between the legislative history and Plaintiff's construction "indicates that Congress never envisioned" the paid military leave requirement that Plaintiff advances. *Gay*, 966 F.2d at 1129.

Finally, the Senate found that USERRA "would not affect the budgets of State and local governments" at all, S. Rep. No. 103-158, at 82, which could not be true if Plaintiff were correct, because state and local governments are also subject to USERRA and employ roughly one in six reservists. *Supra* n.3; *see Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 16-17 (1981) ("The case for inferring intent is at its weakest where, as here, the rights asserted impose *affirmative* obligations on the States to fund certain services, since we may assume that Congress will not implicitly attempt to impose massive financial obligations on the States.").

---

[3] At the time of Plaintiff's last deployment, for instance, the federal government employed roughly 20% of reservists. Morales Decl. Ex. 2 at xix & 44. Another 20% were employed by state and local governments. *Id*. at 44. *See also* Morales Decl. Ex. 3 at 8 (20% federal government employment, 16% state and local government employment in 2005).

Moreover, the legislative history shows that Congress was keenly aware that "many reservists experience a significant reduction in income when they are ordered to duty." S. Rep. No. 103-158, at 63-64. But the solution to this problem noted in the Senate Report was not § 4316(b) but § 4316(*d*), which allows a service member whose employment is interrupted by military service to "use any vacation or annual leave with pay that had been accrued by the individual before the beginning of the service." *Id*. The Senate Report did *not* mention any new paid military leave requirement that Plaintiff asks this Court to create, even though that requirement would have eliminated the "reduction in income" about which Congress was concerned whenever an employer offered any type of paid short-term leave deemed comparable to military leave.

When it comes to paid military leave specifically, moreover, the legislative history is deafeningly silent—just as it was in *Fishgold*. *Supra* at 4-5. Given the importance of the issue and the generally-accepted understanding that Congress had never before required paid military leave, it is reasonable to expect that *someone* would have said *something* about it. Presumably, state and local governments that provided their employees with other types of paid leave would have been opposed, as would large employers, including airlines, who employ a large number of reservists. On the other side should have been labor groups and veterans organizations arguing for the adoption of a new paid military leave requirement. Yet to FedEx's knowledge, there is not one word about paid military leave in any of the legislative history or in the comments to the Department of Labor (DOL) regarding its proposed rules implementing USERRA. As a general matter, "[i]t would be unusual for such a significant change as that proposed by [Plaintiff] to have entirely escaped notice." *Gooding*, 416 U.S. at 457-58; *see also supra* at 4-5. But in truth, the absence of any discussion of paid military leave is not "surprising," *Gooding*, 416 U.S. at

8

457, because everyone understood that USERRA imposed "no new economic burdens," 70 Fed. Reg. at 75291-92, or "significant new regulation[s]" on employers, S. Rep. No. 103-158, at 84.

The best Plaintiff has mustered is two snippets from the House Report that do not address paid military leave specifically and do not help Plaintiff in general. First, the Report repeats the *Waltermyer* rule that "the most favorable treatment accorded any particular leave [must] also be accorded the military leave, regardless of whether the non-military leave is paid or unpaid." H.R. Rep. No. 103-65(I) at 33-34. That is true—an employer must offer reservists on military leave all the benefits it provides to employees during comparable civilian leaves, regardless whether the civilian leave is paid or unpaid. But this statement has nothing to do with Plaintiff's theory here. No legislative history even remotely suggests *that* theory—i.e., that an employer who provides paid civilian leaves such as paid jury duty leave must also provide paid military leave. Second, Plaintiff cited the Report's statement that § 4303(2) is "broadly defined to include all attributes of the employment relationship." *Id*. at 21. No one disputes the breadth of that provision. But the question is whether the legislative history evidences a clear congressional intent to require employers who provide any type of paid leave also to provide paid military leave. It does not. And in the absence of any legislative history, Plaintiff's effort "to divine messages from congressional commentary directed to different questions altogether" is "a project that threatens to substitute the Court for the Congress." *Epic*, 138 S. Ct. at 1632 (quotations and alterations omitted).

More recent history also refutes Plaintiff's interpretation. Neither of the two agencies who administer federal policies under USERRA have, in the past 25 years, recognized the paid military leave obligation that Plaintiff asks this Court to create. DOL, which administers USERRA, has stated that differential pay during military leave is "neither required by nor

9

addressed in USERRA." 70 Fed. Reg. at 75249; *see also* 20 C.F.R. § 1002.7(c).  And the Office of Personnel Management, which maintains the federal government's leave policies, instructs that the only type of paid military leave available to federal employees is that provided expressly in 5 U.S.C. § 6323, even though the federal government would have to provide paid military leave under Plaintiff's theory.  *See* Morales Decl. Ex. 1.[4]  The fact that the agencies that administer USERRA are not aware of Plaintiff's construction is sufficient reason to reject it.

    4. *Plaintiff's Interpretation Would Negate Congress's Comprehensive Paid Military Leave Scheme For Federal Employees*

Because USERRA is generally applicable to the federal government, *see* 38 U.S.C. § 4303(4)(A)(ii), virtually any service member who works for the federal government is protected by both 5 U.S.C. § 6323 and USERRA.[5]  Section 6323(a), in turn, provides federal employees called up to "active duty," "inactive-duty training," "funeral honors duty" or "field or coast defense training" with 15 days of paid military leave per year, with no offset for military pay.  In emergency circumstances, § 6323(b) provides an additional 22 days of paid military leave, but this emergency pay is offset by military pay.

But if Plaintiff's interpretation of USERRA were correct, then the entire scheme outlined in § 6323 would be superfluous.  For more than half a century, the federal government has provided the same employees covered by § 6323 with paid jury duty, sick, and bereavement leave.  5 U.S.C. §§ 6322, 6307, 6326.  So under Plaintiff's theory, those same employees would be entitled to paid military leave under USERRA, and there would be no need for Congress to

---

[4] https://www.opm.gov/policy-data-oversight/pay-leave/pay-administration/fact-sheets/military-leave/

[5] Section 6323(a) adopts the broad definition of employee in 5 U.S.C. § 2105.  There are a few narrow exceptions provided in other parts of the U.S. Code.  *Supra* n.1

have provided for *any* amount of paid military leave in § 6323. Indeed, on Plaintiff's reading, § 6323 serves no purpose because USERRA effectively provides federal paid military leave.

The conflict is even more acute because Plaintiff's interpretation would specifically override Congress's decision to cap paid military leave in non-emergency circumstances at 15 days. An example illustrates the problem. If, hypothetically, a federal employee took 30 days of short-term military leave for training in one year, USERRA would entitle her to 30 days of paid military leave under Plaintiff's theory. But that would exceed the 15 days provided in § 6323(a) and therefore render that provision superfluous. The Court's order asks whether a federal-employee reservist receives up to 15 days of paid military leave or more than that amount. The statute that Congress enacted limits federal employees' paid military leave to 15 days in non-emergency circumstances, but the reading Plaintiff asks this Court to adopt would simply erase that express limit.[6]

This is not just a hypothetical problem. Had Plaintiff worked for the federal government, it appears that he would be claiming as many as 50 days of paid military leave in 2006, well beyond the 15 days provided in § 6323(a). *See* Am. Compl. ¶ 46.[7] Given that the federal government employs roughly 20% of all reservists, requiring paid military leave under USERRA would materially undermine Congress's careful scheme for military leave for federal employees. And it would fly in the face of Congress's conclusion that the statute would not significantly

---

[6] Plaintiff's interpretation would also render superfluous numerous state paid military leave statutes, which states continue to maintain because "USERRA does not address payment during military leave." Samuel W. Asbury, *A Survey and Comparative Analysis of State Statutes Entitling Public Employees to Paid Military Leave*, 30 Gonz. L. Rev. 67, 72 (1994); *see*, *e.g.*, 51 Pa. C.S. § 4102.

[7] Tellingly, Plaintiff's Complaint is silent about the number of days of military leave he actually took from FedEx, because he could have performed his military service during weekends or other days he was not scheduled to work.

impact the federal budget, *supra* at 7, because federal employees would be entitled to more paid military leave than Congress specifically authorized (and budgeted for) in § 6323.

This conflict with Congress's scheme dooms Plaintiff's position. "It is a well-established canon of statutory construction that when two statutes cover the same situation, the more specific statute takes precedence over the more general one." *Coady v. Vaughn*, 251 F.3d 480, 484 (3d Cir. 2001); *see* Reply 5-6. "That is particularly true where Congress has enacted a comprehensive scheme and has deliberately targeted specific problems with specific solutions." *Kannikal v. Att'y Gen.*, 776 F.3d 146, 150 (3d Cir. 2015) (quotations and alterations omitted); *see also, e.g.*, *RadLAX Gateway Hotel, LLC. v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (noting the general/specific rule "has full application … to statutes … in which a general authorization and a more limited, specific authorization exist side-by-side").

The specific problem here is paid military leave, and Congress's specific solution is the comprehensive scheme in § 6323. If Congress wanted to provide paid military leave for all service members, it could have done so. Or if Congress wanted to provide unlimited paid military leave to federal employees, it could have done that too. This Court should reject Plaintiff's attempt to add to USERRA by litigation what Congress could have—but did not— enact through legislation. *See, e.g.*, *Butterbaugh v. Dep't of Justice*, 336 F.3d 1332, 1336 n.3 (Fed. Cir. 2003) (rejecting construction that would "mandate[] federal agencies to provide employees with unlimited military leave, irrespective of the detailed statutes granting federal employees specific periods of leave for training or active duty" because there is "no indication that Congress intended to blot out the military leave statutes when it passed USERRA").

\*   \*   \*

FedEx respectfully requests that the Amended Complaint be dismissed with prejudice.

Dated:  May 28, 2020

/s/ Ryan T. Becker
Ryan T. Becker

Mark W. Robertson (*admitted pro hac vice*)
Anton Metlitsky (*admitted pro hac vice*)
O'MELVENY & MYERS LLP
7 Times Square
New York, NY 10036
Telephone:  (212) 326-2000
Facsimile:  (212) 326-2061
mrobertson@omm.com

M. Tristan Morales (*admitted pro hac vice*)
O'MELVENY & MYERS LLP
1625 Eye St NW
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414
tmorales@omm.com

FOX ROTHSCHILD LLP
2000 Market Street, 20th Fl.
Philadelphia, PA 19103-3222
Telephone: (215) 299-2033
Facsimile: (215) 299-2150
rbecker@foxrothschild.com

Colleen Hitch Wilson (*admitted pro hac vice*)
FEDERAL EXPRESS CORPORATION
3620 Hacks Cross Road
Memphis, TN 38125
Telephone: (901) 434-8338
chitchwilson@fedex.com

*Attorneys for Defendant Federal Express Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of Defendant Federal Express Corporation's Supplemental Brief in Support of its Motion to Dismiss, and the accompanying declaration and exhibits, was served on all counsel of record through the Court's CM/ECF system.

*/s/ Ryan T. Becker*
Ryan T. Becker

Dated: May 28, 2020