**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GERARD TRAVERS** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.  19-6106** |
| | : | |
| **FEDEX CORPORATION** | : | |

## <u>MEMORANDUM</u>

KEARNEY, J.                                                                                  July 20, 2020

      Gerard Travers served as a Petty Officer, First Class in the United States Navy and Naval Reserve from 1990 until 2010.   During his naval service, Mr. Travers began working as a Federal Express Corporation ("FedEx") courier in 1996.  Mr. Travers took military leave from FedEx as a Naval reservist for periods of two weeks in 2006, 2007, and 2009.  He also routinely took shorter periods of military leave each year between 2004 and 2010.   FedEx did not pay reservist employees taking military leave for thirty days or less but paid all employees full wages or salary sick leave, bereavement leave, and differential pay for jury service.[1]

      Mr. Travers now sues FedEx seeking wages for the days he spent on military leave as a reservist.  He focuses on FedEx's employer obligations as defined by Congress in the Uniformed Services Employment and Reemployment Rights Act.[2]  Mr. Travers asks we declare FedEx violated the Act and order it to calculate and pay him, and other members of his putative class, wages of FedEx reservists when excused for short-term military leave.[3]

      We deeply appreciate Mr. Travers' service.  While Congress ensures a variety of defined benefits and seniority are not affected by his military leave, he worked for a company (FedEx) which does not pay for work not performed by reservists on short-term military leave.  Congress requires employers maintain benefits, specifically including pay for work performed before leave.  But Congress's words do not include paying Mr. Travers his regular wages while he is on

short term military leave. Congress mandates this military leave pay for federal employees but has not extended this pay to private employees who also agree to provide short-term military service.  We cannot rewrite statutes to include words which Congress did not put there.  We are bound by Congress's text and have no basis to craft private employer wage obligations to our military men and women beyond those required by our elected representatives.  We must dismiss Mr. Travers' complaint.

## I.     Analysis

FedEx moves to dismiss Mr. Travers' claim arguing Congress, through the Uniformed Services Employment and Reemployment Rights Act ("the Act"), does not require it to pay wages to employees on short-term military leave.[4]  FedEx argues the text, structure, and legislative history of the Act unambiguously exclude paid leave as a benefit.[5]  Mr. Travers responds Congress unambiguously provides paid leave as a benefit, and even if we found Congress's text ambiguous, we are required to resolve ambiguities in the Act in favor of servicemembers.[6]  We ordered supplemental briefing from the parties.[7]  After considering the parties' thoughtful arguments on a relatively novel issue of statutory construction, we agree with FedEx as to Congress's mandate and dismiss Mr. Travers' complaint.[8]

Mr. Travers argues two sections of the Act support his position. Congress provides in section 4316(b)(1):

> (b)(1) ... a person who is absent from a position of employment by reason of service in the uniformed services shall be--
> > (A) deemed to be on furlough or leave of absence while performing such service; and
> > (B) entitled to such other ***rights and benefits*** not determined by seniority as are generally provided by the employer of the person to employees having similar seniority, status, and pay who are on furlough or leave of absence under a contract, agreement, policy, practice, or plan in effect at the commencement of such service or established while such person performs such service.[9]

2

Congress defined the referenced "rights and benefits" in section 4303(2):

[T]he terms, conditions, or privileges of employment, including any advantage, profit, privilege, gain, status, account, or interest (including wages or salary **_for work performed_**) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice and includes rights and benefits under a pension plan, a health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours or location of employment.[10]

Mr. Travers argues section 4316(b)(1) requires FedEx to pay him for short-term military leave of thirty days or less because FedEx paid wages on other comparable "leaves," like jury duty, sick leave, and bereavement leave. To get us there, Mr. Travers argues paid leave meets the Act's definition of "rights and benefits" under section 4303(2). The parties disagree on Congress including paid military leave as a "right[] and benefit[]," but FedEx does not presently argue military leave is incomparable to jury, sick, and bereavement leaves because resolving this question requires fact development in discovery.[11]  Following the parties' lead, we assume military leave is comparable to jury, sick, and bereavement leaves for the purposes of this motion to dismiss.

We start by considering the Act's predecessor statutes, broad statutory scheme, and a related statute providing paid military leave to federal employees.  We next turn to the limited case law considering the Act and its predecessor statutes. We then analyze the statutory text Congress enacted. Because we find Congress unambiguously excludes paid military leave from the "rights and benefits" employers must provide equally to reservists and non-reservists, we need not evaluate legislative history to shed light on intent.  The Act is not ambiguous. We conclude paid leave is not a benefit Congress guaranteed to military reservists through the Act.[12]

**A.     The Act's broader context and related statutes indicate "rights and benefits" does not include paid military leave.**

To decide whether statutory language is ambiguous, our Court of Appeals instructs us to evaluate "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."[13]   Statutory construction "is a holistic endeavor."[14] "A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme."[15]   We begin our analysis by considering the broader context of the Act, as we must "construe statutes, not isolated provisions."[16]

Congress has long protected the employment benefits for military servicemembers who take leaves of absence to serve in the military. The Act's predecessor statutes include the Vietnam Era Veterans' Readjustment Assistance Act and its amendment the Veterans' Reemployment Rights Act of 1974.   In enacting the Uniformed Services Employment and Reemployment Rights Act, Congress emphasized its continuity with its predecessor statutes and the caselaw developed under the previous military leave statutes.[17]

Congress enacted the Uniformed Services Employment and Reemployment Rights Act in 1994 to "encourage noncareer service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service."[18]   The Act prohibits the "deni[al] [of] initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of [a person's] membership, application for membership, performance of service, application for service, or obligation [in a uniformed service]."[19]   The Act includes sections on non-discrimination,[20] reemployment,[21] entitlement to benefits after periods of military service,[22] and information on entitlement to specific benefit plans like health[23] and pension.[24]

4

Considering the "broader context of the statute as a whole," FedEx contends Congress would have included a section describing details of paid military leave had it intended to include this requirement in the Act, as it included sections describing entitlement to benefits such as seniority-based and non-seniority-based benefits after periods of uniformed service (section 4316), health (section 4317), and pension (section 4318).[25]   Mr. Travers does not argue all businesses must provide paid leave for military reservists on short-term military leave—he only contends the Act requires paid leave for military reservists if employers provide paid leave for comparable short-term leaves. Congress's enumeration of health and pension benefits for service members is distinct. But in section 4316, Congress enumerated seniority and non-seniority benefits upon reemployment.  Congress's failure to mention providing wages to service members on military leave if employers offer wages for other comparable leaves suggests Congress did not intend to provide wages to reservists on short-term military leave under those circumstances.

FedEx also cites section 4316(d) to demonstrate Congress did not include paid leave in its definition of "rights and benefits."[26]   Under section 4316(d), employees "whose employment with an employer is interrupted by a period of service in the uniformed services shall be permitted … to use during such period of service any vacation, annual, or similar leave with pay accrued by the person before the commencement of such service."[27]  FedEx argues employees would have no occasion to use accrued vacation days while on military leave under Mr. Travers' interpretation of section 4316(b)(1), and his interpretation would render subsection (d) superfluous.[28]   Mr. Travers responds reservists whose employers do not offer paid leave for comparable absences would benefit from subsection (d) by using accrued vacation days during any military leave, and even reservists who benefit from pay for short-term military leave would

benefit from subsection (d) when they take longer military leaves. We agree subsection (d) is not necessarily superfluous under Mr. Travers' interpretation.

But had Congress intended to include paid leave as a right or benefit, Congress would have explained how subsection (d) interacts with subsection (b)(1). In addition, subsection (d) describes the level of pay employers must provide to the reservist using vacation days or annual leave days during a military leave of absence ("pay accrued by the person before the commencement of such service").[29]  It is instructive Congress provided no similar specified pay provision regarding the alleged inclusion of paid military leave in subsection (b)(1).

Congress knows how to explicitly provide for paid military leave because it has done so for federal employees. It has not done so for private employees. Congress first passed a statute providing paid military leave to federal employees in 1917.[30]  In 5 U.S.C. section 6323(a), Congress provides pay for federal employees who take leave for active duty, inactive-duty training, funeral honors duty, or engaging in field or coastal defense training "at the rate of 15 days per fiscal year."[31]  If a federally-employed military reservist does not use fifteen days in one fiscal year, the unused paid military leave days can carry over into the next fiscal year.[32]  For federally-employed military reservists called to duty for emergencies, section 6323(b) provides pay for up to twenty-two days a year.[33]  This statutory structure results from over a century of Congress's implementation of careful and detailed amendments.[34]

"[W]hen two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective."[35]  FedEx argues section 6323(a) and Mr. Travers' interpretation of the Act are incapable of coexistence. If we read the Act to require paid military leave when pay is provided to employees on comparable types of short-term leave, FedEx contends, we would negate the detailed provisions enacted by

6

Congress in section 6323(a) for many federally-employed military reservists.[36]  Mr. Travers' reading of the Act would provide up to thirty days pay for federal employees on military leave,[37] contradicting section 6323(a)'s provision of fifteen days of paid military leave. The specific-general canon supports FedEx's argument: "[I]t is a commonplace of statutory construction that the specific governs the general."[38]  This canon may operate to avoid not only contradiction, but "the superfluity of a specific provision that is swallowed by the general one, 'violat[ing] the cardinal rule that, if possible, effect shall be given to every clause and part of a statute.'"[39] Because section 6323(a) provides specific information on paid military leave for federal employees, we should avoid interpreting the Act in a manner which would render the more specific statute superfluous. Mr. Travers' opposition does not address the superfluity problems raised by his interpretation. He instead argues the statutes may not contradict each other because his argument may fail on the comparability determination, or because most reservists may not take more than fifteen days of military leave anyway.[40]  These arguments fail.

    We cannot strain credibility to find Congress would render its carefully developed federal employee military leave statute superfluous without one explicit mention of providing paid leave to all military reservists for short-term military leave if their employers offer other types of paid leave. Congress specifically explained in the Act it did not intend to alter any other federal statute: "Nothing in this chapter shall supersede, nullify or diminish any Federal or State law."[41] As the Supreme Court instructs, Congress "does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouse holes."[42]  "To conclude otherwise would be to conclude [the Act] mandates federal agencies to provide employees with unlimited military leave, irrespective of the detailed statutes granting federal employees specific periods of leave for training or active duty. We find no

indication that Congress intended to blot out the military leave statutes when it passed [the Act]."[43]

> **B.    Earlier opinions offer us little guidance as to "rights and benefits."**

Courts have drawn differing conclusions in the half-dozen cases cited by the parties and uncovered in our research which offer some guidance.

In *Waltermyer v. Aluminum Company of America*, our Court of Appeals addressed the issue of paid holiday leave under the Act's predecessor statute, the Vietnam Era Veterans' Readjustment Assistance Act.[44]   The Aluminum Company of America provided holiday pay only when employees worked the rest of the week, except for employees absent for reasons beyond their control.[45]   Our Court of Appeals held a military reservist on a two-week military training period should receive holiday pay for the holiday falling during his training period because of the similarity between the listed exceptions and a military leave of absence.[46]   Our Court of Appeals referred to the Supreme Court's decision in *Monroe v. Standard Oil*,[47] which held the Vietnam Era Veterans' Readjustment Assistance Act did not require an employer to make scheduling accommodations for reservists not made for other employees and found no reason to infer Congress meant for "reservists …to be entitled to all 'incidents and advantages of employment' accorded during their absence to working employees, including regular time and overtime pay."[48]   Our Court of Appeals in *Waltermyer* concluded the Act's predecessor statute required "equality as the test," not preferential treatment for servicemembers, and limited its holding to the claim for holiday pay.[49]

Eighteen years later in *Gordon v. Wawa*, our Court of Appeals declined to read language into the Act when affirming a district court's dismissal of a military reservist's complaint arguing his employer violated the Act by requiring him to work immediately upon returning from

military leave.[50]  The employee died in a car accident following a late-night shift as soon as he returned home from weekend military reserve duties.[51]  The employee's estate argued Wawa deprived him of the right to an eight-hour rest period between reservist duties and returning to work.[52]  Our Court of Appeals held Congress's text provided no such right.[53]  Our Court of Appeals, in dicta, described reservists' "right to take paid military leave" as "a benefit [the Act] does not guarantee."[54]  Our Court of Appeals relied on Congress's stated purposes to affirm the district court's dismissal of the estate's claim: "(1) encouraging 'noncareer service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service;' (2) minimizing 'the disruption to the lives of persons performing service in the uniformed services as well as to their employers' by providing for the prompt reemployment of service members upon their completion of service; and (3) prohibiting discrimination against them because of their uniformed services."[55]

Four years after *Gordon* in *Welshans v. United States Postal Service*, the Court of Appeals for the Federal Circuit addressed an issue like Mr. Travers' argument.[56]  Mr. Welshans, a military reservist and Postal Service employee, argued the Postal Service improperly charged him for military leave for Sundays and holidays in August 1999 when he would not have been working.  The Postal Service's policy in effect in August 1999 required the Postal Service to charge every day of military leave, even non-workdays, against military leave.  Mr. Welshans argued the Postal Service's policy in effect at the time he sued in 2006 prohibited the Postal Service charging him for military leave for non-workdays and the policy otherwise violated the Act.[57]  The court of appeals considered Mr. Welshans' argument under section 4311(a) through which Congress "prohibits discrimination against persons serving in the military by mandating that a member of 'a uniformed service shall not be denied . . . any *benefit of employment* by an

employer on the basis of that membership[.]'"[58]   Considering Congress's definition of "benefit of employment," the same definition Congress provides for "rights and benefits," the court of appeals recognized it previously construed the definition to include "military leave" under the federal employee military paid leave statute.[59]   But the court of appeals held the Postal Service's charging Mr. Welshans for military leave for Sundays and holidays in 1999 did not "deny reservists any benefit of employment" because its 2006 policy instead provided "an *additional benefit* not available to nonmilitary employees."[60]   In other words, the reservists need not be paid for Sundays and holidays when the non-reservists are not if the employer chooses not to pay.   The Act does not guarantee them a benefit not offered to non-reservists.   The court of appeals' reasoning is instructive today:

> While non-reservists were entitled to sick and annual leave, reservists were granted not only sick and annual leave, but military leave as well. Regardless of whether non-workdays are charged against military leave, such leave is a benefit available only to employees serving in the military. [The Act] prohibits discrimination against reservists because of their service: there is nothing in the statute to prevent an agency from granting them benefits not available to other employees.[61]

Based on the memoranda from experienced counsel and our research, it appears only two courts have addressed the precise issue under the Act on a motion to dismiss standard, although Judge Rice in the Eastern District of Washington last summer denied a motion to dismiss where the employer argued distinct comparability grounds which raise fact questions.[62]   In *Scanlan v. American Airlines Group*, our colleague Judge Bartle denied an employer's motion to dismiss.[63]   Mr. Scanlan, an airline pilot and a Major General in the United States Air Force Reserve, alleged American Airlines violated the Act by failing to pay him during short-term military leave while other employees receive pay for other short-term absences such as jury duty, sick leave, and union leave.[64]   In *White v. United Airlines, Inc.*, Judge Norgle in the Northern District of Illinois granted the employer's motion to dismiss a complaint alleging United Airlines failed to pay

employees for short-term military leave while paying employees for days spent on jury duty.[65] We will address the lessons from these considered opinions reaching different conclusions as we study the text enacted by Congress.

**C.     The parties' arguments about the text start with different assumptions about "rights and benefits."**

Though we concluded the broader context of the Act would not be consistent with the inclusion of paid military leave within "rights and benefits," we must also evaluate the text of the Act to determine whether ambiguity exists. If the statutory language is unambiguous and "the statutory scheme is coherent and consistent," our inquiry ends.[66] We discern "[t]he plainness or ambiguity of statutory language … by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."[67] "[O]ftentimes the meaning—or ambiguity—of certain words or phrases may only become evident when placed in context."[68] Our Court of Appeals instructs us to "construe [the Act's] provisions liberally, in favor of the servicemember."[69]

As an initial matter, the parties dispute the precise "benefit" sought by Mr. Travers. Mr. Travers seeks "paid leave" or "wages."[70] FedEx argues Mr. Travers frames the issue incorrectly: In *Waltermyer*, for example, our Court of Appeals considered "holiday pay," a subset of "paid leave," and concluded employees absent for military leave should receive pay for holidays because employees absent for jury duty received pay for holidays.[71] Our Court of Appeals did not hold employees on a leave of absence for military duty should receive pay because employees absent for jury duty receive pay, the argument now furthered by Mr. Travers.[72] In *Gordon*, our Court of Appeals discussed "paid military leave" as a benefit not guaranteed in the Act, albeit in dicta.[73] The Court of Appeals for the Federal Circuit in *Pucilowski v. Department of Justice* held "military leave" of a federal employee under the federal employee military paid

leave statute, section 6323(a)(1), falls within the definition of "benefit of employment" provided in section 4303(2) of the Act.[74]   The court of appeals reasoned "military leave" under section 6323(a)(1) "accrues by reason of" Mr. Pucilowski's employment.[75]   Citing these cases, FedEx argues Mr. Travers increases a unit of generality when he interprets benefits to include paid leave, and maintains specific categories of paid leave such as paid jury leave, paid sick leave, and paid bereavement leave, and unpaid military leave are "rights and benefits" within the meaning of the statute.[76]  "Paid leave" broadly is not.[77]   FedEx argues we should view Mr. Travers as seeking "paid military leave."[78]

FedEx contends Mr. Travers requests wages from FedEx for the weeks of short-term military leave he took over his career, seeking not just equality, as mandated by the Act, but an "additional benefit" not provided to non-reservist employees.[79]   Under the Act, reservists must receive wages for holidays during a military absence when non-reservists receive wages for holidays during comparable absences,[80] reservists should enjoy paid jury leave if non-reservists enjoy paid jury leave, reservists should enjoy paid sick leave if non-reservists enjoy paid sick leave, and reservists should enjoy paid bereavement leave if non-reservists enjoy paid bereavement leave. Equality is the test.[81]   Framing the issue in terms of "paid military leave" as the benefit sought, FedEx acknowledges it chose a policy which does not offer paid military leave to non-reservists so it could not discriminate against reservists for their uniformed services.

Mr. Travers argues wages are a benefit offered to non-reservists missing work for similar leaves like jury service or bereavement.  He relies on section 4316(b)(1) of the Act to support his claim: "a person who is absent from a position of employment by reason of service in the uniformed services shall be … entitled to such other *rights and benefits* not determined by

seniority as are generally provided by the employer of the person to employees having similar seniority, status, and pay who are on furlough or leave of absence under a … policy."[82]

FedEx contends the ordinary understanding of the word "benefits" does not include wages, because wages are the reason for employment, not a "benefit" of employment.[83]   In response, Mr. Travers argues Congress included two words, "rights and benefits," to include a wide variety of circumstances expanded upon in section 4303(2).[84]   Mr. Travers is correct: "rights and benefits" does not explicitly exclude all wages.

FedEx responds by citing Congress's remedies in section 4323(d)(1)(B): "The court may require the employer to compensate the person for any loss of *wages or benefits* suffered by reason of such employer's failure to comply with the provisions of this chapter."[85]  FedEx argues if Congress intended "benefits" to include wages, Congress would have no need to provide remedies for "any loss of *wages or benefits*"—it would merely provide for any loss of benefits.[86] The presumption of consistent usage to interpret statutes so "operative words have a consistent meaning throughout" supports FedEx's argument.[87]  "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."[88]  The presumption against superfluity, a "well-established canon of statutory interpretation," which provides, "statutes should be read to avoid making any provision 'superfluous, void, or insignificant,'" also supports FedEx's interpretation.[89]  We hesitate "to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law."[90]

Mr. Travers responds the word "wages" in this remedies section serves a different purpose than the word "wages" in section 4303(2).[91]  Mr. Travers argues Congress referred to

"wages or benefits" disjunctively because the remedies provision in section 4323(d)(1)(C) authorizes front pay and backpay to compensate those who lose wages.[92]  We disagree with Mr. Travers.  Section 4323(d)(1)(C) allows a court, upon a finding of willful violation, to "require the employer to pay the person an amount equal to the amount referred to in subparagraph (B) as liquidated damages."[93]  Subsection (C) does not limit its damages to employees who lost wages; it explicitly refers to any violation of subparagraph (B) and could include compensation for "any loss of wages or benefits."  FedEx's argument, relying on the presumption of consistent usage and the presumption against superfluity, mitigates Mr. Travers' argument "benefits" includes wages.

### D.   Congress defines "rights and benefits" under section 4303(2) without identifying wages for services not earlier performed.

The parties' main textual disagreements arise from Congress defining "rights and benefits" as:

> [T]he terms, conditions, or privileges of employment, including any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice and includes rights and benefits under a pension plan, a health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours or location of employment. [94]

Mr. Travers argues Congress's first clause, "the terms, conditions, or privileges of employment," includes an employer offering paid leave under the ordinary meaning of those words.[95]  According to Mr. Travers, "term" is defined as "[o]ne of the elements of a proposed or concluded agreement; a condition" and "privilege is defined as '[a] special advantage, immunity, permission, right, or benefit granted to or enjoyed by an individual, class, or caste.'"[96]  Mr. Travers contends the rest of section 4303(2) confirms paid leave is a right or a benefit: Congress included expansive or illustrative words, such as "including" and "any," to indicate an inclusive

list of examples; the list of examples includes instances of employees receiving pay for work not performed, such as "severance pay, supplemental unemployment benefits, [paid] vacations;" and "including any advantage, profit, privilege, gain, status, account, or interest" plainly includes receiving money from an employer.[97]   Mr. Travers also refers to the Court of Appeals for the Federal Circuit's conclusion in *Pucilowski* section 4303(2) should be given "an expansive interpretation."[98]

As mentioned above, in *Scanlan*, Judge Bartle considered Mr. Scanlan's allegation American Airlines violated the Act by failing to pay him during short-term military leave while other employees receive pay for other short-term absences such as jury duty, sick leave, and union leave.[99]   Judge Bartle, in addressing "rights and benefits" in section 4303(2), found the definition is "extremely broad" due to the word "including," indicating the list of rights and benefits provided by the Act is non-exclusive. [100]   Judge Bartle relied on our Court of Appeals' decision in *Waltermyer* to include holiday compensation in the definition of "rights and benefits," explaining, "we are hard pressed to understand why compensation for time on military leave for work not performed would not also fit within the definition."[101]   Judge Bartle saw "no material difference" between Mr. Scanlan's allegations and the allegations in *Waltermyer*.[102] But, as discussed above, paid holiday leave put reservists at an equal level as non-reservists—the *Waltermyer* plaintiff did not seek an additional benefit. Though we agree the language in section 4303(2) is inclusive, we respectfully disagree with Judge Bartle's conclusion about the similarity of the allegations in *Waltermyer*. Providing holiday pay for employees on military leave when employees on comparable leave receive holiday pay evens the playing field; requiring employers to pay wages for military reservists on short-term military leave when the employers do not pay wages for non-reservist employees on short-term military leave would mandate an additional

15

benefit beyond equality between reservists and non-reservists.  The analogy's absurdity—how would FedEx offer short-term paid military leave and exclude non-reservists? —illuminates the distinction between the benefits sought by the *Waltermyer* plaintiff and Mr. Travers. The *Waltermyer* plaintiff sought equality, which the Act requires. Mr. Travers seeks an additional benefit not guaranteed by the Act.

Mr. Travers argues paid leave or wages can fit into several of the Act's enumerated benefits and requires FedEx must pay regardless of its present policy. He argues "advantage" is defined as "[b]enefit or profit; gain;" "profit" is defined as "[a]n advantageous gain or return; benefit;" and "gain" is "[s]omething gained or acquired."[103]   Mr. Travers relies on this "extremely broad, detailed definition with 81 words" to show Congress did not intend the definition to provide a list of all possible benefits. We agree section 4303(2) does not constitute an exclusive list of rights and benefits—but we question why Congress would fail to include a reference to paid military leave if it intended to provide this benefit.

Mr. Travers' biggest obstacle in this argument is overcoming Congress's parenthetical text in section 4303(2): "[T]he terms, conditions, or privileges of employment, including any advantage, profit, privilege, gain, status, account, or interest (***including wages or salary for work performed***)[.]"[104]   By explicitly providing "rights and benefits" includes "wages or salary for work performed," Congress, by negative implication, excluded wages or salary for work *not* performed, such as paid leave. Mr. Travers argues the first word of the parenthetical, "including," is not limiting.[105]   He also argues the interpretive canon of *expressio unius est exclusio alterius*, or "the expression of one thing suggests the exclusion of others," does not apply where the term "including" introduces a list of multiple items.[106]   Mr. Travers' provided cite does not support this strong conclusion.[107]   It is true "[t]he force of any negative implication

16

… depends on context."[108]  And "[t]he *expressio unius* canon applies only when 'circumstances support[ ] a sensible inference that the term left out must have been meant to be excluded.'"[109] The circumstances here support the applicability of this negative implication because only one item is listed and that item is exactly opposite the item Congress may have decided to exclude. Relying on the text alone, the negative implication of the parenthetical strongly suggests Congress intended to exclude wages or salary for work *not* performed.

Assuming he can overcome this parenthetical, Mr. Travers focuses on what Congress meant in the clause defining rights and benefits "that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice."[110]  We agree with Mr. Travers this clause modifies the phrase directly preceding it, "including any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed)," not the prior independent clause offset by a comma, "terms, conditions, or privileges of employment."[111] FedEx argues pay itself cannot accrue by reason of an employment contract because wages are essential to employment. The benefits listed by Congress, like health insurance, vacation, severance pay, and "wages or salary for work performed" can reasonably accrue by reason of an employment contract. Mr. Travers cites the dictionary definition of "accrue," "[t]o come into existence as an enforceable claim or right; to arise," to argue "accrue" does not require accumulation or earning over time.[112]  The clause, Mr. Travers argues, should be interpreted as any profit, privilege, or gain that arises by reason of an employment contract, which plainly includes wages.[113]  Mr. Travers also cites examples of statutes in which Congress referenced wages as "accruing."[114]

Judge Bartle disagreed with American Airlines' argument in *Scanlan* based on the word "accrue": "The right to be paid for work not performed while on military leave comes into

existence and thus accrues as an enforceable claim in the exact same way as the right to holiday pay, severance pay, or vacation pay, all for time periods when no work is performed."[115] We agree with Mr. Travers and Judge Bartle as to the definition of "accrue"—wages could certainly accrue, and FedEx's argument based on this phrase fails.

Congress's definition of rights and benefits in section 4303(2) concludes with eleven non-exclusive rights and benefits: "rights and benefits under a pension plan, a health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours or location of employment."[116]   Mr. Travers argues paid leave fits into this list, even though it is unstated.[117]   But we do not understand why Congress would not explicitly provide for paid military leave, an "additional benefit" not required for equality between reservist and non-reservist employees,[118] if it intended to provide such a benefit.

As Judge Norgle observed in *White v. United Airlines, Inc.*: "It is contrary to the express language of the statute to hold that a business is required to pay a reservist wages for time not worked."[119]   Relying on the Court of Appeals for the Seventh Circuit's decision in *Miller v. City of Indianapolis*,[120] Judge Norgle recognized, "it is well established that Congress did not intend to create a universal requirement for private businesses to pay for reservists' absences."[121]   He concluded: "If Congress had intended to create a statutory regime in which any company which offers paid leave for jury duty was also required to pay for service members' leaves of absence, it would have done so clearly."[122] We agree with Judge Norgle.

It is undisputed the definition of "rights and benefits" does not explicitly include "paid leave" or "wages."   Though we agree Congress chose expansive language to define "wages and benefits," we struggle to understand why Congress would fail to mention the largest "benefit" of

18

them all—particularly, when Mr. Travers himself points out, wages amount to seventy percent of workers' total compensation.[123]   Considering the Act as a whole, we cannot pinpoint a textual reference or structural explanation suggesting Congress included paid military leave within "rights and benefits."   We conclude the text of the Act unambiguously excludes paid military leave from its definition of "rights and benefits."

## II.   Conclusion

Congress's protection of "rights and benefits" for military reservists unambiguously excludes paid military leave.   We grant FedEx's motion to dismiss Mr. Travers' complaint.

---

[1] ECF Doc. No. 27 at ¶ 32.

[2] The Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. §§ 4301–4335 (1994).

[3] *Id.* at ¶ 5; 15. Mr. Travers dropped his claim for prospective declaratory relief. ECF Doc. No. 36 at 20, n. 13.

[4] ECF Doc. No. 30-2.

[5] ECF Doc. No. 40.

[6] ECF Doc. No. 36.

[7] ECF Doc. No. 42. We asked the parties to address what exact "benefit" Mr. Travers seeks; the proper application of the *Fishgold* canon of construing statutes in favor of servicemembers; whether the legislative history afforded a clear statement Congress intended to provide paid military leave; and the interplay between the Act and 5 U.S.C. § 6323. We appreciate their timely analysis.

[8] When considering a motion to dismiss "[w]e accept as true all allegations in the plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and we construe them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)).  To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion:

(1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

[9] 38 U.S.C. § 4316(b)(1) (emphasis added).

[10] 38 U.S.C. § 4303(2) (emphasis added).

[11] ECF Doc. No. 30-2 at 12 n. 2.

[12] We need not evaluate FedEx's laches argument.

[13] *In re Trump Ent. Resorts*, 810 F.3d 161, 167 (3d Cir. 2016).

[14] *Adoptive Couple v. Baby Girl*, 570 U.S. 637, 652 (2013) (quoting *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988)).

[15] *Id.*

[16] *King v. Burwell*, --- U.S. ----, 135 S. Ct. 2480, 2489 (2015) (internal quotation marks and citations omitted).

[17] *Scanlan v. American Airlines Group*, 384 F. Supp. 3d 520, 523 (E.D. Pa. 2019).

[18] *Carroll v. Del. River Port Auth.*, 843 F.3d 129, 131 (3d Cir. 2016) (quoting 38 U.S.C. § 4301(a)(1)).

[19] *Id.* (quoting 38 U.S.C. § 4311(a)).

[20] 38 U.S.C. § 4311.

[21] 38 U.S.C. §§ 4312, 4313.

[22] 38 U.S.C. § 4316.

[23] 38 U.S.C. § 4317.

[24] 38 U.S.C. § 4318.

[25] ECF Doc. No. 30 at 12.

[26] *Id.* at 21.

---

[27] 38 U.S.C. § 4316(d).

[28] ECF Doc. No. 30 at 21.

[29] 38 U.S.C. § 4316(d).

[30] *Butterbaugh v. Dep't of Justice*, 336 F.3d 1332, 1335 (Fed. Cir. 2003).

[31] 5 U.S.C. § 6323(a)(1).

[32] *Id.*

[33] *Id.* at § 6323(b).

[34] *See Butterbaugh*, 336 F.3d at 1335.

[35] *Simon v. FIA Card Servs., N.A.*, 732 F.3d 259, 274 (3d Cir. 2013).

[36] ECF Doc. No. 30-2 at 16-17. Congress waived federal sovereign immunity to provide the Act's protection to federal employees. *See* 38 U.S.C. § 4303(4)(A)(ii).

[37] The federal government also provides differential pay for jury duty, 5 U.S.C. § 6322(a)(1), paid bereavement leave for immediate family members dying from their military service, 5 U.S.C. § 6326, and paid sick leave, 5 U.S.C. § 6307.

[38] *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992)).

[39] *Id.*

[40] ECF Doc. No. 47 at 15.

[41] 38 U.S.C. § 4302(a).

[42] *Whitman v. Am. Trucking Ass'n.*, 531 U.S. 457, 468 (2001).

[43] *Butterbaugh*, 336 F.3d at 1336 n. 3.

[44] *Waltermyer v. Aluminum Co. of America*, 804 F.2d 821, 822 (3d Cir. 1986).

[45] *Id.*

[46] *Id.*

[47] *Monroe v. Standard Oil*, 452 U.S. 549 (1981).

[48] *Id*. at 550.

[49] *Waltermyer*, 804 F.2d at 823-825.

[50] *Gordon v. Wawa*, 388 F.3d 78, 80 (3d Cir. 2004).

[51] *Id*.

[52] *Id*.

[53] *Id*. at 82.

[54] *Id*.

[55] *Id*. at 85 (quoting 38 U.S.C. § 4301(a)(1)-(3)).

[56] *Welshans v. U.S. Postal Service*, 550 F.3d 1100, 1101 (Fed. Cir. 2008).

[57] *Id*. at 1103.

[58] *Id*. at 1104 (quoting 38 U.S.C. § 4311(a)) (emphasis added).

[59] *Id*.; 38 U.S.C. § 4303(2).

[60] *Welshans*, 550 F.3d at 1104 (emphasis added).

[61] *Id*.

[62] *Clarkson v. Alaska Airlines, Inc*., No. 19-5, 2019 WL 2503957, at *7 (E.D. Wash. June 17, 2019).  Mr. Travers also cites *Huntsman v. Southwest Airlines, Co.*, where Judge Hamilton in the Northern District of California denied Southwest Airlines' motion for judgment on the pleadings in an order without an accompanying memorandum. *Huntsman v. Southwest Airlines, Co.*, No. 19-83, ECF Doc. No. 59 (N.D. Cal. Nov. 27, 2019). We cannot glean Judge Hamilton's reasoning from the transcript and do not find the order alone instructive.

[63] *Scanlan v. American Airlines Group*, 384 F. Supp. 3d 520, 528 (E.D. Pa. 2019).

[64] *Id.* at 522.

[65] *White v. United Airlines, Inc.*, 416 F.Supp.3d 736, 740 (N.D. Ill. 2019).

[66] *Kingdomware Techs., Inc. v. U.S.*, 136 S. Ct. 1969, 1976 (2016).

[67] *In re Trump Entm't Resorts*, 810 F.3d 161, 167 (3d Cir. 2016).

[68] *King v. Burwell*, --- U.S. ----, 135 S. Ct. 2480, 2489 (2015) (internal quotation marks and citations omitted).

[69] *Gordon v. Wawa*, 388 F.3d 78, 81 (3d Cir. 2004) (citing *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 285 (1946)). The parties submitted supplemental briefing on the application of the *Fishgold* canon. ECF Doc. Nos. 47, 48. We do not apply the *Fishgold* canon unless some level of ambiguity exists. *Nielson v. Shinseki*, 607 F.3d 802, 808 (Fed. Cir. 2010) (declining to apply the *Fishgold* canon where "[t]he mere fact that the particular words of the statute … standing alone might be ambiguous. Rather, that canon is only applicable after other interpretive guidelines have been exhausted…"). Mr. Travers argues we should apply the *Fishgold* canon to find in his favor if we find any ambiguity. In the alternative, he argues we should apply the *Fishgold* canon to residual, end-stage ambiguity after considering legislative history. ECF Doc. No. 47 at 9. Because we find the statutory text and structure unambiguous, we do not apply the *Fishgold* canon and need not determine at which stage it applies.

[70] ECF Doc. No. 27 at ¶ 49; ECF Doc. No. 47 at 5.

[71] ECF Doc. No. 40 at 6.

[72] *Waltermyer*, 804 F.2d at 823.

[73] *Gordon*, 388 F.3d at 82.

[74] *Pucilowski v. Dep't of Justice*, 498 F.3d 1341, 1344 (Fed. Cir. 2007).

[75] *Id.*

[76] ECF Doc. No. 30 at 19-20; ECF Doc. No. 40 at 5.

[77] *Id.*

[78] *Id.*

[79] *Welshans*, 550 F.3d at 1104.

[80] *Waltermyer*, 804 F.2d at 823.

[81] *Id.* at 824.

[82] 38 U.S.C. § 4316(b)(1) (emphasis added).

[83] ECF Doc. No. 30-2 at 18.

[84] ECF Doc. No. 36 at 14-15.

[85] 38 U.S.C. § 4323(d)(1)(B) (emphasis added).

[86] ECF Doc. No. 30-2 at 22.

[87] *Gustafson v. Alloyd Co.*, 513 U.S. 561, 569 (1995).

[88] *Babb v. Wilkie*, --- U.S. ----, 140 S. Ct. 1168, 1177 (2020).

[89] *Hayes v. Harvey*, 903 F.3d 32, 42 (3d Cir. 2018).

[90] *Maine Cmty. Health Options v. U.S.*, 140 S. Ct. 1308, 1323 (2020).

[91] ECF Doc. No. 36 at 21-22.

[92] *Id*. at 22.

[93] 38 U.S.C. § 4323(d)(1)(C).

[94] 38 U.S.C. § 4303(2).

[95] ECF Doc. No. 36 at 13-14.

[96] *Id*. (citing *American Heritage Dictionary* (5th ed. 2020)).

[97] *Id*.

[98] *Pucilowski v. Dep't of Justice*, 498 F.3d 1341, 1344 (Fed. Cir. 2007).

[99] *Scanlan*, 384 F. Supp. at 522.

[100] *Id*. at 526.

[101] *Id*.

[102] *Id.* at 528.

[103] ECF Doc. No. 36 at 14 n. 3.

[104] 38 U.S.C. § 4303(2) (emphasis added).

[105] ECF Doc. No. 36 at 16.

[106] *Id*.

[107] *Dahlstrom v. Sun-Times Media, LLC*, 777 F.3d 937, 943 (7th Cir. 2015) (noting the term "including," used to introduce seven items in the statute evaluated, is "typically 'illustrative and not limitative" and the Court of Appeals for the Seventh Circuit does not favor the *expressio*

*unius* canon). The case from outside this Circuit does not hold the word "including" precludes courts from drawing any inferences through the *expressio unius* canon.

[108] *N.L.R.B. v. SW Gen., Inc.*, 137 S. Ct. 929, 940 (2017) (quoting *Marx v. General Revenue Corp.*, 133 S.Ct. 1166, 1175 (2013)).

[109] *Id*. (quoting *Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 80 (2002)).

[110] 38 U.S.C. § 4303(2).

[111] ECF Doc. No. 36 at 14-15.

[112] *Id*. at 15; *Black's Law Dictionary* 23 (9th ed. 2009).

[113] ECF Doc. No. 36 at 15.

[114] *Id*.; For example, 41 U.S.C. § 353(c)(1) refers to "accrued wages and fringe benefits."

[115] *Scanlan*, 384 F. Supp. at 527.

[116] 38 U.S.C. § 4303(2).

[117] ECF Doc. No. 36 at 14.

[118] *Welshans*, 550 F.3d at 1104.

[119] *White v. United Airlines, Inc.*, 416 F.Supp.3d 736, 739 (N.D. Ill. 2019).

[120] 281 F.3d 648, 650 (7th Cir. 2002) (holding the Indianapolis Fire Department did not violate the Act in its calculation of paid military leave required by state law. The Court of Appeals states: "[The Act] prohibits discrimination by, among other things, denying any benefit of employment on the basis of the employee's membership in the uniformed services. It does not expressly require paid military leave.").

[121] *White*, 416 F.Supp.3d at 740.

[122] *Id*.

[123] ECF Doc. No. 76.