**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GERARD TRAVERS, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>-vs.-<br><br>FEDERAL EXPRESS CORPORATION,<br><br>Defendant. | Civil Action No. 2:19-cv-06106-MAK |

**DEFENDANT'S PHASE ONE MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

Mark W. Robertson (*admitted pro hac vice*)
O'MELVENY & MYERS LLP
7 Times Square
New York, NY 10036
Telephone:  (212) 326-2000
Facsimile:  (212) 326-2061
mrobertson@omm.com

Ryan T. Becker
FOX ROTHSCHILD LLP
2000 Market Street, 20th Fl.
Philadelphia, PA 19103-3222
Telephone: (215) 299-2033
Facsimile: (215) 299-2150
rbecker@foxrothschild.com

M. Tristan Morales (*admitted pro hac vice*)
O'MELVENY & MYERS LLP
1625 Eye St NW
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414
tmorales@omm.com

Colleen Hitch Wilson (*admitted pro hac vice*)
FEDERAL EXPRESS CORPORATION
3620 Hacks Cross Road
Memphis, TN 38125
Telephone: (901) 434-8338
chitchwilson@fedex.com

Jason Zarrow (*admitted pro hac vice*)
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California 90071
Telephone: 213-430-8369
Facsimile: 213-430-6407
jzarrow@omm.com

*Attorneys for Defendant Federal Express Corporation*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................3

ARGUMENT.........................................................................................................................6

I.     FEDEX'S RECORDS ESTABLISH THAT PLAINTIFF DID NOT TAKE
"SHORT-TERM MILITARY LEAVE" DURING THE RELEVANT PERIOD
AND PLAINTIFF SHOULD BE BARRED FROM ARGUING OTHERWISE ...............7

II.    PLAINTIFF'S CLAIM IS BARRED BY LACHES ......................................................10

     A.    Plaintiff Inexcusably Delayed Filing Suit By 23 Years .....................................11

     B.    Plaintiff's Delay Prejudiced FedEx ..................................................................13

CONCLUSION.....................................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) ........................................................................................................17

*Bauchwitz v. Holloman*,
    671 F. Supp. 2d 674 (E.D. Pa. 2009) ...............................................................................6

*Beech v. FV Wishbone*,
    113 F. Supp. 3d 1203 (S.D. Ala. 2015) ...........................................................................13

*Berckeley Inv. Grp., Ltd. v. Colkitt*,
    455 F.3d 195 (3d Cir. 2006) ..............................................................................................9

*Carmalt v. Gen. Motors Acceptance Corp.*,
    302 F.2d 589 (3d Cir. 1962) ............................................................................................11

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ...........................................................................................................6

*Clarkson v. Alaska Airlines, Inc.*,
    2021 WL 2080199 (E.D. Wash. May 24, 2021) ...............................................................10

*Corbin v. Sw. Airlines, Inc.*,
    2019 WL 3766580 (S.D. Tex. Aug 9, 2019) ...................................................... 11, 13, 14, 17

*Elansari v. Ragazzo*,
    2021 WL 308138 (E.D. Pa. Jan. 29, 2021)........................................................................9

*Equimark Commercial Fin. Co. v. C.I.T. Fin. Servs. Corp.*,
    812 F.2d 141 (3d Cir. 1987) ..............................................................................................6

*Gruca v. U.S. Steel Corp.*,
    495 F.2d 1252 (3d Cir. 1974) .............................................................. 6, 11, 12, 17

*Heath v. City of Philadelphia*,
    2021 WL 2661520 (E.D. Pa. June 29, 2021).....................................................................14

*Hoefert v. Am. Airlines, Inc.*,
    438 F. Supp. 3d 724 (N.D. Tex. 2020)..............................................................................10

*In re Bressman*,
    327 F.3d 229 (3d Cir. 2003) ..............................................................................................6

*In re Prudential Ins. Co. of Am. Sales Prac. Litig.*,
    261 F.3d 355 (3d Cir. 2001) ..............................................................................................8

*Irving v. Chester Water Auth.*,
    439 F. App'x 125 (3d Cir. 2011) .......................................................................................7

*Jeffries v. Chi. Transit Auth.*,
    770 F.2d 676 (7th Cir. 1985) ............................................................................................14

*Kepner-Tregoe, Inc. v. Exec. Dev., Inc.*,
    79 F. Supp. 2d 474 (D.N.J. 1999) .....................................................................................13

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Lovell v. Consol. Edison Co. of N.Y., Inc.*,
 758 F. App'x 222 (2d Cir. 2019) ..................................................................7

*Maher v. City of Chi.*,
 547 F.3d 817 (7th Cir. 2008) ................................................................11, 13

*Middleton v. City of Chi.*,
 578 F.3d 655 (7th Cir. 2009) ....................................................................11

*Miller v. City of Indianapolis*,
 281 F.3d 648 (7th Cir 2002) .................................................................6, 12

*Minn. Mining & Mfg. Co. v. Beautone Specialties Co.*,
 82 F. Supp. 2d 997 (D. Minn. 2000) ..........................................................17

*Moss v. United Airlines, Inc.*,
 420 F. Supp. 3d 768 (N.D. Ill. 2019) ........................................................10

*S3 Graphics Co. v. ATI Techs., ULC*,
 2015 WL 7307241 (D. Del. Oct. 21, 2015)...................................................12

*Sumrall v. Ensco Offshore Co.*,
 2018 WL 2088761 (S.D. Miss. May 7, 2018) ...................................................12

*Tenneco Auto. Operating Co. v. Visteon Corp.*,
 375 F. Supp. 2d 375 (D. Del. 2005)............................................................16

*TransUnion LLC v. Ramirez*,
 141 S. Ct. 2190 (2021) ...............................................................................7

*Travers v. FedEx Corp.*,
 2021 WL 4860737 (E.D. Pa. Oct. 19, 2021) ...............................................passim

*United States v. Olano*,
 507 U.S. 725 (1993) ..................................................................................10

*United States v. Struble*,
 489 F. App'x 599 (3d Cir. 2012) ..................................................................8

*Warner v. Sun Ship, LLC*,
 2012 WL 1521866 (E.D. Pa. Apr. 30, 2012) ................................................17

**Statutes**

38 U.S.C. § 4316(b) .........................................................................................1

38 U.S.C. § 4318(b)(3)......................................................................................4

**Rules**

Fed. R. Civ. P. 56(a)..........................................................................................6

**Other Authorities**

27A Am. Jur. 2d Equity § 153 ..........................................................................17

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

28 Am. Jur. 2d Estoppel and Waiver § 187..................................................................10

K. Piscitelly & E. Still,
   *The USERRA Manual* § 8.6 ...............................................................................6, 13

**INTRODUCTION**

Plaintiff Gerard Travers claims that Defendant Federal Express Corporation ("FedEx") violated § 4316(b) of the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), because it offered him paid sick leave, jury duty, and bereavement, but did not pay him during periods of "short-term military leave" between October 2004 and July 2010. While military leave is not comparable to sick leave, jury duty, or bereavement under § 4316(b), this Court need not conduct that analysis for two threshold reasons that entitle FedEx to summary judgment.

First, FedEx's leave records show that Plaintiff did not take any "short-term military leave" during the period in question. Plaintiff cannot dispute the accuracy of those records. Their completeness was established as part of a class-action settlement in which Plaintiff participated. Plaintiff, as a member of the settlement class, was sent a class notice attaching his military leave record and informing him of his right to supplement that record if he believed it was incorrect. Although Plaintiff read the notice and even contacted the plaintiffs' attorneys litigating that case (the same attorneys representing Plaintiff here), he did not do so. Instead, he participated in the settlement based on FedEx's leave records.

Because FedEx's leave records foreclose his claim, Plaintiff attempts to backtrack. He now contends that FedEx's records are not "reliable." But he is barred from changing his position. For one, Plaintiff agreed, as part of the *Cunningham* settlement, to release any claims arising out of or relating to FedEx's alleged "failure to capture pre-2019 Military Leave data." Yet here, his claim requires exactly that—to prevail, he must prove that FedEx "fail[ed] to capture pre-2019 Military Leave data." For another, Plaintiff has argued *to this Court* that FedEx's leave records are a reliable way to determine when putative class members took military leave. In his words, "damages will focus on the leave class members took," and "[t]his

1

information is currently available" in the form of "comprehensive records" from the class-action settlement.  And finally, Plaintiff is barred by the equitable doctrine of waiver from contesting the *Cunningham* leave records because he knowingly and voluntarily waived his right to supplement or contest those records.

But even assuming for the sake of argument that he is not barred from challenging FedEx's records, Plaintiff's argument only underscores the second ground that entitles FedEx to summary judgment:  laches.  This Court held at the dismissal stage that FedEx's laches argument was premature, so it instructed the parties to conduct early discovery "with the hope we may promptly resolve the laches defense."  *Travers v. FedEx Corp.*, 2021 WL 4860737, at *7 (E.D. Pa. Oct. 19, 2021).  Discovery has confirmed that Plaintiff inexcusably delayed bringing suit and that FedEx would suffer both evidentiary and economic prejudice.

There is little question that Plaintiff inexcusably delayed bringing suit.  As this Court previously observed, Plaintiff's "delay appears unduly lengthy."  *Travers*, 2021 WL 4860737, at *7.  And discovery has now confirmed that Plaintiff has no legitimate excuse—nor any excuse for that matter—for his extraordinarily lengthy delay.  Discovery has also made clear that FedEx would be significantly prejudiced if Plaintiff were permitted to bring his stale claims.  To start, there is no fair way for FedEx to defend against Plaintiff's claim that he took "short-term military leave."  FedEx has no record of him taking "short-term military leave" between October 2004 and July 2010.  And Plaintiff's supervisors at FedEx likewise have no recollection.  This is thus a paradigmatic case of laches, which is meant to prevent the inequity of litigating stale claims when records have been lost and memories faded, thus impairing a defendant's ability to present a full and fair defense.  This is also a clear case of economic prejudice.  To take just one example, Plaintiff's decades-long delay denied FedEx the opportunity to change its leave

2

policies in a way that would have minimized (or eliminated) its alleged paid military leave obligation—for example, by reducing (or eliminating) the amount of paid sick leave it provides. Plaintiff told the Third Circuit that employers like FedEx should have that "choice," when arguing for the Third Circuit to adopt his interpretation of USERRA.  But Plaintiff denied FedEx that very "choice" by waiting decades to file suit, thus causing FedEx's potential liability to mount.

For these reasons, and as explained in detail below, the Court should grant FedEx's motion for summary judgment.

## BACKGROUND

Plaintiff has worked as a courier for FedEx since January 1996.  Statement of Undisputed Material Facts ("SUMF") ¶ 1.  Plaintiff also served in the United States Navy and Naval Reserve from 1990 until his retirement from the military in July 2010.  *Id.* ¶ 3.  Plaintiff alleges that, from October 2004 through July 2010, FedEx violated USERRA § 4316(b) by providing paid sick leave, jury-duty leave, and bereavement leave, but not paid "short-term military leave."  *See* Dkt. 84 ¶ 54.  In his complaint, Plaintiff defines "short-term military leave" as leaves that last 30 days or less, but Plaintiff has since stated on multiple occasions that "short-term military leave" means 14-days or fewer.  *See id.* ¶ 11; Appendix ("Appx.") at 131a-32a; *id.* at 232a 109:16-24.  In any event, regardless of whether "short-term military leave" is defined as 30 days or 14 days, FedEx has no record of Plaintiff taking a military leave of absence for either.  *See* SUMF ¶ 9.[1]

FedEx's leave records were verified as recently as 2019 as part of a USERRA class settlement in which *Plaintiff participated as a class member.*  In *Cunningham v. Federal Express*

---

[1] FedEx's records show that Plaintiff took longer military leaves, but even Plaintiff does not allege that such longer leaves are comparable under § 4316(b) to jury duty, sick leave, or bereavement.  Plaintiff also claims to have performed weekend drills with the military during the relevant period, but those would not be (and are not) reflected in FedEx's leave record for the simple reason that Plaintiff would not have been on leave from FedEx for that

*Corporation*, 3:17-cv-00845 (M.D. Tenn.), the plaintiffs alleged that FedEx's military-leave policies violated USERRA § 4318 because FedEx failed to accurately impute earnings for periods of military leave when calculating employees' pension benefits.  *See* SUMF ¶ 10; *see also* 38 U.S.C. § 4318(b)(3).  *Cunningham* ultimately settled, and a settlement class of FedEx employees who took military leave between January 1, 1996 to December 31, 2018 was certified.  SUMF ¶ 11.

As a case about military leave, FedEx's leave records played a critical role in the settlement.  *See* Dkt. 36 at 19-20 (Plaintiff arguing to this Court that "FedEx produced comprehensive records on when its workers took military leave since 1996 and used those records to calculate the class members' damages").  The parties agreed that the class notice would advise class members of "the Class Period Military Leaves used to calculate their imputed earnings."  Appx. at 52a; *see also* SUMF ¶ 13.  The settlement then provided a mechanism for class members to challenge FedEx's military leave records:  they were given 90 to 180 days to identify "any additional Class Period Military Leaves and provid[e FedEx] and the Settlement Administrator with copies of military orders or other official supporting documentation."  Appx. at 54a-55a; *see also* SUMF ¶ 14.  If a class member challenged FedEx's records, the Settlement Administrator would "forward requests to supplement Military Leave dates to [FedEx], who will have 30 days from receipt to provide relevant documentation showing the Class Member did not take unpaid military leave on those dates.  Any dispute between a Class Member and" FedEx was to be resolved by the Settlement Administrator.  Appx. at 55a; *see also* SUMF ¶ 15.

---

service:  weekend drills were on weekends, when Plaintiff was not scheduled to work.  *See* SUMF ¶ 2.  Accordingly, Plaintiff testified that he did not inform his supervisors when he was doing weekend drills.  *See* Appx. at 222a 66:19-69:16 ("I wouldn't actually notify them, listen, I have Reserves this weekend because I wasn't obligated to work on a Saturday or Sunday."); *id.* at 223a 70:10-20 ("I wouldn't call that a leave of absence.  I would say that's my time.  My shift was Monday through Friday.  You know, my time is Saturday and Sunday.").

As required, FedEx compiled its leave records and notice was sent to all class members, including Plaintiff. *See* SUMF ¶ 16. Plaintiff's notice "identified [his] Class-Period Military Leaves," and informed him of his "right to identify any Military Leave dates not reflected on the attachment." Appx. at 9a; *see also* SUMF ¶ 17. In his deposition, Plaintiff testified that he not only "read" the class notice in *Cunningham*, but that he contacted his counsel, who are the same lawyers representing him here. Appx. at 255a 198:3-25; *see also* SUMF ¶ 19.

Plaintiff, however, did not challenge or otherwise dispute the accuracy of FedEx's leave records, nor attempt to supplement them. Instead, he participated in the settlement *on the basis of FedEx's military leave records*—which, again, show that Plaintiff did not take any "short-term military leave" between 2004 and 2010. In exchange for that recovery, Plaintiff released any claim arising out of or relating to FedEx's "failure to capture pre-2019 Military Leave data." Appx. at 43a ¶ DD; *see also* SUMF ¶ 21.

Yet Plaintiff now contends that FedEx's records are not "reliable." Appx. at 256a 202:8-15; *see also* SUMF ¶ 22. In particular, he claims—contrary to FedEx's records that he previously agreed with—that he actually did take "short-term military leave" at some point in 2009 and 2010. Appx. at 279a 297:8-14; *see also* SUMF ¶ 22. According to Plaintiff, the best way to verify his claim would be to check his military "orders." Appx. at 256a 203:16-204:15. But because Plaintiff delayed so long before bringing suit, he no longer has those orders: "they have been lost" over time. Appx. at 229a 96:17-25; *see also* SUMF ¶ 27. To fill this gap, Plaintiff attempted to request his records from the National Personnel Records Center ("NPRC") but the NPRC was "unsuccessful in identifying a military service record" for Plaintiff. Appx. at 91a; *see also* SUMF ¶ 30. Plaintiff also attempted to subpoena records from the Department of Defense ("DOD"), but DOD's records do not show whether or when Plaintiff allegedly took

"short-term military leave."  Appx. at 144a (Plaintiff's counsel explaining DOD's records were not "relevant to the claims in this case").[2]  Moreover, Plaintiff cannot recall what days he allegedly took "short-term military leave" or for how long.  *See* SUMF ¶ 23.  And he has no record of telling his supervisors at FedEx that he was taking military leave, *see id.* ¶ 24, and those supervisors have no recollection regarding when he took military leave, *see id.* ¶¶ 25-26.

## ARGUMENT

Summary judgment is appropriate when "there is no genuine issue as to any material fact and … the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A court must enter summary judgment "against a [non-moving] party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Equimark Commercial Fin. Co. v. C.I.T. Fin. Servs. Corp.*, 812 F.2d 141 (3d Cir. 1987).  For affirmative defenses (like laches) where the burden is on the moving party, summary judgment is warranted where no reasonable factfinder could find for the non-moving party.  *In re Bressman*, 327 F.3d 229, 237-38 (3d Cir. 2003); *see also U.S. ex rel. Bauchwitz v. Holloman*, 671 F. Supp. 2d 674, 693 (E.D. Pa. 2009).[3]  "[S]ubsequent self-serving deposition testimony is insufficient to

---

[2] Plaintiff has moved to compel DOD to produce responsive documents, requesting that such documents be produced by March 11.  *See Travers v. Fed. Exp. Corp.*, No. 1:22-cv-0053 (D.D.C.).  DOD's production of documents would not in any way alter the outcome of this motion, *see infra* at 15 n.6, but Plaintiff's proposed schedule—where he receives records in the middle of summary judgment briefing, *after* FedEx has filed its initial motion—is prejudicial on its face.
[3] The Court directed the parties to address the burden of proof.  *See Travers*, 2021 WL 4860737, at *50 n.50.  FedEx bears the burden of proving unreasonable delay and prejudice.  But Plaintiff "bear[s] the burden of explaining [his] delay in bringing suit."  *Miller v. City of Indianapolis*, 281 F.3d 648, 653 (7th Cir 2002); *see also* K. Piscitelly & E. Still, *The USERRA Manual* § 8.6.  Some cases under USERRA's predecessor statutes held that a delay in excess of an analogous limitations period gave rise to a presumption of laches, effectively placing the burden of disproving laches on the plaintiff.  *See Gruca v. U.S. Steel Corp.*, 495 F.2d 1252, 1260 (3d Cir. 1974).  The Court need not resolve whether this analytical framework still applies under USERRA, because FedEx has affirmatively demonstrated laches—and thus carried any burden it might have—as explained below.

raise a genuine issue of material fact." *Irving v. Chester Water Auth.*, 439 F. App'x 125, 127 (3d Cir. 2011).

I.      **FEDEX'S RECORDS ESTABLISH THAT PLAINTIFF DID NOT TAKE "SHORT-TERM MILITARY LEAVE" DURING THE RELEVANT PERIOD AND PLAINTIFF SHOULD BE BARRED FROM ARGUING OTHERWISE**

Plaintiff alleges that USERRA § 4316(b) required FedEx to pay him during periods of "short-term military leave" because it provided other types of paid leave, like paid sick and bereavement leave. The problem for Plaintiff is that FedEx's leave records show that he did not take "short-term military leave" (regardless of whether defined as 30 days or less or 14 days or less, *supra* at 3) between October 2004 and his retirement from the military in July 2010. This is both a jurisdictional and merits defect. Plaintiff lacks Article III standing because he was not injured by the FedEx policy—i.e., not providing paid "short-term military leave"—that he challenges. *See, e.g.*, *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021); *Lovell v. Consol. Edison Co. of N.Y. Inc.*, 758 F. App'x 222, 224 (2d Cir. 2019) (USERRA plaintiff lacked standing absent "lost wages or benefits attributable to [defendant's] discriminatory treatment"). And Plaintiff's § 4316(b) claim fails on the merits because he was not denied a benefit during "short-term military leave" that FedEx provides to employees on comparable civilian leaves because Plaintiff did not take any such leave.

FedEx's records conclusively show that Plaintiff did not take "short-term military leave" between October 2004 and July 2010. FedEx maintains these records in the ordinary course of business, Appx. at 204a 120:3-20, and Plaintiff cannot be heard to challenge their accuracy now. In fact, these very same records formed the basis for Plaintiff's participation in the *Cunningham* class. As explained above, *supra* at 3-5, the *Cunningham* case alleged that FedEx failed to accurately impute earnings for periods of military leave when calculating employees' pension benefits. As a *Cunningham* class member, Plaintiff was sent a tailored notice attaching his

7

military-leave record and explaining his right to supplement that record if he believed it was

inaccurate.  SUMF ¶¶ 16-19.  Plaintiff admits he received and read the notice.  *id.* ¶ 19.  He even

contacted the attorneys litigating that case.  *Id.*  But Plaintiff did not dispute the accuracy of

FedEx's records, so his recovery from FedEx as part of the *Cunningham* class was calculated

based on those records.  *Id*. ¶ 20.  And, as a *Cunningham* class member, Plaintiff agreed to

release "any and all actual or potential claims or causes of action for any relief, damages,

penalties, attorneys' fees, expenses, or costs, that arise out of or relate to (i) the Defendants' pre-

2019 methods for imputing earnings to Class-Period Military Leaves or (ii) ***Defendants' failure***

***to capture pre-2019 Military Leave data***, including the claims asserted in the Litigation." Appx.

at 43a ¶ DD (emphasis added); *see also* SUMF ¶ 21.

This release expressly bars Plaintiff's claims under ordinary contract principles.  *See*

*United States v. Struble*, 489 F. App'x 599, 602 (3d Cir. 2012).  FedEx's records show that

Plaintiff did not take "short-term military leave" during the period in question.  Thus, to prevail,

Plaintiff must prove that FedEx's records are unreliable—i.e., that FedEx "fail[ed] to capture

pre-2019 Military Leave data."  Appx. at 43a ¶ DD.  But that argument is *exactly* what the

*Cunningham* release prohibits.  The whole point of this provision was to establish once and for

all the accuracy of FedEx's leave records (after FedEx dedicated significant time, effort, and

expense to compile them, and then class members were allowed to supplement them), and thus to

foreclose challenges precisely like the challenge Plaintiff makes here.  *See In re Prudential Ins.*

*Co. of Am. Sales Prac. Litig*., 261 F.3d 355, 366 (3d Cir. 2001) (noting parties are permitted "to

enter into comprehensive settlements that prevent relitigation of settled questions at the core of a

class action" (quotations omitted)).  Because Plaintiff's claim requires him to prove what the

*Cunningham* release prohibits, his claim is barred.

Even if Plaintiff is not barred by the express terms of the *Cunningham* release, he should still be barred from contesting FedEx's records because he represented to *this Court* that FedEx's leave records are accurate.  In response to FedEx's motion to dismiss on laches, Plaintiff argued that prejudice was lacking because "damages will focus on the leave class members took" and leave "information is currently available."  Dkt. 36 at 19.  The information Plaintiff referred to is FedEx's records from *Cunningham*:  "in a 2019 settlement with a class of 4,093 reservists nearly identical to the class here, FedEx produced comprehensive records on when its workers took military leave since 1996 and used those records to calculate the class members' damages."  Dkt. 36 at 19-20.  The necessary implication is that these records were accurate and reliable—otherwise, it would be manifestly unreasonable to suggest that this Court use them to determine when class members took leave.  But Plaintiff cannot have it both ways.  He cannot argue against laches on the ground that the *Cunningham* leave records can be used to establish when class members took leave yet argue against summary judgment on the ground that the *Cunningham* leave records are inaccurate.  Plaintiff's representation to the Court constitutes a "binding judicial admission."  *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 211 & n.20 (3d Cir. 2006); *see Elansari v. Ragazzo*, 2021 WL 308138, at *4 (E.D. Pa. Jan. 29, 2021) (treating factual assertion in opposition to motion to dismiss as judicial admission).

Finally, because Plaintiff had every incentive and opportunity to contest FedEx's records in *Cunningham* but instead elected to participate in the *Cunningham* settlement based on those records, Plaintiff should be barred by the equitable doctrine of waiver from challenging their accuracy now.  By participating in and receiving the benefits of the *Cunningham* settlement and choosing not to contest FedEx's records when afforded the opportunity, Plaintiff knowingly and voluntarily waived his right to challenge those records.  *See, e.g.*, 28 Am. Jur. 2d Estoppel and

9

Waiver § 187 (discussing waiver); *United States v. Olano*, 507 U.S. 725, 733 (1993) (waiver is the "intentional relinquishment or abandonment of a known right").

FedEx's records show that Plaintiff did not take "short-term military leave" during the relevant period. That should be the end of the matter.[4]

## II.    PLAINTIFF'S CLAIM IS BARRED BY LACHES

Plaintiff, however, now asserts that FedEx's leave records are not "reliable." Appx. at 256a 202:8-15; *see also* SUMF ¶ 22. Specifically, he contends that he took "short-term military leave" in 2009 and 2010. Appx. at 279a 297:8-14; *see also* SUMF ¶ 22. But if Plaintiff is permitted to challenge FedEx's leave records—which he should not be for the reasons detailed above—then the undisputed facts obtained in discovery demonstrate that his claim is barred by laches.

Laches is an available defense under USERRA, and it should be resolved "early in litigation, so … prejudice may be avoided, and judicial resources may be conserved." *Travers*, 2021 WL 4860737, at *7 (quotations and brackets omitted). Laches consists of two elements: inexcusable delay and prejudice. *Id.* at *5-7. This Court held at the dismissal stage that it could not resolve FedEx's laches defense on the pleadings; evidence was required. *Id.* at *7. It thus instructed the parties "to conduct discovery regarding FedEx's laches defense … with the hope we may promptly resolve [it]." *Id.* FedEx diligently conducted that discovery, and the summary-judgment record now confirms that Plaintiff's claim is barred by laches.

---

[4] Because Plaintiff has failed even to establish that he took a "short-term military leave" during the relevant time, FedEx does not address the merits of his claim—i.e., that military leave and jury-duty, sick, and bereavement leave are not comparable, and that paid leave is not a benefit as defined in the relevant FedEx policies. *See, e.g., Clarkson v. Alaska Airlines, Inc.*, 2021 WL 2080199 (E.D. Wash. May 24, 2021) (granting summary judgment on comparability); *Hoefert v. Am. Airlines, Inc.*, 438 F. Supp. 3d 724 (N.D. Tex. 2020) (same); *Moss v. United Airlines, Inc.*, 420 F. Supp. 3d 768 (N.D. Ill. 2019) (same). FedEx reserves the right to move for summary judgment on these non Plaintiff-specific issues should Plaintiff somehow establish that he actually took "short-term military leave" during the relevant time.

## A.      Plaintiff Inexcusably Delayed Filing Suit By 23 Years

Plaintiff first took "short-term military leave" from FedEx in the summer of 1996.

SUMF ¶ 4.  FedEx has had the same military leave policy since 1996:  it does not provide paid

military leave.  *See id.* ¶ 5; *see also id.* ¶ 6.  In fact, Plaintiff's contract with FedEx included a

six-month contractual limitation period, *see id.* ¶ 8, and USERRA claims were subject to a four-

year statute of limitations at that time, *see Middleton v. City of Chi.*, 578 F.3d 655,657-62 (7th

Cir. 2009), so Plaintiff was clearly on notice that he needed to assert his rights promptly.[5]  Yet

Plaintiff did not bring suit until December 2019—*23 years* after he first took "short-term military

leave" from FedEx, *15 years* after the beginning of the damages period in this case, and *nearly a

decade* after Plaintiff retired from the military.

As the Court previously observed, Plaintiff's "delay" in filing suit "appears unduly

lengthy," *Travers*, 2021 WL 4860737, at *7, and many courts (including the Third Circuit)

confronted with "evidence" of similarly-lengthy delays have found them inexcusable under

USERRA and its predecessor statutes, *id.* at *6 n.56 (collecting cases); *see Maher v. City of Chi.*,

547 F.3d 817, 822 (7th Cir. 2008) (11-year delay in bringing VRRA claim unreasonable); *Gruca*,

495 F.2d at 1259 (nine-year delay unreasonable as a matter of law under USERRA predecessor

statute); *Carmalt v. Gen. Motors Acceptance Corp.*, 302 F.2d 589, 591 (3d Cir. 1962) (delay of

17 years was "ridiculous" under original USERRA predecessor statute and noting the "numerous

decisions" holding that such claims "must be brought promptly or be barred by laches"); *Corbin*

*v. Sw. Airlines, Inc.*, 2019 WL 3766580 (S.D. Tex. Aug 9, 2019) (USERRA claim barred by

laches after 10-year delay).

---

[5] The six-month contractual limitations period would bar any claims before April 2008 (six months before Congress amended USERRA to eliminate a statute of limitations defense).  But because Plaintiff does not claim to have taken "short-term military leave" before then, FedEx does not assert the contractual limitations period here.

Discovery has now confirmed that Plaintiff has no valid excuse for waiting decades to bring his claim.  Plaintiff testified that he did not file suit after his 2001 military leave because "it really didn't cross [his] mind" and he "was too busy."  Appx. at 234a 115:2-6; *see also* SUMF ¶ 7.  Instead of researching his claims or talking to an attorney, he "just took it that if FedEx doesn't pay you, they don't pay you.  That's the way it goes at the military."  Appx. at 234a 115:7-9.  Those are not valid excuses—and anyway, they do not explain why Plaintiff waited *ten years* to file suit after the alleged leaves in 2009 and 2010 at issue here.  *See Miller*, 281 F.3d at 653 (plaintiff bears burden to justify delay); *supra* at 6 n.3.

"Clarity of the violation or uncertainty of the law are not factors which operate to excuse a party's delay."  *Gruca*, 495 F.2d at 1259; *see Sumrall v. Ensco Offshore Co.*, 2018 WL 2088761, at *8 (S.D. Miss. May 7, 2018).  Instead, courts typically excuse a party's delay only when they were either unable to discover the facts giving rise to their claims, *see, e.g.*, *S3 Graphics Co. v. ATI Techs., ULC*, 2015 WL 7307241, at *18 (D. Del. Oct. 21, 2015) ("The time frame for a laches determination begins to run when evidence of the alleged wrong is discovered or could have been discovered had reasonable diligence been exercised." (quotations and alteration omitted)), or were for some reason unable to file suit, *see, e.g.*, *Gruca*, 495 F.2d at 1259–60 (delay may be excused by "concealment, misrepresentation, unfulfilled promises or any other inequitable conduct on the part of [defendant]").  Nothing remotely like that happened here.  Plaintiff has known since 1996 that FedEx did not provide paid military leave.  *See* Appx. at 217a 46:22-47:3; *id.* at 231a-32a 105:5-10, 105:20-106:7; *see also* SUMF ¶ 6.  And he has no valid excuse whatsoever for waiting decades to commence this litigation.  Nor could there be one:  absent inequitable conduct by FedEx (and there is none), it is manifestly unreasonable to wait decades to assert one's rights.

12

## B.     Plaintiff's Delay Prejudiced FedEx

Given Plaintiff's delay, only a minimal showing of prejudice is required to justify granting summary judgment based on laches.  *See The USERRA Manual* § 8.6 ("The longer the delay, the less prejudice the defendant need[s] to show").  Here, there is substantial evidentiary and economic prejudice.

*Evidentiary prejudice.*  "Evidentiary prejudice may arise from a defendant's inability to present a full and fair defense on the merits because of the loss of records, the death of a witness, or the unreliability of memories of long past events, thereby undermining the court's ability to judge the facts."  *Kepner-Tregoe, Inc. v. Exec. Dev., Inc*., 79 F. Supp. 2d 474, 491 (D.N.J. 1999), *aff'd*, 276 F.3d 577 (3d Cir. 2001); *see also, e.g.*, *Corbin*, 2019 WL 3766580, at *4 (USERRA case).

The prejudice here is obvious.  FedEx's records show that Plaintiff did not take "short-term military leave" during the relevant period.  *See* SUMF ¶ 9.  Plaintiff says he did, and he accuses FedEx of "[un]reliable" recordkeeping.  Appx. at 256a 202:8-15; *see also* SUMF ¶ 22. But the passage of time precludes FedEx from presenting a full defense because FedEx has no basis to confirm its records from more than a decade ago.  Indeed, even if Plaintiff could provide proof of the dates he performed military service—which he has failed to do thus far—FedEx lacks the records necessary to determine, for example, whether he told his supervisors he was taking leave to perform service.  *See, e.g.*, SUMF ¶ 24; *see also* Appx. at 99a-102a; *id.* at 103a-106a.  After all, Plaintiff's former supervisors have no recollection of when he took military leave or for how long—which is unsurprising, given that the leaves in question allegedly occurred in 2009 and 2010.  *See* SUMF ¶ 26; *see also Maher*, 547 F.3d at 822–23 ("[D]ue to ... lack of memory, the City was prejudiced by Maher's delay in filing suit."); *Beech v. FV Wishbone*, 113 F. Supp. 3d 1203, 1221 (S.D. Ala. 2015) ("Had plaintiffs timely and diligently

pursued such claims, Skipper's Landing could have obtained their deposition testimony before plaintiffs' memories faded and before plaintiffs' records, invoices and receipts were destroyed or lost. ... That fact constitutes prejudice for purposes of the laches analysis.").

FedEx's inability to corroborate the accuracy of its leave records (apart from the *Cunningham* settlement mechanism, *supra* at 3-5), is reason enough to find prejudice.  But Plaintiff's own testimony provides another reason to find prejudice:  he, too, has lost critical records and cannot remember when or for how long he took military leave.  For instance, Plaintiff insists that "the best way to determine whether or not FedEx employees took military leave" would be to look at their military "orders."  Appx. at 256a 203:16-204:8.  But because Plaintiff has "been out [of the military] for over 10 -- 11 years now," he no longer has them.  *Id.* at 204:14-22; *see also id.* at 229a 96:21-25 ("I moved multiple times over the years, and they have been lost."); Dkt. 74 at 1 ("Mr. Travers does not have comprehensive records in his possession regarding his dates of service[.]").  This is thus an exemplary case for laches because critical "records" have been "lost."  *Jeffries v. Chi. Transit Auth.*, 770 F.2d 676, 680 (7th Cir. 1985) (prejudice where "[r]elevant employment and medical records have been destroyed . . . or lost"); *see also Heath v. City of Philadelphia*, 2021 WL 2661520, at *4 (E.D. Pa. June 29, 2021) (noting "prejudice inherent in meaningfully litigating old claims with inaccessible evidence"); *Corbin*, 2019 WL 3766580, at *5 (finding prejudice in USERRA case where records did not show whether or not the plaintiff "asked for reemployment").

Plaintiff's "unsuccessful" effort to request his lost records from the military provides further proof—and also confirms his overall lack of diligence in pursuing his rights.  Despite the fact that FedEx brought this issue to Plaintiff's attention in ***March 2020***, *see* SUMF ¶ 28, Plaintiff did not request his records from the NPRC until November 2021, *see id.* ¶ 29.  But then,

on January 13, 2022, the NPRC wrote Plaintiff that it was "unsuccessful in identifying a military service record for" Plaintiff.  Appx. at 91a-92a; *see also* SUMF ¶ 30.  Similarly, Plaintiff waited until December 2021 to subpoena DOD, *see* Dkt. No. 74, and then waited until the last possible day—the close of discovery—to inform the Court that the DOD had not produced responsive documents and move for an extension of the discovery deadline to file a motion to compel.  *See* Dkt. Nos. 90, 92.  On Monday, February 28 (the day before this Motion was due), Plaintiff's counsel informed FedEx that DOD also appears not to have relevant documents:  in response to Plaintiff's subpoena, DOD "produced documents that were neither responsive to the subpoena nor relevant to the claims in this case."  Appx. at 144a; *see also* SUMF ¶ 33.[6]

That leaves Plaintiff's decades-old recollections, but they are equally unreliable—and Plaintiff's delay has prejudiced FedEx's ability to defend against them for all the reasons just explained.  In fact, Plaintiff cannot even remember *when* he performed service or *for how long*. *See* SUMF ¶ 23.  Knowing both is necessary to determine FedEx's liability.  When Plaintiff served matters because if his service spanned days when he was not scheduled to work (like a holiday), he would not be entitled to compensation.  FedEx does not pay employees on sick, jury-duty, or bereavement leave for days they are not scheduled to work, *see* SUMF ¶¶ 34-35, so Plaintiff would not have been denied a benefit that employees receive on allegedly comparable leaves if he was not scheduled to work during his military service.  The length of service matters for similar reasons.  Plaintiff ordinarily did not work on Saturdays or Sundays.  *See* SUMF ¶ 2;

---

[6] Even if the NPRC or DOD had produced Plaintiff's records, it would not matter.  The focus is not on Plaintiff's ability to prove his claims (he can't), but on FedEx's ability to defend against them, and Plaintiff's delay precludes FedEx from mounting a meaningful defense by, for example, proving that Plaintiff was not scheduled to work when he performed service or failed to inform his supervisors that he was taking leave.  But the absence of these records, and Plaintiff's lack of diligence in requesting them, simply provide even further proof of laches.  The only relevant military record Plaintiff possesses is his Annual Statement of Service History, but that document raises more questions than it answers.  It does not show when he performed military service, and his alleged 2010 service is completely missing because the document only runs through January 1, 2010.  *See* Appx. at 125a-26a.

*supra* at 3 n.1.  If his service lasted, for example, 15 days, there would be no way to determine whether he missed 10 days of work from FedEx or 11.  (If the leave started on a Saturday and ran to Saturday, he would only miss 10).  *See* Appx. at 239a 134:8-12.  And the length of service is especially important if the Court defines "short-term military leave" as 14 days or less, because Plaintiff would not be entitled to any compensation if his leave lasted for 15 days or more.

     ***Economic Prejudice.***  "Economic prejudice arises where a defendant suffers the loss of monetary investments or incurs damages which would have been prevented if the plaintiff had filed suit earlier." *Tenneco Auto. Operating Co. v. Visteon Corp.*, 375 F. Supp. 2d 375, 381 (D. Del. 2005).  FedEx has been economically prejudiced by Plaintiff's delay in two key ways.

     *First*, Plaintiff's lack of diligence denied FedEx the opportunity to minimize or eliminate its liability.  Plaintiff's theory is that if an employer provides paid civilian leave, USERRA § 4316(b) obligates it also to provide a commensurate amount of paid military leave.  *See Travers v. Fed. Exp. Corp.* (3d Cir. No. 20-2703), Plaintiff-Appellant's Reply Brief at 19.  So, for example, "if an employer gives five days of paid sick leave per year, and sick leave is deemed comparable to military leave, the employer must [also] give five days of paid military leave." *Id.*  Under Plaintiff's theory, then, an employer could minimize or eliminate the amount of paid military leave it was required to pay by "leveling down," e.g., by providing less sick leave or none at all.  As Plaintiff told the Third Circuit, "[t]he choice is theirs." *Id.*  But by delaying suit for decades, Plaintiff denied FedEx that very "choice"—and thus caused FedEx's damages to mount exponentially.

     Had Plaintiff prevailed on his theory in 2004, for example, FedEx could have chosen to provide only three days of sick leave—thus reducing its paid military leave obligation and

damages by 40%.  Or it could have chosen not to provide paid jury duty leave in states that do not require it, which would have eliminated any obligation to provide paid military leave on Plaintiff's theory.  Plaintiff's delay "impair[ed FedEx's] ability to correct the wrong," and thus caused "potential damages on the claim to mount and increase."  27A Am. Jur. 2d Equity § 153; *cf. Gruca*, 495 F.2d at 1260 (finding prejudice where delay caused defendant to "spend money in excess of nine years").

*Second*, Plaintiff's delay exposed FedEx to two decades worth of liquidated damages liability to thousands of its employees.  FedEx denies that liquidated damages are available or that class treatment is appropriate, but this massive potential liability—that could have been avoided by a simple change in policy—is seriously prejudicial to FedEx.  *See Minn. Mining & Mfg. Co. v. Beautone Specialties Co.*, 82 F. Supp. 2d 997, 1004 (D. Minn. 2000) (exposure to treble damages); *Warner v. Sun Ship, LLC*, 2012 WL 1521866, at *3 (E.D. Pa. Apr. 30, 2012) (plaintiff stipulated not to seek double damages to avoid finding of prejudice).  Like any defendant, this massive threat of liability shapes how FedEx litigates this case.  *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 350 (2011) ("Faced with even a small chance of a devastating loss, defendants will be pressured into settling questionable claims.").  Plaintiff is also likely to seek significant "prejudgment interest and tax gross ups, costs that might otherwise have been avoided by an earlier suit."  *Corbin*, 2019 WL 3766580, at *6 (quotations omitted).

## CONCLUSION

For these reasons, the Court should grant FedEx's motion for summary judgment.

Dated:  March 1, 2022

Mark W. Robertson (*admitted pro hac vice*)
O'MELVENY & MYERS LLP
7 Times Square
New York, NY 10036

/s/ Ryan T. Becker
Ryan T. Becker
FOX ROTHSCHILD LLP
2000 Market Street, 20th Fl.
Philadelphia, PA 19103-3222
Telephone: (215) 299-2033
Facsimile: (215) 299-2150

17

Telephone:  (212) 326-2000
Facsimile:  (212) 326-2061
mrobertson@omm.com

M. Tristan Morales (*admitted pro hac vice*)
O'MELVENY & MYERS LLP
1625 Eye St NW
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414
tmorales@omm.com

Jason Zarrow (*admitted pro hac vice*)
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California 90071
Telephone: 213-430-8369
Facsimile: 213-430-6407
jzarrow@omm.com

rbecker@foxrothschild.com

Colleen Hitch Wilson (*admitted pro hac vice*)
FEDERAL EXPRESS CORPORATION
3620 Hacks Cross Road
Memphis, TN 38125
Telephone: (901) 434-8338
chitchwilson@fedex.com

*Attorneys for Defendant Federal Express*
*Corporation*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on March 1, 2022, I electronically filed the foregoing document with the Clerk of Court via CM/ECF which will send notification of such filing to all counsel of record.

*/s/ Ryan T. Becker*
Ryan T. Becker
